# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| POWDER RIVER BASIN RESOURCE COUNCIL,<br>934 N. Main St.<br>Sheridan, WY 82801,<br><br>WESTERN WATERSHEDS PROJECT,<br>126 S Main Street, Suite B<br>P.O. Box 1770<br>Hailey, ID 83333,<br><br>     Plaintiffs,<br><br>     v.<br><br>U.S. DEPARTMENT OF THE INTERIOR,<br>1849 C Street N.W.<br>Washington, DC 20240,<br><br>U.S. BUREAU OF LAND MANAGEMENT,<br>1849 C Street N.W.<br>Washington, DC 20240,<br><br>     Defendants. | Case No. 1:22-cv-2696<br><br>**COMPLAINT** |

## INTRODUCTION

1.     This case challenges the Converse County Oil and Gas Project, a major new oil and gas development that was personally approved by then-Secretary of Interior David Bernhardt in the waning days of the Trump administration, as well as Applications for Permit to Drill (APDs) subsequently approved by the U.S. Bureau of Land Management (BLM) in the Converse County Project area, along with other associated decisions identified herein.

2.     The Converse County Project is a capstone of the prior administration's push for "energy dominance" in public lands management, and its efforts to relieve the fossil fuel industry

COMPLAINT - 1

from federal environmental safeguards, including under the Clean Air Act, Migratory Bird
Treaty Act, and 2015 Greater Sage-Grouse Plan Amendments. The Project also embodies several
questions of nationwide importance to BLM's oil and gas program, including the scope of BLM
authority to regulate "Fee/Fee/Fed" wells and mandate air emissions controls.

3.      Although wrongly minimized or ignored by Federal Defendants, the adverse
impacts of the Converse County Project are far-reaching and nationally-significant. The Project
will lock in staggering amounts of new greenhouse gas emissions from 5,000 new oil and gas
wells and supporting infrastructure—at the same time climate scientists are urging an immediate
end to new fossil fuel investments. By year ten, the Project will result in 69.5 million metric tons
of carbon dioxide equivalent ($CO_2e$) annually, equivalent to 1.2% of total annual U.S.
greenhouse gas emissions.

4.      In addition to worsening the global climate crisis, BLM's own analysis projected
that the Converse County Project will drive regional air quality to unhealthy levels and impair
visibility in units of the National Park System in surrounding states, such as Badlands and Wind
Cave National Parks in South Dakota. Nonetheless, Defendants rejected calls from the U.S.
Environmental Protection Agency (EPA) and National Park Service (NPS) to impose routine
pollution controls, taking the novel and legally erroneous position that BLM "does not have
authority to require application of [air quality] mitigation measures."

5.      The Delaware-sized Project will also dramatically change the landscape by
introducing 1,500 well pads; 2,900 miles of pipeline; 1,970 miles of access roads; and 1,500
miles of electrical lines—with devastating consequences for wildlife species inhabiting and
surrounding the Project area. At the request of the Project developers, Secretary Bernhardt also
approved a controversial land use plan amendment to exempt the Converse County Project from

seasonal timing restrictions designed to protect nesting raptors, a move the U.S. Fish and Wildlife Service warned could lead to Migratory Bird Treaty Act violations. BLM also disregarded land use plan protections required for the imperiled greater sage-grouse, despite acknowledging that all 54 sage-grouse mating grounds in the Project area could be abandoned.

6.      Furthermore, the Converse County Project will consist predominantly of "Fee/Fee/Fed" wells, which extract federal minerals from well pads on adjacent non-federal lands. Pursuant to an unlawful national policy, BLM claims to lack jurisdiction to regulate the surface operations associated with Fee/Fee/Fed wells, meaning much of the Converse County Project is being improperly exempted from critical environmental protections.

7.      In approving the Converse County Project and associated actions, Defendants violated their obligations under the National Environmental Policy Act (NEPA) to take a "hard look" at the Project's environmental impacts, resting on a final Environmental Impact Statement (FEIS) that overlooked and understated key harms. Defendants also violated their obligations under the Federal Land Policy and Management Act (FLPMA) to ensure compliance with federal air quality standards; to comply with the applicable federal land use plan, the Casper Resource Management Plan (RMP); and to prevent unnecessary or undue degradation of public lands. In resting on legally erroneous claims regarding the scope of BLM authority over Fee/Fee/Fed wells and air emissions, Defendants were also arbitrary and capricious in violation of the APA.

8.      Accordingly, Plaintiffs ask this Court to vacate and declare arbitrary, capricious, and unlawful the Converse County Project and related actions challenged herein ("Final Actions").

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This

Court also can provide relief under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202

(injunctive relief), and 5 U.S.C. §§ 553, 702, and 706.

10.     The challenged agency actions are final and subject to judicial review pursuant to

5 U.S.C. §§ 702, 704, and 706.

11.     Plaintiffs have exhausted all required administrative remedies prior to filing this

lawsuit.

12.     Venue in the District of Columbia is appropriate under 28 U.S.C. § 1391(e)

because defendants U.S. Department of Interior and U.S. Bureau of Land Management are based

in Washington, D.C., and because the key decisions giving rise to the claims were made in

Washington, D.C. by the Secretary of the Interior.

## PARTIES

13.     Plaintiff POWDER RIVER BASIN RESOURCE COUNCIL is a member-based

conservation group located in the Powder River Basin region of Wyoming. Formed in 1973 by

ranchers and other concerned Wyoming citizens, the Powder River Basin Resource Council has

approximately 1,000 members, the majority of whom reside locally within the Powder River

Basin. The group has long been involved in working for responsible oil and gas development,

addressing the impacts of fossil fuel development on rural people and communities, and working

for the preservation and enrichment of Wyoming's agricultural heritage and the responsible use

of land, mineral, water, and air resources. The Powder River Basin Resource Council has a

strong interest in ensuring the protection of the land, air, water, and mineral resources in the

region. The Converse County Project will directly affect many of the Council's members who

COMPLAINT - 4

depend on this region for its recreational opportunities, and, for some, their livelihoods.

14.     Plaintiff WESTERN WATERSHEDS PROJECT is a non-profit membership organization founded in 1993 with the mission of protecting and restoring western watersheds and wildlife through education, public policy initiatives, and litigation. Headquartered in Hailey, Idaho, Western Watersheds Project has over 12,000 members and supporters, including those who live, work, and recreate in Wyoming lands that will be impacted by the Converse County Project. Western Watersheds Project, as an organization and on behalf of its members, is concerned with and active in seeking to protect and improve the wildlife, riparian areas, water quality, fisheries, and other natural resources and ecological values of watersheds throughout the West.

15.     Oil and gas development is of great concern to Plaintiffs and their members, staff, and supporters, who have spent decades working to protect wildlife, ecosystems, and other natural resources from the harmful effects of fossil fuel development. Plaintiffs participated extensively in the NEPA process for this program, submitting detailed comments to the BLM. Plaintiffs have thus exhausted all administrative remedies before bringing this action.

16.     Plaintiffs also have members, staff, and supporters who regularly visit and recreate on the public lands that will be harmed by the Converse County Project, including in National Parks System units and other protected lands that may face visibility impacts and nitrogen deposition.

17.     Plaintiffs' members, supporters, and staff derive recreational, aesthetic, scientific, inspirational, educational, and other benefits from their use of these public lands and adjacent areas and plan to continue these activities in the future. Development of the Converse County Project will impair their use and enjoyment of these lands by contributing to air pollution, noise

pollution, water pollution, visual disruptions, and general disturbance. Plaintiffs' members, supporters, and staff, will also likely avoid traveling to and spending time in areas impacted by oil and gas development—including because of the health risks posed by air pollution, and the disturbance caused by the noise and visual intrusion of such development.

18.     Plaintiffs' members, supporters, and staff also derive recreational, aesthetic, scientific, inspirational, educational, and other benefits from observing species that will be negatively impacted by the Converse County Project, including the greater sage-grouse and various raptor species. The decline of these species means that there are fewer and fewer chances for Plaintiffs' members, supporters, and staff to observe them in the wild. Further development of oil and gas in the Converse County Project area will contribute to their decline, further decreasing opportunities to observe species of interest.

19.     Apart from this action, Plaintiffs and their staff, members, and supporters have no adequate remedy at law to address the foregoing injuries to their interests.

20.     Defendant U.S. DEPARTMENT OF THE INTERIOR (DOI) is the federal agency responsible for protecting and managing much of this country's wildlife, natural resources, public lands, and cultural heritage. DOI has nine bureaus, including the U.S. Bureau of Land Management, and is responsible for ensuring that BLM's management of the nation's public lands is in accordance with all applicable laws, including the MLA, FLPMA, and NEPA. The Secretary of the U.S. Department of the Interior signed the ROD and RMP Amendment challenged in this case.

21.     Defendant BUREAU OF LAND MANAGEMENT (BLM) is an agency or instrumentality of the United States within the U.S. Department of the Interior, and has been delegated responsibility for managing the public lands and resources governed by the Converse

County FEIS, ROD, and RMP Amendment at issue in this case, in accordance and compliance with federal laws and regulations. BLM also approved the APDs challenged in this case.

## LEGAL FRAMEWORK

**A.      National Environmental Policy Act (NEPA)[1]**

22.      NEPA is "our basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a). The law is intended "to help public officials make decisions that are based on [an] understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." *Id.* § 1500.1(c).

23.      To accomplish these objectives, NEPA requires federal agencies to prepare an Environmental Impact Statement (EIS) to consider the effects of each "major Federal action[ ] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C)(i).

24.      To determine whether the impacts of a proposed action are significant enough to warrant preparation of an EIS, the agency may prepare an Environmental Assessment (EA). The EA must take a "hard look" at the impacts and include "brief discussions of the need for the proposal, of alternatives . . . , [and] of the environmental impacts of the proposed action and

---

[1] The Council on Environmental Quality first promulgated its NEPA regulations in 1978. *See* 40 C.F.R. Part 1500 (1978). On July 16, 2020, the Council promulgated new NEPA regulations and directed that they be applied to any NEPA process begun after September 14, 2020; for NEPA processes that were initiated before September 14, 2020, an agency "may" apply the 2020 regulations or the 1978 regulations. *See Update to the Regulations Implementing the Procedural Provisions of the National Environmental Policy Act; Final Rule*, 85 Fed. Reg. 43,304 (July 16, 2020); 40 C.F.R. § 1506.13 (2020). After the 2020 regulations were challenged in multiple lawsuits, the Council undertook a third revision of the NEPA regulations. The first phase of that rulemaking restored the core provisions from the 1978 regulations effective May 20, 2022. *See National Environmental Policy Act Implementing Regulations Revisions; Final Rule*, 87 Fed. Reg. 23,453 (April 20, 2022) (to be codified at 40 C.F.R. §§ 1502, 1507, 1508). BLM and DOI elected to apply the 1978 regulations when approving the Converse County ROD, but many APDs identified in Appendix A were undertaken while the 2020 regulations were in effect. All citations in this Complaint are to the 1978 NEPA regulations except where otherwise indicated.

alternatives." 40 C.F.R. § 1508.9.

25.     If, after preparing an EA, the agency determines an EIS is not required, it must issue a Finding of No Significant Impact or "FONSI" explaining why the Project's impacts are insignificant. *Id.* §§ 1501.4, 1508.9, 1508.13.

26.     NEPA also requires agencies to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources." 42 U.S.C. § 4332(E). NEPA regulations explain that the alternatives evaluation "is the heart of the environmental impact statement." 40 C.F.R. § 1502.14. It must "[r]igorously explore and objectively evaluate all reasonable alternatives" and "sharply defin[e] the issues and provid[e] a clear basis for choice among options by the decisionmaker and the public." *Id.*; *see also id.* § 1508.9(b).

27.     "Agencies shall integrate the NEPA process with other planning at the earliest possible time to insure that planning and decisions reflect environmental values, to avoid delays later in the process, and to head off potential conflicts." *Id.* § 1501.2.

28.     NEPA regulations provide that agencies must also prepare supplements to their environmental impact statements if there are "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." *Id.* § 1502.9(c)(1)(ii).

**B.     Federal Land Policy and Management Act (FLPMA)**

29.     FLPMA directs BLM to manage the public lands "in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values; that, where appropriate, will preserve and protect certain public lands in their natural condition; that will provide food and habitat for fish and wildlife and

domestic animals; and that will provide for outdoor recreation and human occupancy and use."

43 U.S.C. § 1701(a)(8).

30.     FLPMA provides that BLM "shall" manage public lands "for multiple use and

sustained yield." *Id.* § 1732(a). FLPMA further mandates that the Secretary of Interior "shall . . .

take any action necessary to prevent unnecessary or undue degradation" of public lands. *Id.* §

1732(b). This duty is "the heart of FLPMA." *Mineral Policy Ctr. v. Norton*, 292 F. Supp. 2d 30,

33. (D.D.C. 2003).

31.     FLPMA's definition of "multiple use" calls for "harmonious and coordinated

management of the various resources without permanent impairment of the productivity of the

land and the quality of the environment with consideration being given to the relative values of

the resources and not necessarily the combination of uses that will give the greatest economic

return or the greatest unit output." 43 U.S.C. § 1702(c).

32.     The Secretary of Interior "shall issue regulations necessary to implement the

provisions of [FLPMA] with respect to the management, use, and protection of the public lands."

*Id.* § 1733(a).

33.     FLPMA requires that "[t]he Secretary [of the Interior] shall, with public

involvement and consistent with the terms and conditions of this Act, develop, maintain, and,

when appropriate, revise land use plans which provide by tracts or areas for the use of the public

lands." *Id.* § 1712(a).

### C.     Mineral Leasing Act (MLA)

34.     The Mineral Leasing Act (MLA), 30 U.S.C. §§ 181–287, authorizes the Secretary

of Interior to offer certain federal minerals for lease, including oil and gas. The Secretary has

delegated this authority to BLM for onshore minerals. *See* 43 C.F.R. § 3100.0-3.

35.     Under the MLA, BLM manages oil and gas development on public lands using a three-stage process: (1) land-use planning, (2) leasing, and (3) permitting of lease exploration and drilling.

36.     In the first phase, BLM prepares a Resource Management Plan (RMP) in accordance with FLPMA, 43 U.S.C. § 1712, and FLPMA's planning regulations, 43 C.F.R. Part 1600. RMPs generally define the allowable uses of the public lands in the planning area, including which lands may be leased for oil and gas development and under what conditions.

37.     In the second phase, BLM issues leases in quarterly competitive lease sales, in accordance with 43 C.F.R. Part 3120. Once issued, a lease is valid for 10 years but can be held indefinitely if it is producing oil or gas "in paying quantities." *Id.* §§ 3120.2-1; 3107.2-1.

38.     In the third and final phase, BLM must approve an Application for Permit to Drill (APD) prior to any drilling or surface operations on the lease. *Id.* § 3162.3-1(c). BLM has broad discretion to attach terms and conditions, known as "Conditions of Approval," to an approved APD. In addition to restrictions listed in the lease itself, BLM may subject an APD to any "reasonable measures . . . to minimize adverse impacts to other resource values, land uses or users" as well as "restrictions deriving from specific, nondiscretionary statutes." *Id.* § 3101.1-2.

39.     The MLA provides that the Secretary of Interior "shall regulate all surface-disturbing activities conducted pursuant to any lease issued under this chapter, and shall determine reclamation and other actions as required in the interest of conservation of surface resources." 30 U.S.C. § 226(g).

## D.     DOI and BLM Authority and Duties as to Air Resources

40.     Various federal laws authorize and require DOI and BLM to impose conditions on their land use authorizations to control their harmful air emissions.

41.     FLPMA broadly requires DOI to "regulate . . . [the] development of" public lands and to "take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b); *see also id.* 1702(e) (defining "public lands" to include mineral estate).

42.     FLPMA further requires that DOI manage the use of federal lands and minerals "in a manner" that protects "air and atmospheric" values. *Id.* § 1701(a)(8).

43.     FLPMA also calls on the Secretary to "provide for compliance with applicable pollution control laws, including State and Federal air . . . pollution standards or implementation plans" in the development and revision of land use plans. *Id.* § 1712(c)(8). In accordance with that section, the Casper RMP requires BLM to ensure its authorized actions "[c]omply with applicable state and federal AAQS" and to "[i]mplement management actions within the scope of the BLM's land-management responsibilities to improve air quality as practicable."

44.     FLPMA regulations also provide that every federal "land use authorization shall contain terms and conditions which shall . . . [r]equire compliance with [state and federal] air and water quality standards." 43 C.F.R. § 2920.7(b)(3).

45.     Section 6 of the BLM standard oil and gas lease form provides: "Lessee must conduct operations in a manner that minimizes adverse impacts to the . . . air . . . [and] visual . . . resources."

46.     BLM Manual 7300, "Air Resources Management", at .04C4 provides that BLM is responsible for "[a]ssuring appropriate stipulations and conditions of approval are included in BLM use authorizations to ensure air pollution emission control, protection methods, and ambient air quality levels are addressed."

47.     Finally, the MLA broadly requires BLM to "regulate all surface-disturbing activities conducted pursuant to any lease issued under this chapter"  and "shall determine

reclamation and other actions as required in the interest of conservation of surface resources." 30

U.S.C. § 226(g). Moreover, Congress broadly instructed BLM to "do any and all things

necessary to carry out and accomplish the purposes" of the MLA. *Id.* § 189.

48.    BLM commonly requires air quality mitigation measures in approving oil and gas

development projects.

49.    For example, BLM's Record of Decision approving the Normally Pressured

Lance Natural Gas Development in Wyoming includes mandatory restrictions on fugitive dust,

venting, and vehicle travel. It also requires waste capture and recovery; use of Tier 3 drill rig

engines; and use of solar powered equipment to the extent practicable. *See*

https://eplanning.blm.gov/public_projects/nepa/57654/155638/190417/NPL_Record_of_Decisio

n_2018_0827.pdf.

50.    BLM's Record of Decision approving the Jonah Infill Drilling Project in

Wyoming required use of Tier II diesel engines and other requirements as to project air

emissions. *See* https://eplanning.blm.gov/public_projects/nepa/77463/103586/126804/00rod.pdf.

51.    BLM's decision approving of the La Sal 2 well in Utah required use of Tier II

drill rig engines, placed NOx limits on all combustion engines, required dust suppressants,

required use of solar power to the extent possible, and required vapor recovery units. *See*

https://eplanning.blm.gov/public_projects/nepa/116510/20010455/250013445/2019.12.17_LaSal

2_APD_FONSI_DR_EA.pdf.

52.    BLM's decision approving the Alta Vista Slaughterville 1H APD in Montana

required use of Tier 4 engines. *See*

https://eplanning.blm.gov/public_projects/nepa/66656/90809/109165/Alta_Vista_Staughterville-

1H.pdf.

COMPLAINT - 12

53.     On information and belief, BLM has attached air emission control measures to hundreds of other APD approvals.

**E.     Administrative Procedure Act (APA)**

54.     Judicial review of agency actions under NEPA and FLPMA are governed by the APA, which provides a right to judicial review for any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Review under the APA is further limited to "final agency action for which there is no other adequate remedy in a court." *Id.* § 704.

55.     The APA directs courts to "hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). Agency actions may also be set aside where the action is "without observance of procedure required by law." *Id.* § 706(2)(B)–(F).

## FACTUAL BACKGROUND

**A.     Overview of the Converse County Project**

56.     The Converse County Project will entail the development of 5,000 oil and natural gas wells in Wyoming's Powder River Basin over a period of 10 years, making it one of the largest oil and gas projects ever approved in the state. The productive life of each well is estimated to be approximately 30 years. In addition to the drilling and fracking of wells, the Project will entail the construction of approximately 2,900 miles of new pipelines; 1,970 miles of access roads; 1,500 miles of electrical lines; 455 other pads; and additional supporting structures and infrastructure. The Project area covers 1.5 million acres (2,344 square miles) in Converse County, Wyoming—an area the size of Delaware and 34 times the size of Washington, DC.

57.     The Project was submitted as a consolidated proposal by an "Operator Group"

consisting of Chesapeake Energy Corporation; Devon Energy; EOG Resources, Inc.; Northwoods Energy; and Occidental Petroleum Corporation.

58.     Although only 10% of the land surface in the Project area is managed by federal agencies (6% by BLM and 4% by the Forest Service), 64% of the underlying minerals are federally owned. Accordingly, the Converse County Project will consist predominantly of Fee/Fee/Fed wells—wells that are drilled on non-federal surface overlying non-federal mineral estate that drill horizontally into leased federal minerals.

59.     The Converse County Project area supports abundant birds and wildlife—including the imperiled greater sage-grouse and sensitive raptor species, such as hawks and falcons. There are over 1,000 documented raptor nests within the Project area. Nearly the entire Project area provides habitat for greater sage-grouse, including 199,281 acres of priority habitat (PHMA) and 1,287,429 acres of general habitat (GHMA), and there are 54 sage-grouse breeding sites ("leks") within or immediately adjacent to the Project area. The Project area is also located within the Central Flyway, which is one of only four administratively-recognized bird migration routes in North America.

60.     These lands are the traditional, ancestral, and unceded territory of Indigenous peoples and tribes, including Standing Rock Sioux, Rosebud Sioux, Oglala Sioux, Flandreau Santee Sioux, Arapaho, Cheyenne, Crow, and Shoshone Tribes. The area, which harbors important cultural and sacred sites, remains a place of great significance to Tribal members. It is still used for hunting and fishing, gathering of traditional foods and medicinal plants, and ceremonies and gatherings related to historic events and military victories. Tribes and tribal organizations submitted comments opposing the Converse County Project.

**B.     Converse County ROD and FEIS**

61.     BLM issued a Draft Environmental Impact Statement (DEIS) evaluating the proposed Converse County Project on January 26, 2018. Plaintiffs submitted comments on that DEIS.

62.     On April 26, 2019, BLM released a Supplemental Draft EIS (SDEIS) to address a newly-proposed amendment to the Casper RMP to exempt the Project from "Timing Limitation Stipulations" that prohibit disturbance in raptor habitat during certain spring and summer months when the birds are nesting. Plaintiffs submitted comments on the SDEIS.

63.     BLM issued the Final EIS (FEIS) on August 10, 2020, describing it as "a programmatic analysis of proposed oil and gas development in the [Converse County Project Area] from which subsequent site-specific NEPA documents for specific permitting actions can be tiered."

64.     The FEIS examined only three alternatives: Alternative A, a no action alternative, in which no new drilling would be authorized; Alternative B, the preferred alternative and the Operator Group's proposed alternative, which would authorize 5,000 new wells on 1,500 new well pads over ten years; and Alternative C, a modified alternative, which would authorize the same number of wells, but would also require some additional mitigation measures such as water recycling and clustering of wells to reduce surface disturbance.

65.     On December 23, 2020, then-Secretary of Interior David Bernhardt personally signed a Record of Decision (ROD) for the Project selecting the preferred alternative, Alternative B. The ROD also approved an amendment to the Casper RMP to allow exemptions to the non-eagle raptor seasonal timing stipulations to allow year-round development, discussed below.

66.     Government records show that senior officials at Department of Interior

headquarters were personally involved in moving the Project forward. The Department of Interior flagged Converse County as among the high-profile fossil fuel projects it intended to fast track through the coronavirus pandemic in 2020, according to a July 15, 2020 letter sent by Katharine MacGregor, then Deputy Secretary of the Department of Interior, to White House economic advisor Larry Kudlow. Records also show that MacGregor and Joe Balash, Assistant Interior Secretary for Lands and Minerals Management, personally met with the Converse County Operator Group in Washington, D.C. to discuss the Project.

**C.** **The Raptor Timing Stipulation Exemption and Casper RMP Amendment**

67.    The Converse County Project is subject to the Casper RMP, which includes a Timing Limitation Stipulation prohibiting surface disturbance or occupancy within a certain distance of non-eagle raptor nests from February 1 to July 31, or until young birds have fledged. Exemptions may be granted by the authorized officer on a case-by-case basis.

68.    At some point after the DEIS was circulated, BLM decided to evaluate a possible amendment to the Casper RMP to provide the Converse County Project a special exemption from the non-eagle raptor Timing Limitation Stipulation. In April 2019, BLM issued the SDEIS analyzing five "Options" for this RMP amendment.

69.    The FEIS and ROD ultimately analyzed and adopted a new Option 6, which allows operators in the Converse County Project Area alone to obtain an automatic exemption from the Timing Limitation Stipulation by merely following certain procedural steps and adopting a list of modest mitigation measures, as outlined in Appendix G4 of the FEIS. To take advantage of the exemption, the operator does not have to obtain prior BLM approval.

70.    BLM did not allow the U.S. Fish and Wildlife Service to comment on Option 6 and its impacts on migratory birds.  Earlier, commenting on the similar Option 3, the Service

noted that this option would have "moderate to major" impacts on raptor populations and may affect BLM's ability to comply with Executive Order 13,186 concerning the protection of migratory birds. The Wyoming Fish and Game Department likewise expressed concerns with the proposal, calling automatic exceptions from the non-eagle raptor Timing Limitation Stipulation "unprecedented in Wyoming" and "a significant policy shift."

> ### D.    Fee/Fee/Fed Wells

71.    As noted above, the majority of wells in Converse County Project will be developed in a "Fee/Fee/Fed" scenario, in which the leased federal minerals are extracted from a well drilled on adjacent non-federal lands.

72.    BLM Permanent Instruction Memorandum 2018-014 ("PIM 2018-014") entitled "Directional Drilling into Federal Mineral Estate from Well Pads on Non-Federal Locations," erroneously claims that BLM lacks jurisdiction to impose any surface resource protections on Fee/Fee/Fed wells even though they are used to access federal minerals.

73.    Citing PIM 2018-014, the Converse County FEIS claimed that "BLM has no authority to manage development activities on" Fee/Fee/Fed wells. BLM has already approved hundreds of Fee/Fee/Fed wells in the Converse County Project area with no restrictions on the surface use operations to prevent unnecessary environmental harm.

74.    In reality, the MLA, FLPMA, and their implementing regulations not only authorize but *require* BLM to regulate Fee/Fee/Fed wells. In particular, the MLA requires BLM to "regulate all surface-disturbing activities conducted pursuant to any" federal mineral lease. 30 U.S.C. § 226(g). FLPMA further requires BLM to "regulate . . . [the] development of" federal minerals, 43 U.S.C. §§ 1702(e), 1732(b) (defining "public lands" to include mineral estate), and to "take any action necessary to prevent unnecessary or undue degradation of the lands," *id.* §

1732(b). None of these authorities exempt federal mineral development where surface facilities are located on nonfederal lands.

75.     Nor is BLM otherwise prohibited from regulating federal minerals in ways that implicate nonfederal lands. To the contrary, BLM has authority flowing from the Property Clause to "prohibit absolutely or fix the terms on which [federal] property may be used." *Light v. United State*s, 220 U.S. 523, 536 (1911). Thus, like any other mineral estate owner, BLM has authority to condition the extraction of federal minerals on the developer's agreement to engage in, or refrain from, certain conduct on private lands.

76.     Thus, in failing to regulate surface operations on Fee/Fee/Fed wells in the Converse County Project, BLM has both arbitrarily rested on an incorrect interpretation of its jurisdiction and unlawfully disregarded its MLA and FLPMA mandates to mitigate their adverse environmental effects.

### E.     BLM's Consideration of Air Quality Concerns and Mitigation

77.     The FEIS projected that the Converse County Project will cause exceedances of several human health-based National Ambient Air Quality Standards (NAAQS), including for 24-hour $PM_{10}$, 1-hour $NO_2$, and 24-hour $PM_{2.5}$, resulting in nonattainment status for those pollutants. The EPA submitted several comment letters to BLM, expressing concern that the Project would expose the public to "unhealthy levels of air pollution" and suggesting that BLM's models likely underestimated the Project's true air quality impacts.

78.     The FEIS also projected impacts to visibility and nitrogen deposition at downwind Class I and Sensitive Class II areas, including at Badlands and Wind Cave National Parks in South Dakota, Devil's Tower National Monument in Wyoming, and Agate Fossil Beds National Monument in Nebraska. The National Park Service wrote to express concerns that

emissions from the Converse County Project "could impact park air resources and related values, individual and collectively, in these areas."

79.     Both the EPA and NPS, along with other public commenters, urged BLM to incorporate additional emission mitigation measures to reduce the Project's severe air quality impacts. These proposed measures included electrification of equipment engines, use of Tier 4 diesel engines, a lower NOx limit on equipment engines, limits on flaring, centralized production and operation facilities to reduce truck traffic, and dust abatement.

80.     BLM refused to incorporate any of these measures, instead taking the novel, erroneous, and entirely unexplained position that it "does not have authority to require application of [air quality] mitigation measures."

**F.     Sage-Grouse Conservation Measures from the Casper RMP**

81.     The Converse County Project is subject to numerous restrictions under the Casper RMP, as amended by the 2015 Greater Sage-Grouse Plan Amendments, for the protection of the greater sage-grouse. These measures were adopted through a nationwide planning effort, known as the Greater Sage-Grouse National Planning Strategy, which amended the Casper RMP along with dozens of other BLM and Forest Service plans across the country.

82.     Among these measures are mandatory density and disturbance caps in priority habitat areas, which place a 5% cap on surface disturbance and a limit of one energy facility per 640 acres. Casper RMP at MD SSS 2. Projects that would result in cumulative disturbance above these thresholds cannot be approved. *Id.*

83.     The Casper RMP also requires third parties causing habitat loss and degradation in PHMA to provide compensatory mitigation "that provides a net conservation gain to the species." Casper RMP at MD SSS 4.

84.     The Casper RMP at Appendix C also includes a list of "Required Design Features" for projects in PHMA and GHMA, including measures such as phased development and clustering of surface disturbances to minimize habitat disturbance and fragmentation. Required Design Features "are required" and must be applied unless the Required Design Feature is "documented to be not applicable to the site-specific conditions" or an alternative measure was applied to provide "equal or better protection." *Id.*

85.     Although BLM acknowledged these requirements in the Converse County ROD and FEIS, it has failed to comply with them—often without explanation. BLM has approved APDs in violation of the density and disturbance caps; required no compensatory mitigation for projects in PHMA; and disregarded important Required Design Features such as "phased development" and "facilities clustering" without demonstrating that one of the specified exemption criteria applies.

**G.     Deficiencies in BLM's NEPA Compliance**

86.     The Converse County FEIS also failed to adequately address the direct, indirect, and cumulative environmental impacts of the Project and reasonable alternatives to avoid them, including as follows:

*Failure to Account for Fee/Fee/Fed Wells*

87.     BLM failed to meaningfully account for Fee/Fee/Fed wells in conducting its NEPA analysis or discuss how the prevalence of Fee/Fee/Fed wells will affect the overall efficacy of the Project's mitigation measures or environmental impacts of this development.

88.     Although BLM disclosed in its FEIS that it would not regulate the surface operations associated with Fee/Fee/Fed wells, the body of the FEIS nonetheless repeatedly assumed that BLM-imposed protections would mitigate adverse effects for the entire Project.

COMPLAINT - 20

89.     For example, in discussing impacts to greater sage-grouse, BLM claimed there would be 0 acres of surface disturbance within 0.6 miles of leks in priority sage-grouse habitat, entirely ignoring the fact that it would not prohibit Fee/Fee/Fed wells from being developed within that 0.6-mile lek buffer.

*Faulty Analysis of Air Quality Impacts*

90.     Although BLM's own modeling predicted significant air quality impacts, numerous errors and omissions in that modeling suggest that BLM overlooked the full extent of the problem. These concerns are heightened by BLM's own acknowledgment that model biases may also have led to under-prediction of certain air quality impacts.

91.     First, as for particulate matter, BLM relied on outdated data on ambient particulate matter concentrations, ignoring more recent EPA monitoring data showing concentrations have roughly doubled in recent years, indicating the potential for more severe NAAQS exceedances.

92.     Second, as for ozone, BLM again relied on outdated background concentrations that ignored the most recent 2017 data showing that ozone concentrations are already approaching the 70 parts-per-billion (ppb) standard and this Project will almost certainly lead to ozone concentrations exceeding the standard.

93.     Third, although BLM projected that the Project would cause exceedances of national emissions standards for "near field" concentrations of Hazardous Air Pollutants (HAPs), BLM made no effort to monitor or model baseline HAPs concentrations, as EPA had recommended. BLM assumed, without evidence, that background concentrations of HAPs would be "very small" and thus improperly ignored the possibility of cumulative effects.

94.     Fourth, BLM failed to meaningfully address impacts to fish and wildlife Air-

COMPLAINT - 21

Quality Related Values (AQRVs) in various downwind Class I and sensitive Class II areas that will suffer elevated ozone levels, nitrogen deposition, visibility impairment, and acid deposition. The National Park Service identified numerous areas that contain ozone-sensitive plant species, are sensitive to nitrogen enrichment, or are otherwise sensitive to air pollution, yet the FEIS failed to analyze the Project's impacts to these important ecological values.

95.     These and other critiques were raised in lengthy comments from air quality expert Megan Williams, submitted as an attachment to comments by the National Parks Conservation Association. BLM failed to acknowledge or respond to Williams' comments, in violation of 40 C.F.R. § 1503.4(a).

*Faulty Analysis of Groundwater Drawdowns*

96.     The Converse County Project will require roughly 108 million barrels of water per year for hydraulic fracturing—nearly equivalent to the existing consumption from all other sources in Converse County. To analyze the Project's likely impacts to groundwater, the FEIS relied on a 2014 Groundwater Model Report, prepared by a BLM contractor for the Project.

97.     The Groundwater Model analyzed two pumping scenarios: "dispersed pumping" and "concentrated pumping." But the FEIS only reported the results of the less impactful, "dispersed pumping" scenario, which assumed that wells would be evenly distributed across the Project area. By reporting only these dispersed pumping results, BLM underestimated the Project's likely drawdowns because groundwater wells are unlikely to be evenly spaced.

98.     BLM also used four incorrect inputs for the Groundwater Model Report, again resulting in a substantial underestimation of the Project's likely drawdowns.

99.     First, BLM failed to update the model after the Operator Group confirmed they would use *double* the projected water consumption: 13,100 acre-feet per year rather than 6,550

acre-feet per year as the Groundwater Model had assumed. When public comments raised this issue, BLM's explanation for the discrepancy was irrational and contradictory.

100.    Second, the model used an outdated and overly conservative well pumping rate, disregarding more accurate rates offered in comments from the Wyoming State Engineer's office and other sources. The model assumed wells would pump groundwater at a rate between 81 and 100 gallons per minute (gpm), which the contractor claimed was "conservative." However, the Wyoming State Engineer's office noted that the average appropriation for new water supply wells in the Project area since 2014 was 150 gpm, and the FEIS indicates that groundwater well permits issued since 2018 average 180 gpm. BLM neither updated its model to reflect these increased pumping rates nor acknowledged that the out-of-date figure might result in an underestimation of drawdowns.

101.    Third, the model used an incorrect "specific storage" value, further underestimating the Project's likely drawdowns as a result. Specific storage is, essentially, the capacity of an aquifer to release groundwater. The Groundwater Model Report used a specific storage value of 0.001. In response to the EPA's comment that this value appeared to be wrong "by at least an order of magnitude," resulting in a "substantial underestimation of both the magnitude and extent of drawdown caused by pumping," BLM responded that it was derived from previous groundwater modeling for the Powder River Basin Coal Review. However, that Review reports specific storage values orders of magnitude below 0.001.

102.    Finally, the model improperly assumed that the impacted aquifers were "unconfined" as opposed to "confined," again leading to an underestimation of the likely drawdowns. A confined aquifer is one that is bounded above by a less permeable material and responds differently to pumping. Water drawdowns are more severe in confined aquifers. BLM

classified the Wasatch/Tongue River Aquifer formations as "unconfined." However, review of

relevant U.S. Geological Survey studies suggests that this aquifer is at least partially confined.

103.    For all of the above reasons, BLM substantially underestimated the Converse

County Project's likely impacts to groundwater, thereby failing to take the "hard look" at this

issue NEPA requires.

*Insufficient Cumulative Impacts Analysis*

104.    The FEIS also did not adequately analyze the cumulative impacts of the Converse

County Project with other non-project oil and gas development or greenhouse gas emissions of

other reasonably foreseeable future projects.

105.    BLM used unreasonably low estimates of non-project oil and gas activity for

purposes of the cumulative effects analysis. Specifically, the FEIS assumed that there are just

1,520 existing wells in the Converse County Project area, and that an additional 1,663 non-

project oil and gas wells will be developed in the future (over some undefined time period). It

further assumed that just 110 new wells will be drilled each year. The existing well figure

reflects Wyoming Oil and Gas Conservation Commission (WOGCC) data on existing wells as of

January 9, 2015. The 1,663-well figure appears to be derived from the NEPA analysis of other

pending oil and gas projects, but considered only projects that had been approved as of

December 31, 2015—a date two years before the DEIS issued and nearly five years before the

ROD/FEIS issued.

106.    As multiple commenters noted, these arbitrary cut-off dates skewed the

cumulative effects analysis because fossil fuel development increased markedly in Converse

County after 2015. From 2016 to 2019 alone, 3,865 new wells started producing in the County,

far exceeding BLM's estimates for the entire cumulative effects period. Oil and gas development

COMPLAINT - 24

is the predominant activity in the Project area, so these inaccurate figures seriously compromised BLM's cumulative effects analysis for various resources, including air quality and sensitive wildlife such as the greater sage-grouse.

107.    The FEIS also failed to analyze the cumulative greenhouse gas emissions from the Converse County Project in conjunction with other reasonably foreseeable future actions, including other oil and gas developments. Although BLM listed other "reasonably foreseeable actions," it failed to quantify their projected greenhouse gas emissions or otherwise meaningfully assess their cumulative contribution to climate change. BLM's analysis simply compared the Converse County Project emissions to historic emissions.

*Failure to Consider Reasonable Alternatives*

108.    BLM considered only the "No Action" alternative and two action alternatives in the FEIS that were identical in most respects, failing to consider any alternatives to lessen key environmental impacts such as greenhouse gas and other air pollutant emissions.

109.    BLM also unreasonably eliminated many commenter-proposed alternatives from detailed analysis. First, BLM unreasonably rejected alternatives that would reduce the Project's air emissions. Other federal agencies, including the EPA and NPS, proposed concrete air quality mitigation measures for BLM's consideration. These included electrification of equipment engines, use of Tier 4 diesel engines, lower NOx limit on equipment engines, limits on flaring, centralized production and operation facilities to reduce truck traffic, and dust abatement. BLM did not incorporate these, or any other measures to reduce air emissions and NAAQS exceedances, in any alternative in a meaningful way. Instead, BLM took the erroneous position that it "does not have authority to require application of [air quality] mitigation measures."

110.    Similarly, BLM rejected a greenhouse gas reduction alternative on the grounds

that it is technically infeasible to conduct a fully carbon neutral oil and gas drilling process. However, BLM did not consider an alternative that would simply *reduce* greenhouse gas emissions, as commenters proposed.

111.    Finally, although the Converse County Project will have substantial impacts on the greater sage-grouse due to the large expanse of habitat and number of active leks within the Project area, the FEIS failed to consider an alternative that is more protective for sage-grouse and other wildlife. Specifically, BLM did not consider imposing more protective measures such as reductions on Project-related vehicle traffic in important habitat areas; concentration of wells and other surface infrastructure to reduce surface disturbance; noise limitations and mitigation measures; siting of new surface disturbance outside priority habitats; breeding and nesting season restrictions on noise and other disturbances; or compensatory mitigation.

**H.    Approval of Applications for Permit to Drill (APDs)**

112.    Since the Converse County ROD issued in December 2020, BLM has approved over 225 Applications for Permits to Drill (APDs) in the Project area encompassing at least 377 new wells. These are listed in Appendix A along with their corresponding decision documents.

113.    For the roughly half of these APDs that involve Fee/Fee/Fed wells, BLM has been relying on the unlawful PIM 2018-014 to exclude any surface use mitigation measures.

114.    These APDs also violate various sage-grouse protections in the Casper RMP. For example, BLM has approved APDs in PHMA where the 5% disturbance cap was already far exceeded, violating MD SSS3 in the Casper RMP. BLM has also approved countless APDs without attaching applicable Required Design Features (such as phased development and clustering of surface disturbances) or demonstrating that one of the exemption criteria was satisfied. Additionally, BLM did not require any of the projects sited in PHMA to provide

COMPLAINT - 26

compensatory mitigation, as required by MD SSS 4 in the Casper RMP.

115.    BLM also approved the vast majority of these APDs using a "Determination of NEPA Adequacy" (DNA) or "Categorical Exclusion" (CX), rather than an EA or EIS that NEPA requires.

116.    A "Categorical Exclusion" is a mechanism to simplify NEPA compliance for actions that do not typically have a significant effect on the environment, individually or cumulatively. *See* 40 C.F.R. §§ 1508.4 (defining "categorical exclusion"). Section 390 of the Energy Policy Act of 2005 establishes five categorical exclusions specific to oil and gas development activities. 42 U.S.C. § 15942. Relevant here, Categorical Exclusion 3 applies to "[d]rilling an oil or gas well within a developed field for which an approved land use plan or any environmental document prepared pursuant to NEPA analyzed drilling as a reasonably foreseeable activity, so long as such plan or document was approved within 5 years prior to the date of spudding the well." *Id.* § 15942(b)(3).

117.    BLM has unlawfully relied on Categorical Exclusion 3 when evaluating Converse County APDs involving activity other than well drilling, including construction of well pads, roads, pipelines, powerlines, and other supporting facilities.

118.    A DNA is a determination that a proposed action is adequately analyzed in existing NEPA documents. *See* 43 C.F.R. § 46.120(c).

119.    BLM's use of DNAs to approve Converse County APDs is improper because neither the Converse County FEIS nor the EAs for *other* projects analyzed their site-specific effects. In fact, the Converse County FEIS conceded that BLM was "[u]nabl[e] to perform analyses at the appropriate level to determine specific impacts" because the exact location of surface disturbances had not been identified, and thus committed that BLM would prepare

additional site-specific NEPA analysis before approving APDs. *See* FEIS at 4.0-1; *see also id.* at

Abstract; 1-5; 2-7; 4.2-9. BLM's reliance on the Converse County EIS is also improper because

that document did not satisfy NEPA, for the reasons noted above.

120.    Plaintiffs are informed and believe, and allege thereon, that BLM is continuing to

approve APDs in the Converse County Project area, threatening further irreparable

environmental and other harms.  Plaintiffs reserve the right to seek emergency, preliminary,

and/or permanent injunctive relief to protect the public lands and resources during the pendency

of this litigation.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violations of NEPA—Failure to Take a Hard Look at Project Impacts and Alternatives
### (FEIS, ROD, and RMP Amendment)

121.    Plaintiffs incorporate by reference all preceding paragraphs.

122.    This first claim for relief challenges BLM's violations of NEPA, 42 U.S.C. §§

4321 *et seq.*, and its implementing regulations, 40 C.F.R. §§ 1500 *et seq.*, in authorizing and

issuing Converse County FEIS and ROD and Casper RMP Amendment. This claim is brought

pursuant to the judicial review provisions of the APA. 5 U.S.C. § 706.

123.    Pursuant to NEPA and its implementing regulations, BLM must take a hard look

at the direct, indirect, and cumulative environmental consequences of a proposed action. 42

U.S.C. §§ 4332(2)(C)(i)-(v); 40 C.F.R. §§ 1502.14(a), 1502.16, 1508.7, 1508.8, and 1508.14.

124.    Agencies must also evaluate all "reasonable alternatives" to their proposed action

and provide a reasonable explanation for rejecting alternatives proposed by commenters. 40

C.F.R. § 1502.14; 42 U.S.C. § 4332(2)(E).

125.    BLM violated these NEPA requirements when evaluating and approving the Final

Actions, including but not limited to the following violations:

    a.   failing to undertake site-specific environmental analysis;

    b.   failing to study or disclose how the prevalence of Fee/Fee/Fed wells impacts the efficacy of the proffered mitigation in reducing the environmental effects of the Project, given that the Project will consist predominantly of "Fee/Fee/Fed" wells for which BLM states it will not impose any surface mitigation measures;

    c.   relying on demonstrably inaccurate inputs in its groundwater modelling as to the Project's water consumption and aquifer characteristics to substantially underestimate the Project's impacts on groundwater drawdowns, as the U.S. EPA and Wyoming State Engineer's Office noted in comments;

    d.   presenting a misleading and incomplete air quality analysis, including by relying on outdated background concentrations for PM10 and PM2.5; disregarding the extent of non-project PSD increment consumption in analyzing PSD exceedances; and by failing to account for ambient concentrations of hazardous air pollutants;

    e.   underestimating the Project's cumulative impacts on a variety of resources by relying on demonstrably low and outdated projections of non-project oil and gas activity in this region when more recent data was readily available;

    f.   failing to quantify the cumulative greenhouse gas emissions and climate change impacts of this Project when combined with other future actions; and

    g.   eliminating from consideration reasonable alternatives proposed by commenting parties, such as an alternative to reduce the Project's air emissions; an alternative that would consolidate wells onto 16-well pads; an alternative that would be more protective for sensitive wildlife, such as sage-grouse and migratory birds;

h. failing to supplement its environmental impact statement after obtaining

significant new information bearing on the environmental impacts of the

Converse County Project, including as to the quantity of water consumption and

scale of non-project oil and gas development.

126.    For the foregoing reasons, the Final Actions are arbitrary, capricious, and not in

accordance with NEPA and implementing regulations, and must be set aside pursuant to the

APA, 5 U.S.C. § 706(2)(A).

**SECOND CLAIM FOR RELIEF**
**Violations of NEPA—Improper Use of Categorical Exclusions**
**and Determinations of NEPA Adequacy**
**(APDs)**

127.    Plaintiffs incorporate by reference all preceding paragraphs.

128.    This claim for relief challenges BLM's violations of NEPA, 42 U.S.C. §§ 4321 *et*

*seq.*, and its implementing regulations, 40 C.F.R. §§ 1500 *et seq.*, in approving the Converse

County APDs listed in Appendix A. This claim is brought pursuant to the judicial review

provisions of the APA. 5 U.S.C. § 706.

129.    In approving each APD, BLM failed to prepare an EA or EIS to evaluate its

foreseeable site-specific environmental effects, instead relying on a Determination of NEPA

Adequacy (DNA) or Categorical Exclusion (CX) as supposed NEPA compliance.

130.    BLM unlawfully approved many of the Converse County APDs listed in

Appendix A using Determinations of NEPA Adequacy that pointed to the Converse County

FEIS and/or EAs for entirely different projects as supposedly "adequate" NEPA coverage. This

is improper first because the Converse County FEIS committed that "site-specific NEPA" would

be required for later permitting decisions, given that the FEIS was "[u]nabl[e] to perform

analyses at the appropriate level to determine specific impacts" because the exact location of

surface disturbances had not been identified. *See* FEIS at 4.0-1; *see also id.* at Abstract; 1-5; 2-7; 4.2-9. The Converse County FEIS also did not itself satisfy NEPA, for the reasons noted in the First Claim for Relief above. Finally, the EAs prepared for wells in other locations did not analyze the site-specific effects of these particular authorizations.

131.    BLM has also unlawfully relied on Categorical Exclusion 3 to approve activity other than well drilling in the Converse County Project, including construction of well pads, roads, pipelines, powerlines, and other supporting facilities, which fall outside the activities exempted from NEPA under Categorical Exclusion 3. Categorical Exclusion 3 applies only to "[d]rilling an oil or gas well within a developed field for which an approved land use plan or any environmental document prepared pursuant to NEPA analyzed drilling as a reasonably foreseeable activity, so long as such plan or document was approved within 5 years prior to the date of spudding the well." 42 U.S.C. § 15942(b)(3).

132.    For the foregoing reasons, BLM's approval of the APDs listed in Appendix A was arbitrary, capricious, and not in accordance with NEPA, the APA, or their implementing regulations, and must be set aside pursuant to the APA, 5 U.S.C. § 706(2)(A).

### THIRD CLAIM FOR RELIEF
### Violations of FLPMA—Noncompliance with RMP Requirements
### for the Protection of Greater Sage-Grouse
### (ROD and APDs)

133.    Plaintiff incorporates by reference all preceding paragraphs.

134.    This claim for relief challenges Defendants' violations of their FLPMA duty to ensure the Converse County ROD and APDs are consistent with the governing RMP. *See* 43 U.S.C. § 1732(a); 43 C.F.R. § 1610.5-3(a).

135.    The Converse County ROD and APDs are subject to BLM's Casper RMP, as amended by the 2015 Wyoming Greater-Sage-Grouse RMP Amendments.

136.     The Converse County ROD and APDs do not comply with the requirements of the Casper RMP for protection of greater sage-grouse, including but not limited to Required Design Features, compensatory mitigation, and density and disturbance caps.

137.     The Converse County ROD and APDs were thus arbitrary, capricious, an abuse of discretion, and not in accordance with FLPMA and its regulations, in violation of the APA. 5 U.S.C. § 706(2)(A).

**FOURTH CLAIM FOR RELIEF**
**Violations of FLPMA—Failure to Prevent Unnecessary or**
**Undue Degradation to Raptors and their Habitat**
**(RMP Amendment, ROD, APDs)**

138.     Plaintiffs incorporate by reference all preceding paragraphs.

139.     This claim for relief challenges Defendants' violations of their FLPMA duty to "take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).

140.     BLM has adopted regulations interpreting the term "unnecessary or undue degradation" in the context of other programs. Those regulations generally define "unnecessary or undue degradation" to include: (1) impacts greater than those that would result from customary practice or (2) activities that exceed standards of other federal or state law. *See* 43 C.F.R. §§ 2800.0-5(x), 3715.0-5, 3802.0-5(l), 3809.5.

141.     Courts and the Interior Board of Land Appeals have applied these definitions to the oil and gas context. *See, e.g., Theodore Roosevelt Conservation Partnership v. Salazar*, 661 F.3d 66, 76-78 (D.C. Cir. 2011) (unnecessary or undue degradation means "something more than the usual effects anticipated from appropriately mitigated development."); *Colorado Env't Coalition*, 165 IBLA 221, 229 (2005) (unnecessary or undue degradation requires a showing "that a lessee's operations are or were conducted in a manner that does not comply with

applicable law or regulations, prudent management and practice, or reasonably available technology").

142.    In approving the Casper RMP Amendment, Converse County ROD, and APDs, and BLM allowed unnecessary and undue degradation to public lands by granting this Project alone special relief from the raptor Timing Limitation Stipulation and refusing to adopt the Migratory Bird Conservation Strategy developed by USFWS, thereby allowing impacts greater than would customarily result from prudent oil and gas operations and risking incidental take of migratory birds in violation of the Migratory Bird Treaty Act (MBTA).

143.    BLM's failure to take action necessary to prevent unnecessary or undue degradation from the Converse County Project, in these and other ways, was arbitrary and capricious agency action, an abuse of discretion, and action without observance of procedures required by law, pursuant to the APA. 5 U.S.C. § 706(2).

**FIFTH CLAIM FOR RELIEF**
**Violations of the MLA, FLPMA, APA, and Implementing Regulations—**
**Failure to Regulate Surface Operations on Fee/Fee/Fed Wells**
**(APDs)**

144.    Plaintiffs incorporate by reference all preceding paragraphs.

145.    This fifth claim for relief is brought pursuant to the MLA, FLPMA, and APA against all Fee/Fee/Fed wells listed in Appendix A.

146.    BLM approved these Fee/Fee/Fed wells without any surface use restrictions or mitigation based on the assertion that it lacks authority to regulate the surface operations associated with Fee/Fee/Fed wells.

147.    BLM's disclaimer of authority over surface operations on Fee/Fee/Fed wells is legally erroneous, rendering BLM's approvals of these Fee/Fee/Fed wells arbitrary and capricious.

148.    As alleged in more detail above, the MLA requires BLM to "regulate all surface-disturbing activities conducted pursuant to any" federal mineral lease. 30 U.S.C. § 226(g). FLPMA further requires BLM to "regulate . . . [the] development of" federal minerals and to "take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b); *id.* § 1702(e). None of these provisions exempt federal mineral development where surface facilities are located on nonfederal lands.

149.    BLM's approval of these Fee/Fee/Fed wells without any surface use restrictions or mitigation also violated BLM's responsibilities under the MLA and FLPMA to oversee the extraction of federal minerals and to avoid "unnecessary or undue" degradation. *See* 30 U.S.C. § 226(g); 43 U.S.C. §§ 1702(e), 1732(b), 1732(b).

150.    Accordingly, Plaintiffs request that the Court set aside all Fee/Fee/Fed wells listed in Appendix A as arbitrary, capricious, and not in accordance with law, 5 U.S.C. § 706(2)(A), and declare that DOI and BLM have legal authority under the MLA and FLPMA to regulate the surface operations associated with Fee/Fee/Fed wells, pursuant to the APA and Declaratory Judgement Act, 28 U.S.C. § 2201 *et seq*.

## SIXTH CLAIM FOR RELIEF
### Violations of the MLA, FLPMA, APA, and Implementing Regulations—
### Failure to Mitigate Project Air Emissions
### (ROD and APDs)

151.    Plaintiffs incorporate by reference all preceding paragraphs.

152.    This sixth claim for relief is brought pursuant to the APA and other applicable laws, including FLPMA and the MLA, for Defendants' failure to mitigate greenhouse gas and other air pollutant emissions when approving the Converse County ROD and APDs.

153.    As noted above, the Converse County Project is expected to result in exceedances of several NAAQS, prompting the EPA, NPS and others to request that BLM adopt various air

quality mitigation measures, including engine standards, reduced flaring, dust abatement, truck traffic restrictions, specially-surfaced roads, and centralized production facilities.

154.    Defendants refused to adopt these measures based on the erroneous claim that BLM "does not have authority to require application of [air quality] mitigation measures."

155.    However, as explained in greater detail above, various federal laws authorize and require BLM to impose air emissions controls, as confirmed by a long history of BLM decisions subjecting oil and gas projects to these same or similar air quality mitigation measures.

156.    BLM's decision not to require air quality mitigation measures for the Converse County Project was thus based on a legal error and reflected an unexplained departure from longstanding agency practice, rendering the ROD and APDs arbitrary and capricious.

157.    BLM's failure to require air emissions controls sufficient to avoid NAAQs exceedances also violated its substantive mandates under the MLA, FLPMA, their implementing regulations, and the Casper RMP to ensure that its land-use authorizations do not result in violations of air quality standards or "unnecessary or undue degradation." *See* 43 U.S.C. §§ 1732(b), 1701(a)(8), 1712(c)(8); 43 C.F.R. § 2920.7(b)(3).

158.    Accordingly, pursuant to the APA, Plaintiffs request that the Court set aside the ROD and APDs as arbitrary, capricious, and not in accordance with law. 5 U.S.C. § 706(2)(A). Plaintiffs also request that the Court declare, pursuant to the APA and Declaratory Judgement Act, 28 U.S.C. § 2201 *et seq*, that BLM has authority under the MLA and FLPMA to condition its approval of oil and gas development activities on the developer's agreement to air quality mitigation measures.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court grant the following relief:

(1)     Declare that Defendants violated the NEPA, FLPMA, MLA, and the APA, and/or their implementing regulations in approving the Converse County FEIS and ROD, 2020 Casper RMP Amendment, and the APDs and NEPA documents listed in Appendix A;

(2)     Reverse and set aside the Converse County FEIS and ROD, 2020 Casper RMP Amendment, and/or the APDs and NEPA documents listed in Appendix A;

(3)     Declare that DOI and BLM have legal authority under the MLA and FLPMA to regulate the surface operations associated with Fee/Fee/Fed wells;

(4)     Declare that DOI and BLM have legal authority under the MLA and FLPMA to impose air quality controls on projects extracting federal oil and gas;

(5)     Enter such injunctive relief as Plaintiffs may pray for hereafter;

(6)     Award Plaintiffs' costs incurred in pursuing this action, including attorney's fees, as authorized by the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable provisions; and

(7)     Grant such other and further relief as the Court deems just and proper.


Dated: September 7, 2022                    Respectfully submitted.

                                           /s/ Todd C. Tucci
                                           Todd C. Tucci (D.C. Bar # ID0001)
                                           Sarah Stellberg (ID Bar # 10538)*
                                           Hannah A. Goldblatt (OR Bar # 205324)*
                                           *pro hac vice applications forthcoming
                                           ADVOCATES FOR THE WEST
                                           P.O. Box 1612
                                           Boise, ID 83702
                                           (208) 342-7024
                                           ttucci@advocateswest.org
                                           sstellberg@advocateswest.org
                                           hclements@advocateswest.org

                                           Attorneys for Plaintiffs


COMPLAINT - 36

APPENDIX A

| | Well Name | Well Number | APD Approval Date | NEPA Number | NEPA Type | Fee/Fee/ Fed? |
|---|---|---|---|---|---|---|
| 1 | JACK FED | 3671-18-19-15 TH | 4/1/2022 | DOI-BLM-WY-P060-2019-0028-DNA | DNA | Yes |
| 2 | TOPAZ | 1324-02H | 10/29/2021 | DOI-BLM-WY-P060-2020-0060-EA | EA | No |
| 3 | TOPAZ | 1324-03H | 10/29/2021 | DOI-BLM-WY-P060-2020-0060-EA | EA | No |
| 4 | EH FED SUPERNOVA W | 3569-23-N1H | 12/28/2020 | DOI-BLM-WY-P060-2020-0205-DNA | DNA | No |
| 5 | EH FED SUPERNOVA W | 3569-23-N2H | 12/28/2020 | DOI-BLM-WY-P060-2020-0205-DNA | DNA | No |
| 6 | EH FED SUPERNOVA W | 3569-23-N3H | 12/28/2020 | DOI-BLM-WY-P060-2020-0205-DNA | DNA | No |
| 7 | EH FED SUPERNOVA W | 3569-35-N1H | 12/28/2020 | DOI-BLM-WY-P060-2020-0205-DNA | DNA | No |
| 8 | EH FED SUPERNOVA W | 3569-23-N4H | 3/30/2021 | DOI-BLM-WY-P060-2020-0205-DNA | DNA | Yes |
| 9 | OGALALLA FED | 4075-11022SH | 5/13/2021 | DOI-BLM-WY-P060-2021-0030-CX | CX3 | Yes |
| 10 | OGALALLA FED | 4075-11021SH | 5/13/2021 | DOI-BLM-WY-P060-2021-0030-CX | CX3 | Yes |
| 11 | CLAUSEN 26-34-71 USA A | NB 1H | 12/28/2020 | DOI-BLM-WY-P060-2021-0033-DNA | DNA | Yes |

| 12 | CLAUSEN 26-34-71 USA A | NB 2H | 12/28/2020 | DOI-BLM-WY-P060-2021-0033-DNA | DNA | Yes |
| 13 | CLAUSEN 26-34-71 USA A | PK 32H | 12/28/2020 | DOI-BLM-WY-P060-2021-0033-DNA | DNA | Yes |
| 14 | CLAUSEN 26-34-71 USA A | PK 33H | 12/28/2020 | DOI-BLM-WY-P060-2021-0033-DNA | DNA | Yes |
| 15 | CLAUSEN 26-34-71 USA A | NB 4H | 1/5/2021 | DOI-BLM-WY-P060-2021-0033-DNA | DNA | Yes |
| 16 | CLAUSEN 20-34-70 USA A NB | 2H | 12/28/2020 | DOI-BLM-WY-P060-2021-0041-DNA | DNA | Yes |
| 17 | CLAUSEN 20-34-70 USA A PK | 31H | 12/28/2020 | DOI-BLM-WY-P060-2021-0041-DNA | DNA | Yes |
| 18 | CLAUSEN 20-34-70 USA A PK | 33H | 12/28/2020 | DOI-BLM-WY-P060-2021-0041-DNA | DNA | Yes |
| 19 | HARDY FED | 3873-2314 2TH | 1/15/2021 | DOI-BLM-WY-P060-2021-0046-DNA | DNA | No |
| 20 | ASPEN | 18E19-5NH | 5/19/2021 | DOI-BLM-WY-P060-2021-0057-DNA | DNA | No |
| 21 | ASPEN | 18E19-8NH | 5/19/2021 | DOI-BLM-WY-P060-2021-0057-DNA | DNA | No |
| 22 | ASPEN | 18E06-8NH | 5/19/2021 | DOI-BLM-WY-P060-2021-0057-DNA | DNA | No |
| 23 | ASPEN | 18E06-5NH | 5/19/2021 | DOI-BLM-WY-P060-2021-0057-DNA | DNA | No |

| 24 | STATE WEST | 4075-3625-001MH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |
|----|------------|-----------------|----------|-------------------------------|-----|-----|
| 25 | STATE WEST | 4075-3625-001NH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |
| 26 | STATE WEST | 4075-3625-002MH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |
| 27 | STATE WEST | 4075-3625-002NH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |
| 28 | STATE WEST | 4075-3625-003NH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |
| 29 | STATE WEST | 4075-3625-004NH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |
| 30 | STATE WEST | 4075-3625-003MH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |
| 31 | STATE WEST | 4075-3625-004MH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |
| 32 | STATE WEST | 4075-3625-005NH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |
| 33 | STATE WEST | 4075-3625-006NH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |
| 34 | STATE WEST | 4075-3625-007NH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |
| 35 | STATE WEST | 4075-3625-008NH | 3/1/2021 | DOI-BLM-WY-P060-2021-0059-DNA | DNA | Yes |

| 36 | SPEARHEAD | 4075-3526-003MH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |
|---|---|---|---|---|---|---|
| 37 | SPEARHEAD | 4075-3526-004MH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |
| 38 | SPEARHEAD | 4075-3526-005NH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |
| 39 | SPEARHEAD | 4075-3526-006NH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |
| 40 | SPEARHEAD | 4075-3526-007NH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |
| 41 | SPEARHEAD | 4075-3526-008NH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |
| 42 | SPEARHEAD | 4075-3526-001MH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |
| 43 | SPEARHEAD | 4075-3526-001NH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |
| 44 | SPEARHEAD | 4075-3526-003NH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |
| 45 | SPEARHEAD | 4075-3526-002MH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |
| 46 | SPEARHEAD | 4075-3526-002NH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |
| 47 | SPEARHEAD | 4075-3526-004NH | 3/17/2021 | DOI-BLM-WY-P060-2021-0060-DNA | DNA | Yes |

| 48 | SHAVANO | 2932-01H | 3/17/2021 | DOI-BLM-WY-P060-2021-0061-DNA | DNA | No |
|----|---------|----------|-----------|-------------------------------|-----|----|
| 49 | EH FED WORMHOLE | 3569-34-T2H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |
| 50 | EH FED WORMHOLE | 3569-34-N4H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |
| 51 | EH FED WORMHOLE | 3569-34-N3H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |
| 52 | EH FED WORMHOLE | 3569-15-N3H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |
| 53 | EH FED WORMHOLE | 3569-15-N4H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |
| 54 | EH FED WORMHOLE | 3569-15-T1H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |
| 55 | EH FED WORMHOLE | 3569-15-T2H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |
| 56 | EH FED WORMHOLE | 3569-15-N1H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |
| 57 | EH FED WORMHOLE | 3569-15-N2H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |
| 58 | EH FED WORMHOLE | 3569-34-T1H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |
| 59 | EH FED WORMHOLE | 3569-34-N2H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |

COMPLAINT - 41

| 60 | EH FED WORMHOLE | 3569-34-N1H | 3/1/2021 | DOI-BLM-WY-P060-2021-0062-DNA | DNA | Yes |
|----|-----------------|-------------|----------|-------------------------------|-----|-----|
| 61 | PATTON | 3973-2116-1TXH | 3/31/2021 | DOI-BLM-WY-P060-2021-0063-DNA | DNA | Yes |
| 62 | DORADO | 634 10-3H | 3/30/2021 | DOI-BLM-WY-P060-2021-0064-DNA | DNA | No |
| 63 | SFU 5-34-71 USA A | TR 20H | 3/10/2021 | DOI-BLM-WY-P060-2021-0065-DNA | DNA | No |
| 64 | SFU 5-34-71 USA A TR | 22H | 3/11/2021 | DOI-BLM-WY-P060-2021-0065-DNA | DNA | No |
| 65 | ASPEN | 21E33-5NH | 3/11/2021 | DOI-BLM-WY-P060-2021-0066-DNA | DNA | Yes |
| 66 | ASPEN | 21E33-8NH | 3/11/2021 | DOI-BLM-WY-P060-2021-0066-DNA | DNA | Yes |
| 67 | STATE | 4075-0211-002MH | 3/3/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |
| 68 | STATE | 4075-0211-003FH | 3/3/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |
| 69 | STATE | 4075-0211-004NH | 3/3/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |
| 70 | STATE | 4075-0211-001NH | 4/22/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |
| 71 | STATE | 4075-0211-008NH | 4/22/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |

| 72 | STATE | 4075-0211-007NH | 6/4/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |
|----|-------|-----------------|----------|-------------------------------|-----|-----|
| 73 | STATE | 4075-0211-005NH | 6/15/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |
| 74 | STATE | 4075-0211-006NH | 6/15/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |
| 75 | STATE | 4075-0211-002NH | 7/21/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |
| 76 | STATE | 4075-0211-004MH | 7/29/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |
| 77 | STATE | 4075-0211-003MH | 8/16/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |
| 78 | STATE | 4075-0211-001MH | 11/10/2021 | DOI-BLM-WY-P060-2021-0067-DNA | DNA | Yes |
| 79 | SDU TILLARD FED | 09-333871-1XNH | 3/11/2021 | DOI-BLM-WY-P060-2021-0070-DNA | DNA | No |
| 80 | SDU TILLARD FED | 09-333871-3XNH | 3/11/2021 | DOI-BLM-WY-P060-2021-0070-DNA | DNA | No |
| 81 | SDU TILLARD FED | 09-333871-5XNH | 3/11/2021 | DOI-BLM-WY-P060-2021-0070-DNA | DNA | No |
| 82 | PINON | 03W27-1NH | 5/3/2021 | DOI-BLM-WY-P060-2021-0071-DNA | DNA | Yes |
| 83 | PINON | 03W10-1NH | 5/11/2021 | DOI-BLM-WY-P060-2021-0071-DNA | DNA | No |

| 84 | CHIP FED | 1H | 5/24/2021 | DOI-BLM-WY-P060-2021-0074-DNA | DNA | Yes |
|---|---|---|---|---|---|---|
| 85 | STATE 3975- | 36-25-4S2H | 3/11/2021 | DOI-BLM-WY-P060-2021-0079-DNA | DNA | Yes |
| 86 | SPILLMAN DRAW UNIT | 36-73 31-2TRH | 3/19/2021 | DOI-BLM-WY-P060-2021-0080-DNA | DNA | Yes |
| 87 | JUNIPER | 19E18-8NH | 3/17/2021 | DOI-BLM-WY-P060-2021-0081-DNA | DNA | No |
| 88 | JUNIPER | 19E31-5NH | 3/17/2021 | DOI-BLM-WY-P060-2021-0081-DNA | DNA | No |
| 89 | JUNIPER | 19E18-5NH | 3/18/2021 | DOI-BLM-WY-P060-2021-0081-DNA | DNA | No |
| 90 | BOOMER FED | 3571-21-33-13WNH | 3/11/2021 | DOI-BLM-WY-P060-2021-0082-DNA | DNA | Yes |
| 91 | SANTANA FED | 3571-27-34-13ENH | 3/11/2021 | DOI-BLM-WY-P060-2021-0083-DNA | DNA | Yes |
| 92 | SANTANA FED | 3571-27-34-14ENH | 3/11/2021 | DOI-BLM-WY-P060-2021-0083-DNA | DNA | Yes |
| 93 | SPRUCE | 05E08-5NH | 3/18/2021 | DOI-BLM-WY-P060-2021-0084-DNA | DNA | Yes |
| 94 | PINON | 02W11-1NH | 5/11/2021 | DOI-BLM-WY-P060-2021-0098-DNA | DNA | Yes |
| 95 | PINON | 02W26-3NH | 5/11/2021 | DOI-BLM-WY-P060-2021-0098-DNA | DNA | Yes |

| 96 | PINON | 02W26-1MH | 5/24/2021 | DOI-BLM-WY-P060-2021-0098-DNA | DNA | Yes |
|---|---|---|---|---|---|---|
| 97 | ASPEN | 12E01-5NH | 5/11/2021 | DOI-BLM-WY-P060-2021-0101-DNA | DNA | Yes |
| 98 | ASPEN | 12E24-5NH | 5/11/2021 | DOI-BLM-WY-P060-2021-0101-DNA | DNA | Yes |
| 99 | ASPEN | 12E24-8NH | 5/24/2021 | DOI-BLM-WY-P060-2021-0101-DNA | DNA | Yes |
| 100 | JUMBO FED | 3571-3-27-4E NH | 4/6/2021 | DOI-BLM-WY-P060-2021-0102-DNA | DNA | Yes |
| 101 | JUMBO FED | 3571-3-27-3E NH | 4/6/2021 | DOI-BLM-WY-P060-2021-0102-DNA | DNA | Yes |
| 102 | JUMBO FED | 3571-3-27-4 TH | 4/6/2021 | DOI-BLM-WY-P060-2021-0102-DNA | DNA | Yes |
| 103 | OAKLEY FED | 3571-3-27-1E NH | 4/6/2021 | DOI-BLM-WY-P060-2021-0103-DNA | DNA | Yes |
| 104 | OAKLEY FED | 3571-3-27-2 TH | 4/6/2021 | DOI-BLM-WY-P060-2021-0103-DNA | DNA | Yes |
| 105 | OAKLEY FED | 3571-3-27-2 TH | 4/6/2021 | DOI-BLM-WY-P060-2021-0103-DNA | DNA | Yes |
| 106 | OAKLEY FED | 3571-3-27-2E NH | 4/6/2021 | DOI-BLM-WY-P060-2021-0103-DNA | DNA | Yes |
| 107 | BLUE HILL | 3676-10-3-34-3F2H | 4/6/2021 | DOI-BLM-WY-P060-2021-0104-CX | CX2 | Yes |

| 108 | ABBEY FED | 3671-33-28-1E NH | 4/5/2021 | DOI-BLM-WY-P060-2021-0105-DNA | DNA | No |
|-----|-----------|------------------|----------|-------------------------------|-----|-----|
| 109 | ABBEY FED | 3671-33-28-2 TH | 4/6/2021 | DOI-BLM-WY-P060-2021-0105-DNA | DNA | No |
| 110 | ABBEY FED | 3671-33-28-2E NH | 9/1/2021 | DOI-BLM-WY-P060-2021-0105-DNA | DNA | No |
| 111 | KRAMER FED | 3671-33-28-4 TH | 4/5/2021 | DOI-BLM-WY-P060-2021-0106-DNA | DNA | Yes |
| 112 | KRAMER FED | 3671-33-28-4W NH | 4/5/2021 | DOI-BLM-WY-P060-2021-0106-DNA | DNA | Yes |
| 113 | NWFU 25-34-72 USA C | PK 30H | 3/29/2021 | DOI-BLM-WY-P060-2021-0112-DNA | DNA | Yes |
| 114 | INOT | 1-22-15TH | 3/30/2021 | DOI-BLM-WY-P060-2021-0113-DNA | DNA | No |
| 115 | ASPEN | 31E07-5NH | 5/24/2021 | DOI-BLM-WY-P060-2021-0114-DNA | DNA | Yes |
| 116 | ASPEN | 31E30-5NH | 5/25/2021 | DOI-BLM-WY-P060-2021-0114-DNA | DNA | Yes |
| 117 | ASPEN | 31E30-8NH | 5/25/2021 | DOI-BLM-WY-P060-2021-0114-DNA | DNA | Yes |
| 118 | MIDGE FED | 4171-36-23-1E NH | 4/5/2021 | DOI-BLM-WY-P060-2021-0115-DNA | DNA | Yes |
| 119 | ELM | 07W06-8NH | 5/11/2021 | DOI-BLM-WY-P060-2021-0116-DNA | DNA | Yes |

COMPLAINT - 46

| 120 | ELM | 07W19-4NH | 5/11/2021 | DOI-BLM-WY-P060-2021-0116-DNA | DNA | Yes |
|---|---|---|---|---|---|---|
| 121 | ELM | 07W19-8NH | 5/11/2021 | DOI-BLM-WY-P060-2021-0116-DNA | DNA | Yes |
| 122 | ELM | 07W19-5NH | 5/11/2021 | DOI-BLM-WY-P060-2021-0116-DNA | DNA | Yes |
| 123 | GREYHOUND | 1720-19H | 3/30/2021 | DOI-BLM-WY-P060-2021-0117-DNA | DNA | No |
| 124 | GREYHOUND | 1720-17H | 3/30/2021 | DOI-BLM-WY-P060-2021-0117-DNA | DNA | No |
| 125 | KAI FED | 3671-36-25-1TH | 4/5/2021 | DOI-BLM-WY-P060-2021-0118-DNA | DNA | Yes |
| 126 | KAI FED | 3671-36-25-1E NH | 4/5/2021 | DOI-BLM-WY-P060-2021-0118-DNA | DNA | Yes |
| 127 | KAI FED | 3671-36-25-2E NH | 4/5/2021 | DOI-BLM-WY-P060-2021-0118-DNA | DNA | Yes |
| 128 | KYRA FED | 3671-36-25-3 TH | 4/5/2021 | DOI-BLM-WY-P060-2021-0119-DNA | DNA | Yes |
| 129 | KYRA FED | 3671-36-25-4E NH | 4/5/2021 | DOI-BLM-WY-P060-2021-0119-DNA | DNA | Yes |
| 130 | KYRA FED | 3671-36-25-3E NH | 4/6/2021 | DOI-BLM-WY-P060-2021-0119-DNA | DNA | Yes |
| 131 | SPRUCE | 29W17-2NH | 3/29/2021 | DOI-BLM-WY-P060-2021-0120-DNA | DNA | No |

COMPLAINT - 47

| 132 | SPRUCE | 29W32-2NH | 3/29/2021 | DOI-BLM-WY-P060-2021-0120-DNA | DNA | No |
| 133 | SDU TILLARD FED | 23-143771-1XNH | 5/24/2021 | DOI-BLM-WY-P060-2021-0121-DNA | DNA | Yes |
| 134 | SDU TILLARD FED | 23-143771-3XNH | 5/24/2021 | DOI-BLM-WY-P060-2021-0121-DNA | DNA | Yes |
| 135 | CWDU TILLARD FED | 12-133872-1XPH | 4/5/2021 | DOI-BLM-WY-P060-2021-0122-DNA | DNA | No |
| 136 | CWDU TILLARD FED | 12-133872-2XTH | 4/5/2021 | DOI-BLM-WY-P060-2021-0122-DNA | DNA | No |
| 137 | CWDU TILLARD FED | 12-133872-4XTH | 4/5/2021 | DOI-BLM-WY-P060-2021-0122-DNA | DNA | No |
| 138 | CWDU TILLARD FED | 12-243872-3XPH | 4/5/2021 | DOI-BLM-WY-P060-2021-0122-DNA | DNA | No |
| 139 | ASPEN | 29E32-8NH | 3/30/2021 | DOI-BLM-WY-P060-2021-0123-DNA | DNA | No |
| 140 | ASPEN | 29E32-6NH | 7/13/2021 | DOI-BLM-WY-P060-2021-0123-DNA | DNA | No |
| 141 | ASPEN | 29W32-4NH | 5/27/2021 | DOI-BLM-WY-P060-2021-0124-DNA | DNA | No |
| 142 | ASPEN | 29W32-1NH | 7/14/2021 | DOI-BLM-WY-P060-2021-0124-DNA | DNA | No |
| 143 | SPRUCE | 29E32-5NH | 3/29/2021 | DOI-BLM-WY-P060-2021-0125-DNA | DNA | No |

| 144 | ASPEN | 28W33-1NH | 5/5/2021 | DOI-BLM-WY-P060-2021-0126-DNA | DNA | No |
|---|---|---|---|---|---|---|
| 145 | ASPEN | 28W33-4NH | 5/5/2021 | DOI-BLM-WY-P060-2021-0126-DNA | DNA | No |
| 146 | SPRUCE | 26E14-5NH | 3/29/2021 | DOI-BLM-WY-P060-2021-0134-CX | CX3 | No |
| 147 | SPRUCE | 26E14-8NH | 3/29/2021 | DOI-BLM-WY-P060-2021-0134-CX | CX3 | No |
| 148 | JUNIPER | 30W31-1NH | 4/5/2021 | DOI-BLM-WY-P060-2021-0136-CX | CX3 | No |
| 149 | JUNIPER | 30W18-1NH | 4/12/2021 | DOI-BLM-WY-P060-2021-0136-CX | CX3 | No |
| 150 | JUNIPER | 30W18-4NH | 4/16/2021 | DOI-BLM-WY-P060-2021-0136-CX |  | No |
| 151 | JUNIPER | 30W31-4NH | 4/16/2021 | DOI-BLM-WY-P060-2021-0136-CX | CX3 | No |
| 152 | CWDU TILLARD FED | 07-193871-2XTH | 4/22/2021 | DOI-BLM-WY-P060-2021-0139-CX | CX3 | Yes |
| 153 | CWDU TILLARD FED | 07-193871-4XTH | 4/22/2021 | DOI-BLM-WY-P060-2021-0139-CX | CX3 | Yes |
| 154 | DILTS FED | 07-063972-3XTLH | 7/9/2021 | DOI-BLM-WY-P060-2021-0140-CX | CX3 | No |
| 155 | DILTS FED | 07-063972-1XTLH | 8/12/2021 | DOI-BLM-WY-P060-2021-0140-CX | CX3 | No |

| | | | | | | |
|---|---|---|---|---|---|---|
| 156 | PHOENIX | 409 25-36H | 5/11/2021 | DOI-BLM-WY-P060-2021-0146-CX | CX | No |
| 157 | PHOENIX | 426 25-36H | 5/11/2021 | DOI-BLM-WY-P060-2021-0146-CX | CX | No |
| 158 | KRATOS | 448 8-5H | 8/5/2021 | DOI-BLM-WY-P060-2021-0147-CX | CX3 | Yes |
| 159 | MEATLOAF FED | 3571-27-34-15E NH | 6/25/2021 | DOI-BLM-WY-P060-2021-0148-CX | CX3 | Yes |
| 160 | MEATLOAF FED | 3571-27-34-16E NH | 6/25/2021 | DOI-BLM-WY-P060-2021-0148-CX | CX3 | Yes |
| 161 | ASPEN | 08E05-6NH | 5/27/2021 | DOI-BLM-WY-P060-2021-0151-CX | CX3 | No |
| 162 | ASPEN | 08E05-8NH | 5/27/2021 | DOI-BLM-WY-P060-2021-0151-CX | CX3 | No |
| 163 | ASPEN | 08E20-6FH | 5/27/2021 | DOI-BLM-WY-P060-2021-0151-CX | CX3 | No |
| 164 | ASPEN | 08E20-8NH | 5/27/2021 | DOI-BLM-WY-P060-2021-0151-CX | CX3 | No |
| 165 | SPRUCE | 19E18-3SH | 6/16/2021 | DOI-BLM-WY-P060-2021-0152-CX | CX3 | Yes |
| 166 | SPRUCE | 19E18-5FH | 6/16/2021 | DOI-BLM-WY-P060-2021-0152-CX | CX3 | Yes |
| 167 | SPRUCE | 19E18-6FH | 6/16/2021 | DOI-BLM-WY-P060-2021-0152-CX | CX3 | Yes |

| 168 | SPRUCE | 19E31-3SH | 6/16/2021 | DOI-BLM-WY-P060-2021-0152-CX | CX3 | Yes |
| 169 | GRACE FEDERAL | 2425 35-73 N-DH | 6/8/2021 | DOI-BLM-WY-P060-2021-0154-CX | CX | Yes |
| 170 | TUFFY FEDERAL | 3601 35-73 N-DH | 6/10/2021 | DOI-BLM-WY-P060-2021-0154-CX | CX | Yes |
| 171 | TUFFY FEDERAL | 3601 35-73 TR-DH | 7/14/2021 | DOI-BLM-WY-P060-2021-0154-CX | CX | Yes |
| 172 | TUFFY FEDERAL | 3601 35-73 N-CH | 7/22/2021 | DOI-BLM-WY-P060-2021-0154-CX | CX | Yes |
| 173 | SHULTZ FEDERAL 1114 | 34-73 TR-DH | 6/2/2021 | DOI-BLM-WY-P060-2021-0155-CX | CX | Yes |
| 174 | SHULTZ FEDERAL | 1114 34-73 N-DH | 8/13/2021 | DOI-BLM-WY-P060-2021-0155-CX | CX | Yes |
| 175 | SDU DILTS FED | 333871-2PH | 10/15/2021 | DOI-BLM-WY-P060-2021-0156-CX | CX3 | Yes |
| 176 | SDU DILTS FED | 333871-4PH | 10/15/2021 | DOI-BLM-WY-P060-2021-0156-CX | CX3 | Yes |
| 177 | RUBY | 1819-16H | 5/25/2021 | DOI-BLM-WY-P060-2021-0162-CX | CX3 | Yes |
| 178 | CLAUSEN 11-34-71 USA A | NB 1H | 6/17/2021 | DOI-BLM-WY-P060-2021-0163-CX | CX3 | Yes |
| 179 | CLAUSEN 11-34-71 USA A | PK 31H | 6/17/2021 | DOI-BLM-WY-P060-2021-0163-CX | CX3 | Yes |

| 180 | CLAUSEN 11-34-71 USA A | NB 2H | 6/17/2021 | DOI-BLM-WY-P060-2021-0163-CX | CX3 | Yes |
|---|---|---|---|---|---|---|
| 181 | CLAUSEN 11-34-71 USA A | PK 30H | 6/17/2021 | DOI-BLM-WY-P060-2021-0163-CX | CX3 | Yes |
| 182 | MOKI FED | 3672-24-36-6W NH | 9/14/2021 | DOI-BLM-WY-P060-2021-0164-CX | CX3 | No |
| 183 | MOKI FED | 3672-24-36-5W NH | 9/14/2021 | DOI-BLM-WY-P060-2021-0164-CX | CX3 | No |
| 184 | MOKI FED | 3672-24-36-5 TH | 9/14/2021 | DOI-BLM-WY-P060-2021-0164-CX | CX3 | No |
| 185 | CLEO FED | 3672-24-36-8W NH | 6/2/2021 | DOI-BLM-WY-P060-2021-0165-CX | CX3 | Yes |
| 186 | CLEO FED | 3672-24-36-7 TH | 6/2/2021 | DOI-BLM-WY-P060-2021-0165-CX | CX3 | Yes |
| 187 | CLEO FED | 3672-24-36-7W NH | 7/29/2021 | DOI-BLM-WY-P060-2021-0165-CX | CX3 | Yes |
| 188 | CAPTAIN FED | 3671-20-32-14W NH | 6/2/2021 | DOI-BLM-WY-P060-2021-0166-CX | CX3 | Yes |
| 189 | CAPTAIN FED | 3671-20-32-13 TH | 6/2/2021 | DOI-BLM-WY-P060-2021-0166-CX | CX3 | Yes |
| 190 | CAPTAIN FED | 3671-20-32-13W NH | 6/2/2021 | DOI-BLM-WY-P060-2021-0166-CX | CX3 | Yes |
| 191 | DOLLY FED | 3671-19-31-13W NH | 6/2/2021 | DOI-BLM-WY-P060-2021-0167-CX | CX3 | Yes |

| 192 | DOLLY FED | 3671-19-31-13 TH | 6/2/2021 | DOI-BLM-WY-P060-2021-0167-CX | CX3 | Yes |
| 193 | DOLLY FED | 3671-19-31-14W NH | 6/2/2021 | DOI-BLM-WY-P060-2021-0167-CX | CX3 | Yes |
| 194 | REBA FED | 3671-30-31-15 TH | 7/12/2021 | DOI-BLM-WY-P060-2021-0169-CX | CX3 | No |
| 195 | REBA FED | 3671-30-31-15W NH | 7/13/2021 | DOI-BLM-WY-P060-2021-0169-CX | CX3 | No |
| 196 | REBA FED | 3671-30-31-16W NH | 7/13/2021 | DOI-BLM-WY-P060-2021-0169-CX | CX3 | No |
| 197 | JUNIPER | 22W15-4NH | 6/1/2021 | DOI-BLM-WY-P060-2021-0170-CX | CX3 | No |
| 198 | JUNIPER | 22W15-1NH | 6/1/2021 | DOI-BLM-WY-P060-2021-0170-CX | CX3 | No |
| 199 | JUNIPER | 22W34-1NH | 6/1/2021 | DOI-BLM-WY-P060-2021-0170-CX | CX3 | No |
| 200 | JUNIPER | 22W34-4NH | 6/1/2021 | DOI-BLM-WY-P060-2021-0170-CX | CX3 | No |
| 201 | AXEL FED | 3572-1-36-11W NH | 6/17/2021 | DOI-BLM-WY-P060-2021-0173-CX | CX3 | Yes |
| 202 | AXEL FED | 3572-1-36-12W NH | 6/17/2021 | DOI-BLM-WY-P060-2021-0173-CX | CX3 | Yes |
| 203 | AXEL FED | 3572-1-36-10 TH | 6/17/2021 | DOI-BLM-WY-P060-2021-0173-CX | CX3 | Yes |

| 204 | AXEL FED | 3572-1-36-10W NH | 6/17/2021 | DOI-BLM-WY-P060-2021-0173-CX | CX3 | Yes |
|---|---|---|---|---|---|---|
| 205 | AXEL FED | 3572-1-36-12 TH | 9/13/2021 | DOI-BLM-WY-P060-2021-0173-CX | CX3 | Yes |
| 206 | REX FED | 3571-21-33-16W NH | 6/23/2021 | DOI-BLM-WY-P060-2021-0174-CX | CX3 | No |
| 207 | REX FED | 3571-21-33-15W NH | 7/26/2021 | DOI-BLM-WY-P060-2021-0174-CX | CX3 | No |
| 208 | TRIGGER FED | 3671-32-29-2 TH | 7/7/2021 | DOI-BLM-WY-P060-2021-0176-CX | CX3 | Yes |
| 209 | TRIGGER FED | 3671-32-29-1W NH | 7/9/2021 | DOI-BLM-WY-P060-2021-0176-CX | CX3 | Yes |
| 210 | TRIGGER FED | 3671-32-29-2W NH | 7/9/2021 | DOI-BLM-WY-P060-2021-0176-CX | CX3 | Yes |
| 211 | PANDORA | 421 21-28H | 8/5/2021 | DOI-BLM-WY-P060-2021-0186-CX | CX3 | Yes |
| 212 | SPRUCE | 22W34-1NH | 7/9/2021 | DOI-BLM-WY-P060-2021-0187-CX | CX3 | Yes |
| 213 | SPRUCE | 22W34-4NH | 7/9/2021 | DOI-BLM-WY-P060-2021-0187-CX | CX3 | No |
| 214 | BIERSTADT | 1807-03H | 9/13/2021 | DOI-BLM-WY-P060-2021-0192-CX | CX3 | No |
| 215 | ELBERT | 1930-01H | 9/13/2021 | DOI-BLM-WY-P060-2021-0192-CX | CX3 | Yes |

COMPLAINT - 54

| 216 | CETUS 387006 | 29ATH | 8/30/2021 | DOI-BLM-WY-P060-2021-0212-CX | CX3 | Yes |
|---|---|---|---|---|---|---|
| 217 | CETUS 387006 | 29ATH | 8/30/2021 | DOI-BLM-WY-P060-2021-0212-CX | CX3 | Yes |
| 218 | ORCUS | 447 29-20H | 9/14/2021 | DOI-BLM-WY-P060-2021-0213-CX | CX3 | No |
| 219 | ZEUS | 423 32-5H | 9/14/2021 | DOI-BLM-WY-P060-2021-0213-CX | CX3 | No |
| 220 | CU REPP FED | 09-043769-1XNH | 10/26/2021 | DOI-BLM-WY-P060-2021-0214-CX | CX3 | Yes |
| 221 | CU REPP FED | 09-043769-3XNH | 10/26/2021 | DOI-BLM-WY-P060-2021-0214-CX | CX3 | Yes |
| 222 | CU REPP FED | 09-043769-5XNH | 10/26/2021 | DOI-BLM-WY-P060-2021-0214-CX | CX3 | Yes |
| 223 | CU REPP FED | 16-213769-5XNH | 10/26/2021 | DOI-BLM-WY-P060-2021-0214-CX | CX3 | Yes |
| 224 | LEO | 409 18-19H | 10/28/2021 | DOI-BLM-WY-P060-2021-0215-CX | CX3 | Yes |
| 225 | JUNO | 409 15-22H | 10/28/2021 | DOI-BLM-WY-P060-2021-0223-CX | CX3 | Yes |
| 226 | DIANA | 402 10-3H | 10/28/2021 | DOI-BLM-WY-P060-2021-0223-CX | CX3 | Yes |
| 227 | TOPAZ | 1324-01H | 10/6/2021 | DOI-BLM-WY-P060-2021-0228-CX | CX3 | No |

| 228 | CLAUSEN 8-34-70 USA B | NB 3H | 11/12/2021 | DOI-BLM-WY-P060-2022-0001-CX | CX3 | Yes |
|-----|-----------------------|-------|------------|------------------------------|-----|-----|
| 229 | EMERALD | 1301-04H | 11/3/2021 | DOI-BLM-WY-P060-2022-0005-CX | CX3 | No |
| 230 | SPILLMAN DRAW UNIT | 36-73 34-1NH | 11/15/2021 | DOI-BLM-WY-P060-2022-0006-CX | CX3 | No |
| 231 | SPILLMAN DRAW UNIT | 36-73 34-2NH | 11/16/2021 | DOI-BLM-WY-P060-2022-0006-CX | CX3 | No |
| 232 | STATE WIM | 4173-3526-002NH | 12/2/2021 | DOI-BLM-WY-P060-2022-0008-CX | CX3 | Yes |
| 233 | STATE WIM | 4173-3526-001MH | 12/3/2021 | DOI-BLM-WY-P060-2022-0008-CX | CX3 | Yes |
| 234 | STATE WIM | 4173-3526-002MH | 12/3/2021 | DOI-BLM-WY-P060-2022-0008-CX | CX3 | Yes |
| 235 | STATE WIM | 4173-3526-003MH | 12/3/2021 | DOI-BLM-WY-P060-2022-0008-CX | CX3 | Yes |
| 236 | STATE WIM | 4173-3526-006NH | 12/3/2021 | DOI-BLM-WY-P060-2022-0008-CX | CX3 | Yes |
| 237 | STATE WIM | 4173-3526-004NH | 12/23/2021 | DOI-BLM-WY-P060-2022-0008-CX | CX3 | Yes |
| 238 | STATE WIM | 4173-3526-004MH | 1/5/2022 | DOI-BLM-WY-P060-2022-0008-CX | CX3 | Yes |
| 239 | STATE WIM | 4173-3526-001NH | 2/11/2022 | DOI-BLM-WY-P060-2022-0008-CX | CX3 | Yes |

| 240 | LUND FED | 3570-22-N1H | 10/29/2021 | DOI-BLM-WY-P060-2022-0009-CX | CX3 | Yes |
| 241 | LUND FED | 3570-22-N2H | 10/29/2021 | DOI-BLM-WY-P060-2022-0009-CX | CX3 | Yes |
| 242 | LUND FED | 3570-22-T1H | 10/29/2021 | DOI-BLM-WY-P060-2022-0009-CX | CX3 | Yes |
| 243 | LUND FED | 3570-22-N3H | 10/29/2021 | DOI-BLM-WY-P060-2022-0009-CX | CX3 | Yes |
| 244 | SHU DOWNS FED | 05-293768-1XNH | 12/23/2021 | DOI-BLM-WY-P060-2022-0011-CX | CX3 | No |
| 245 | SHU DOWNS FED | 06-303768-3XNH | 12/23/2021 | DOI-BLM-WY-P060-2022-0011-CX | CX3 | Yes |
| 246 | SHU DOWNS FED | 06-303768-5XNH | 12/23/2021 | DOI-BLM-WY-P060-2022-0011-CX | CX3 | Yes |
| 247 | SSU MLT FED | 26-143668-5XNH | 12/15/2021 | DOI-BLM-WY-P060-2022-0012-CX | CX3 | Yes |
| 248 | SSU MLT FED | 26-143668-3XNH | 12/16/2021 | DOI-BLM-WY-P060-2022-0012-CX | CX3 | Yes |
| 249 | SSU MLT FED | 26-143668-3XNH | 12/16/2021 | DOI-BLM-WY-P060-2022-0012-CX | CX3 | Yes |
| 250 | PATTERSON 3874- | 30-19-18-3FH | 12/14/2021 | DOI-BLM-WY-P060-2022-0016-CX | CX3 | Yes |
| 251 | HORNBUCKLE | 3674-10-3-1M2H | 12/15/2021 | DOI-BLM-WY-P060-2022-0017-CX | CX3 | Yes |

| 252 | SPEARHEAD FED | 3975-0112 3SH | 12/9/2021 | DOI-BLM-WY-P060-2022-0018-CX | CX3 | Yes |
|-----|---------------|---------------|-----------|------------------------------|-----|-----|
| 253 | SPEARHEAD FED | 3975-0112 3SH | 12/9/2021 | DOI-BLM-WY-P060-2022-0018-CX | CX3 | Yes |
| 254 | PINEHURST FED 3974-0805 | 4NH | 12/23/2021 | DOI-BLM-WY-P060-2022-0019-CX | CX3 | Yes |
| 255 | SKUNK CREEK FED | 3772-0718 1FH | 12/23/2021 | DOI-BLM-WY-P060-2022-0020-CX | CX3 | Yes |
| 256 | SKUNK CREEK FED | 3772-0718 3FH | 12/23/2021 | DOI-BLM-WY-P060-2022-0020-CX | CX3 | Yes |
| 257 | NWFU 25-34-72 USA C | TR 22H | 3/29/2021 | DOI-BLM-WY-P060-2022-0021-CX | CX3 | Yes |
| 258 | NWFU 25-34-72 USA C | PK 31H | 12/23/2021 | DOI-BLM-WY-P060-2022-0021-CX | CX3 | Yes |
| 259 | NWFU 25-34-72 USA C | PK 32H | 12/23/2021 | DOI-BLM-WY-P060-2022-0021-CX | CX3 | Yes |
| 260 | NWFU 25-34-72 USA C | TR 20H | 12/23/2021 | DOI-BLM-WY-P060-2022-0021-CX | CX3 | Yes |
| 261 | NWFU 25-34-72 USA C | TR 21H | 12/23/2021 | DOI-BLM-WY-P060-2022-0021-CX | CX3 | Yes |
| 262 | NWFU 25-34-72 USA C | TR 23H | 12/23/2021 | DOI-BLM-WY-P060-2022-0021-CX | CX3 | Yes |
| 263 | CASCADE FED | 3873-3427 1FH | 12/13/2021 | DOI-BLM-WY-P060-2022-0023-CX | CX3 | Yes |

| 264 | CITRA FED | 3773-0310 1FH | 12/13/2021 | DOI-BLM-WY-P060-2022-0023-CX | CX3 | Yes |
|---|---|---|---|---|---|---|
| 265 | CENTENNIAL FED | 3773-0409 1FH | 12/23/2021 | DOI-BLM-WY-P060-2022-0024-CX | CX3 | Yes |
| 266 | CENTENNIAL FED | 3773-0409 1NH | 12/23/2021 | DOI-BLM-WY-P060-2022-0024-CX | CX3 | Yes |
| 267 | DUCK CREEK FED | 3773-3229 1NH | 1/18/2022 | DOI-BLM-WY-P060-2022-0025-DNA | DNA | No |
| 268 | NITRO FED | 3569-6-T1H | 12/23/2021 | DOI-BLM-WY-P060-2022-0028-CX | CX3 | No |
| 269 | NITRO FED | 3569-19-T4H | 1/21/2022 | DOI-BLM-WY-P060-2022-0028-CX | CX3 | Yes |
| 270 | NEWMAN FED 3773-2413 | 3FH | 12/23/2021 | DOI-BLM-WY-P060-2022-0029-CX | CX3 | No |
| 271 | WILLOW CREEK FED 3773-2536 | 1FH | 12/23/2021 | DOI-BLM-WY-P060-2022-0029-CX | CX3 | No |
| 272 | WILLOW CREEK FED 3773-2536 | 1NH | 12/23/2021 | DOI-BLM-WY-P060-2022-0029-CX | CX3 | No |
| 273 | ELBERT | 1930-02H | 12/20/2021 | DOI-BLM-WY-P060-2022-0030-CX | CX3 | No |
| 274 | ELBERT | 1930-03H | 12/20/2021 | DOI-BLM-WY-P060-2022-0030-CX | CX3 | No |
| 275 | JUNO | 444 15-22H | 1/13/2022 | DOI-BLM-WY-P060-2022-0034-DNA | DNA | No |

| 276 | MIDGE FED | 4171-36-24-3E NH | 1/14/2022 | DOI-BLM-WY-P060-2022-0041-DNA | DNA | Yes |
| 277 | MIDGE FED | 4171-36-24-4 TH | 1/14/2022 | DOI-BLM-WY-P060-2022-0041-DNA | DNA | Yes |
| 278 | VIRGO | 306 33-28H | 2/3/2022 | DOI-BLM-WY-P060-2022-0042-DNA | DNA | Yes |
| 279 | VIRGO | 519 33-28H | 2/3/2022 | DOI-BLM-WY-P060-2022-0042-DNA | DNA | Yes |
| 280 | VIRGO | 534 33-28H | 2/3/2022 | DOI-BLM-WY-P060-2022-0042-DNA | DNA | Yes |
| 281 | VIRGO | 547 33-28H | 2/3/2022 | DOI-BLM-WY-P060-2022-0042-DNA | DNA | Yes |
| 282 | DILTS FED | 15-033972-3XPH | 1/27/2022 | DOI-BLM-WY-P060-2022-0043-DNA | DNA | Yes |
| 283 | HORNER 24-33-69 USA B | NB 1H | 2/3/2022 | DOI-BLM-WY-P060-2022-0047-DNA | DNA | Yes |
| 284 | HORNER 24-33-69 USA B | NB 3H | 2/3/2022 | DOI-BLM-WY-P060-2022-0047-DNA | DNA | Yes |
| 285 | HUCKLEBERRY FED | 3570-12-N8H | 2/14/2022 | DOI-BLM-WY-P060-2022-0048-DNA | DNA | Yes |
| 286 | HUCKLEBERRY FED | 3570-12-T4H | 2/14/2022 | DOI-BLM-WY-P060-2022-0048-DNA | DNA | Yes |
| 287 | HUCKLEBERRY FED | 3570-25-N1H | 2/18/2022 | DOI-BLM-WY-P060-2022-0048-DNA | DNA | Yes |

COMPLAINT - 60

| 288 | HUCKLEBERRY FED | 3570-25-N5H | 2/18/2022 | DOI-BLM-WY-P060-2022-0048-DNA | DNA | Yes |
|---|---|---|---|---|---|---|
| 289 | HUCKLEBERRY FED | 3570-25-T1H | 2/18/2022 | DOI-BLM-WY-P060-2022-0048-DNA | DNA | Yes |
| 290 | HUCKLEBERRY FED | 3570-25-N8H | 2/28/2022 | DOI-BLM-WY-P060-2022-0048-DNA | DNA | Yes |
| 291 | HUCKLEBERRY FED | 3570-12-N5H | 3/2/2022 | DOI-BLM-WY-P060-2022-0048-DNA | DNA | Yes |
| 292 | HUCKLEBERRY FED | 3570-25-T4H | 3/2/2022 | DOI-BLM-WY-P060-2022-0048-DNA | DNA | Yes |
| 293 | BFU FED | 11-15V | 4/15/2022 | DOI-BLM-WY-P060-2022-0049-DNA | DNA | No |
| 294 | TINY FED | 3671-17-20-15 TH | 4/1/2022 | DOI-BLM-WY-P060-2022-0052-DNA | DNA | Yes |
| 295 | TINY FED | 3671-17-20-15E NH | 4/1/2022 | DOI-BLM-WY-P060-2022-0052-DNA | DNA | Yes |
| 296 | TINY FED | 3671-17-20-16E NH | 4/1/2022 | DOI-BLM-WY-P060-2022-0052-DNA | DNA | Yes |
| 297 | TINY FED | 3671-17-5-1E NH | 4/1/2022 | DOI-BLM-WY-P060-2022-0052-DNA | DNA | Yes |
| 298 | TINY FED | 3671-17-5-2 TH | 4/1/2022 | DOI-BLM-WY-P060-2022-0052-DNA | DNA | Yes |
| 299 | TINY FED | 3671-17-5-2E NH | 4/1/2022 | DOI-BLM-WY-P060-2022-0052-DNA | DNA | Yes |

| 300 | JACK FED | 3671-18-6-1E NH | 4/1/2022 | DOI-BLM-WY-P060-2022-0055-DNA | DNA | Yes |
| 301 | JACK FED | 3671-18-6-2 TH | 4/1/2022 | DOI-BLM-WY-P060-2022-0055-DNA | DNA | Yes |
| 302 | JACK FED | 3671-18-6-2E NH | 4/1/2022 | DOI-BLM-WY-P060-2022-0055-DNA | DNA | Yes |
| 303 | CLAUSEN 25-34-71 USA A | PK 31H | 6/15/2022 | DOI-BLM-WY-P060-2022-0056-DNA | DNA | No |
| 304 | CLAUSEN 25-34-71 USA  A | PK 32H | 6/15/2022 | DOI-BLM-WY-P060-2022-0056-DNA | DNA | No |
| 305 | CLAUSEN 25-34-71 USA  A | PK 33H | 6/15/2022 | DOI-BLM-WY-P060-2022-0056-DNA | DNA | No |
| 306 | KALI FED | 3671-16-21-13 TH | 4/1/2022 | DOI-BLM-WY-P060-2022-0058-DNA | DNA | Yes |
| 307 | KALI FED | 3671-16-21-13W NH | 4/1/2022 | DOI-BLM-WY-P060-2022-0058-DNA | DNA | Yes |
| 308 | KALI FED | 3671-16-21-14W NH | 4/1/2022 | DOI-BLM-WY-P060-2022-0058-DNA | DNA | Yes |
| 309 | KALI FED | 3671-16-4-3W NH | 4/1/2022 | DOI-BLM-WY-P060-2022-0058-DNA | DNA | Yes |
| 310 | KALI FED | 3671-16-4-4 TH | 4/1/2022 | DOI-BLM-WY-P060-2022-0058-DNA | DNA | Yes |
| 311 | KALI FED | 3671-16-4-4W NH | 4/1/2022 | DOI-BLM-WY-P060-2022-0058-DNA | DNA | Yes |

| | | | | | | |
|---|---|---|---|---|---|---|
| 312 | CITRA FED | 3773-1003 3FH | 4/8/2022 | DOI-BLM-WY-P060-2022-0059-DNA | DNA | Yes |
| 313 | GLENDO FED | 3872-1621 1NH | 5/12/2022 | DOI-BLM-WY-P060-2022-0070-DNA | DNA | Yes |
| 314 | CASSIDY FED | 3773-1720 4MH | 6/15/2022 | DOI-BLM-WY-P060-2022-0071-DNA | DNA | Yes |
| 315 | CITRA FED | 3773-0310 1NH | 7/5/2022 | DOI-BLM-WY-P060-2022-0073-DNA | DNA | Yes |
| 316 | CITRA FED | 3773-0310 2NH | 7/5/2022 | DOI-BLM-WY-P060-2022-0073-DNA | DNA | Yes |
| 317 | GEMINI | 334 11-2H | 5/12/2022 | DOI-BLM-WY-P060-2022-0077-DNA | DNA | Yes |
| 318 | PISCES | 334 14-23H | 5/12/2022 | DOI-BLM-WY-P060-2022-0077-DNA | DNA | Yes |
| 319 | PISCES | 347 14-23H | 5/12/2022 | DOI-BLM-WY-P060-2022-0077-DNA | DNA | Yes |
| 320 | CLAUSEN 12-34-71 USA C | NB 3H | 6/15/2022 | DOI-BLM-WY-P060-2022-0078-DNA | DNA | No |
| 321 | CLAUSEN 12-34-71 USA C | NB 4H | 6/15/2022 | DOI-BLM-WY-P060-2022-0078-DNA | DNA | No |
| 322 | CLAUSEN 12-34-71 USA C | PK 30H | 6/15/2022 | DOI-BLM-WY-P060-2022-0078-DNA | DNA | No |
| 323 | CLAUSEN 12-34-71 USA C | PK 31H | 6/15/2022 | DOI-BLM-WY-P060-2022-0078-DNA | DNA | No |

| 324 | VELA | 306 4-9H | 5/12/2022 | DOI-BLM-WY-P060-2022-0081-DNA | DNA | Yes |
|---|---|---|---|---|---|---|
| 325 | VELA | 319 4-9H | 5/12/2022 | DOI-BLM-WY-P060-2022-0081-DNA | DNA | Yes |
| 326 | VELA | 334 4-9H | 5/12/2022 | DOI-BLM-WY-P060-2022-0081-DNA | DNA | Yes |
| 327 | VIRGO | 347 33-28H | 5/12/2022 | DOI-BLM-WY-P060-2022-0081-DNA | DNA | Yes |
| 328 | CARINA | 347 5-8H | 5/12/2022 | DOI-BLM-WY-P060-2022-0081-DNA | DNA | Yes |
| 329 | GEMINI | 306 11-2H | 6/15/2022 | DOI-BLM-WY-P060-2022-0082-DNA | DNA | No |
| 330 | GEMINI | 319 11-2H | 6/15/2022 | DOI-BLM-WY-P060-2022-0082-DNA | DNA | No |
| 331 | PISCES | 409 14-23H | 6/15/2022 | DOI-BLM-WY-P060-2022-0082-DNA | DNA | No |
| 332 | GEMINI | 506 11-2H | 6/15/2022 | DOI-BLM-WY-P060-2022-0082-DNA | DNA | No |
| 333 | GEMINI | 519 11-2H | 6/15/2022 | DOI-BLM-WY-P060-2022-0082-DNA | DNA | No |
| 334 | WIL E COYOTE FEDERAL | 2833 35-73 TR-DH | 7/21/2022 | DOI-BLM-WY-P060-2022-0086-DNA | DNA | Yes |
| 335 | WIL E COYOTE FEDERAL | 2833 35-73 N-CH | 7/22/2022 | DOI-BLM-WY-P060-2022-0086-DNA | DNA | Yes |

| 336 | SHEILA | 7-6-35-67-1H | 8/1/22 | DOI-BLM-WY-P060-2022-0088-DNA | DNA | Yes |
| 337 | SHEILA | 7-6-35-67-1H | 8/1/2022 | DOI-BLM-WY-P060-2022-0088-DNA | DNA | Yes |
| 338 | NEWMAN FED 3773-2413 | 1FH | 7/19/2022 | DOI-BLM-WY-P060-2022-0090-DNA | DNA | No |
| 339 | TUFFY FEDERAL | 3601 35-73 N-BH | 7/12/2022 | DOI-BLM-WY-P060-2022-0093-DNA | DNA | Yes |
| 340 | TUFFY FEDERAL | 3601 35-73 TR-AH | 7/12/2022 | DOI-BLM-WY-P060-2022-0093-DNA | DNA | Yes |
| 341 | ABBEY FED | 3671-33-9-13E NH | 6/21/2022 | DOI-BLM-WY-P060-2022-0094-DNA | DNA | Yes |
| 342 | ABBEY FED | 3671-33-9-14E NH | 6/21/2022 | DOI-BLM-WY-P060-2022-0094-DNA | DNA | Yes |
| 343 | ABBEY FED | 3671-33-9-15 SXH | 6/21/2022 | DOI-BLM-WY-P060-2022-0094-DNA | DNA | Yes |
| 344 | ABBEY FED | 3671-33-9-15E NH | 6/21/2022 | DOI-BLM-WY-P060-2022-0094-DNA | DNA | Yes |
| 345 | ABBEY FED | 3671-33-9-16E NH | 6/21/2022 | DOI-BLM-WY-P060-2022-0094-DNA | DNA | Yes |
| 346 | ARTEMIS | 347 35-26H | 7/19/2022 | DOI-BLM-WY-P060-2022-0095-DNA | DNA | Yes |
| 347 | DORADO | 334 10-3H | 6/21/2022 | DOI-BLM-WY-P060-2022-0099-DNA | DNA | No |

| 348 | DORADO | 534 10-3H | 6/21/2022 | DOI-BLM-WY-P060-2022-0099-DNA | DNA | No |
| 349 | DORADO | 547 10-3H | 6/21/2022 | DOI-BLM-WY-P060-2022-0099-DNA | DNA | No |
| 350 | OAKLEY FED | 3571-3-10-15 PH | 7/5/2022 | DOI-BLM-WY-P060-2022-0102-DNA | DNA | No |
| 351 | OAKLEY FED | 3571-3-10-15E NH | 7/5/2022 | DOI-BLM-WY-P060-2022-0102-DNA | DNA | No |
| 352 | OAKLEY FED | 3571-3-10-16E NH | 7/5/2022 | DOI-BLM-WY-P060-2022-0102-DNA | DNA | No |
| 353 | OAKLEY FED | 3571-3-27-2 PH | 7/5/2022 | DOI-BLM-WY-P060-2022-0102-DNA | DNA | Yes |
| 354 | OAKLEY FED | 3571-3-27-3 PH | 7/5/2022 | DOI-BLM-WY-P060-2022-0102-DNA | DNA | Yes |
| 355 | JUMBO FED | 3571-3-10-13E NH | 7/5/2022 | DOI-BLM-WY-P060-2022-0104-DNA | DNA | No |
| 356 | JUMBO FED | 3571-3-10-14E NH | 7/5/2022 | DOI-BLM-WY-P060-2022-0104-DNA | DNA | No |
| 357 | CORVUS | 334 9-4H | 7/19/2022 | DOI-BLM-WY-P060-2022-0107-DNA | DNA | Yes |
| 358 | LYNX | 306 17-20H | 7/19/2022 | DOI-BLM-WY-P060-2022-0108-DNA | DNA | Yes |
| 359 | CRATER | 306 8-5H | 7/19/2022 | DOI-BLM-WY-P060-2022-0108-DNA | DNA | Yes |

COMPLAINT - 66

| 360 | BUSTER FEDERAL | 3502 35-73 TR-DH | 7/26/2022 | DOI-BLM-WY-P060-2022-0110-DNA | DNA | Yes |
|---|---|---|---|---|---|---|
| 361 | CRATER | 347 8-5H | 8/1/2022 | DOI-BLM-WY-P060-2022-0121-DNA | DNA | Yes |
| 362 | TITAN | 444 26-35H | 8/18/22 | DOI-BLM-WY-P060-2022-0124-DNA | DNA | |
| 363 | BFU FED | 31-31V | 8/18/22 | DOI-BLM-WY-P060-2022-0125-DNA | DNA | No |
| 364 | BFU FED | 21-31V | 8/18/22 | DOI-BLM-WY-P060-2022-0126-DNA | DNA | No |
| 365 | CU DOWNS FED | 24-133769-3XNH | 8/18/22 | DOI-BLM-WY-P060-2022-0127-DNA | DNA | No |
| 366 | CU DOWNS FED | 24-133769-5XNH | 8/18/22 | DOI-BLM-WY-P060-2022-0127-DNA | DNA | No |
| 367 | MARYS DRAW | 203-3130H | 7/28/2021 | | | |
| 368 | SSU MLT FED | 26-143668-1XNH | 12/16/2021 | | | |
| 369 | STATE WIM | 4173-3526-002FH | 1/6/2022 | | | |
| 370 | STATE WIM | 4173-3526-001FH | 2/11/2022 | | | |
| 371 | NWFU 25-34-72 USA C | PK 33H | 3/10/2022 | | | |

COMPLAINT - 67

| 372 | JACK FED | 3671-18-19-15E NH | 4/1/2022 | | | |
|---|---|---|---|---|---|---|
| 373 | JACK FED | 3671-18-19-16E NH | 4/1/2022 | | | |
| 374 | KELPIE | 0805-17H | 7/18/2022 | | | |
| 375 | KELPIE | 0805-18H | 7/18/2022 | | | |
| 376 | KELPIE | 0805-19H | 7/18/2022 | | | |
| 377 | GREYHOUND | 1720-18H | 7/18/2022 | | | |