IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **POWDER RIVER BASIN RESOURCE COUNCIL and WESTERN WATERSHEDS PROJECT**, | |
| Plaintiffs, | |
| v. | |
| **U.S. DEPARTMENT OF THE INTERIOR and U.S. BUREAU OF LAND MANAGEMENT**, | |
| Defendants, | |
| and | Case No. 1:22-cv-2696-TSC |
| **CONTINENTAL RESOURCES, INC.**<br>20 N. Broadway<br>Oklahoma City, OK 73102 | |
| and | |
| **DEVON ENERGY PRODUCTION COMPANY, L.P.**<br>333 West Sheridan Avenue<br>Oklahoma City, OK 73102, | |
| Proposed Defendants-Intervenors | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO INTERVENE AS DEFENDANTS**

The real parties in interest in this litigation are: (1) energy producers who have invested

hundreds of millions of dollars and years of valuable time to secure both the real property interests

and lawful permits to produce oil and natural gas from federal, state, and private minerals located

in Converse County, Wyoming; (2) private land and mineral owners who are seeking to use and

benefit from their Converse County property in a lawful manner; and (3) the State of Wyoming,

which holds constitutionally recognized authority over the use of non-federally owned surface lands in the state. The substantive interests and rights of these real parties in interest are being threatened by the two Plaintiffs—environmental non-profit associations dedicated to opposing fossil-fuel development in the United States.[1] These associations claim their membership has an interest in requiring the Bureau of Land Management (BLM) assert extra-territorial jurisdiction over state- and privately owned surface lands based on dubious excerpts from decades old statutes governing the management of federal subsurface minerals. On this thin reed, Plaintiffs seek to halt oil and gas development on the subject lands in Converse County that was approved by the BLM and Secretary of the Interior in December 2020 after a rigorous, time- and effort-intensive review, detailed environmental analysis, and fully transparent public process that included the State of Wyoming. Plaintiffs are wrong, both ideologically and legally. The federal defendants' thorough environmental review was both sound and adequate under the law. Plaintiffs' untimely and unmerited challenge fails and should be dismissed for numerous reasons.

---

[1] Plaintiffs and other environmental groups have launched a barrage of anti-fossil-fuel lawsuits in the past few years, in multiple jurisdictions, seeking to push multiple theories that would halt domestic oil and gas production from federal minerals. *See, e.g.*, Compl., *Ctr. For Biological Diversity v. U.S. Dep't of the Interior*, No. 1:22-cv-01716 (D.D.C. June 15, 2022), ECF No. 1 (challenging over three thousand federal permits to drill oil and gas wells); *Friends of the Earth v. Haaland*, 583 F. Supp. 3d 113 (D.D.C. 2022) (challenging federal offshore oil and gas lease sale in the Gulf of Mexico); *WildEarth Guardians v. Bernhardt*, 501 F. Supp. 3d 1192 (D.N.M. 2020) (challenging federal onshore oil and gas lease sales in New Mexico); *WildEarth Guardians v. U.S. Bureau of Land Mgmt.*, 457 F. Supp. 3d 880 (D. Mont. 2020) (challenging federal onshore oil and gas lease sale in Montana); *W. Watersheds Project v. Zinke*, 441 F. Supp. 3d 1042 (D. Idaho 2020) (challenging federal onshore oil and gas lease sales in Wyoming, Utah, and Montana); *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41 (D.D.C. 2019) (challenging federal onshore oil and gas lease sales in Wyoming, Colorado, and Utah). Plaintiffs' offensive is ironic given that (1) they themselves are using more fossil fuels than before and (2) stopping domestic federal production does nothing to curb fossil-fuel consumption—it merely forces domestic consumers to use foreign-produced oil and gas, which is produced with less stringent environmental and employment regulations.

Two of the energy producers most impacted by Plaintiffs' ideological lawsuit are Continental Resources, Inc. (Continental) and Devon Energy Production Company, L.P. (Devon) (collectively, the Energy Producers). The Energy Producers own nearly five hundred thousand acres of leaseholds within the Project boundaries and hold over twenty-five percent of the federal permits issued to date. The Energy Producers' interests and rights cannot be adequately protected by the federal defendants, whose interests are not the same and who have been and will likely continue to provide inconsistent policy directives. As just one example:

**Joseph Biden, March 15, 2020:** "No more drilling on federal lands. No more drilling, including offshore. No ability for the oil industry to continue to drill, period, ends, number one."[2]

**Joseph Biden, March 8, 2022:** "It's simply not true that my administration or policies are holding back domestic energy production. . . . In the United States, 90% of onshore oil production takes place on land that isn't owned by the federal government. And of the remaining 10% that occurs on federal land, the oil and gas industry has millions of acres leased," Biden said. "They have 9,000 permits to drill now. They could be drilling right now, yesterday, last week, last year. They have 9,000 to drill onshore that are already approved."[3]

Further, the Energy Producers' rights and interests at stake in this litigation cannot be adequately represented by industry trade associations alone. While trade associations may and should be allowed to advocate on behalf of the oil and gas industry for the inherent fairness and legitimacy of the regulatory process targeted by Plaintiffs, it is the Energy Producers who have property, equipment, personnel, ongoing operations and contractual relationships, and millions of dollars placed at risk each day Plaintiffs' claims remain pending. Only the Energy Producers have

---

[2] Washington Free Beacon, *Biden calls for banning oil companies from drilling*, YOUTUBE (March 15, 2020), https://www.youtube.com/watch?v=_M_kMDSdISQ.

[3] Remarks by President Biden Announcing U.S. Ban on Imports of Russian Oil, Liquefied Natural Gas, and Coal, THE WHITE HOUSE: ROOSEVELT ROOM (March 8, 2022, 11:25 AM), https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/03/08/remarks-by-president-biden-announcing-u-s-ban-on-imports-of-russian-oil-liquefied-natural-gas-and-coal.

the capability to specifically advocate for their own property and economic rights impacted by Plaintiffs' lawsuit. For these reasons, the Energy Producers seek to intervene in this litigation to protect their lawful property interests and rights.[4]

The Energy Producers respectfully submit this Statement of Points and Authorities in Support of their Motion to Intervene under Rule 24 of the Federal Rules of Civil Procedure.

## BACKGROUND

### I.   THE PROJECT.

In 2014, BLM and the U.S. Forest Service began scoping and soliciting public input for the Converse County Oil and Gas Project (the Project).[5] For the next six years, the federal agencies, the Project proponents, the State of Wyoming, and the public worked diligently to develop, scrutinize, and address stakeholder input for the environmental analysis on the Project.[6] The meticulous work of the federal agencies and stakeholders resulted in a 1,108-page, two-volume Final Environmental Impact Statement (FEIS) that is accompanied by nine appendices.[7] BLM estimates the associated cost to develop and produce the FEIS at $6,492,000.[8]

---

[4] The Energy Producers' proposed pleading in response to Plaintiffs' Complaint, filed September 7, 2022 (ECF No. 1), is attached as Exhibit A to this Statement of Points and Authorities.

[5] Notice of Intent to Prepare an Environmental Impact Statement and Amendments to the Casper Resource Management Plan and Thunder Basin National Grassland Land and Resource Management Plan, Converse County, Wyoming, 79 Fed. Reg. 28,538, 28,538-39 (May 16, 2014) (outlining the Project and the agencies' request for public input).

[6] *See* Bureau of Land Mgmt., *BLM National NEPA Register*, DOI-BLM-WY-P060-2014-0135-EIS,  https://eplanning.blm.gov/eplanning-ui/project/66551/570 (last visited Oct. 28, 2022) (containing the documents and comments related to the scoping, Project proposal, NEPA analysis, and resource management plan amendment for the Project from 2014 to 2020).

[7] Bureau of Land Mgmt., *Environmental Impact Statement for Converse County Oil & Gas Project* (2020); *see also* Bureau of Land Mgmt., *BLM National NEPA Register*, DOI-BLM-WY-P060-2014-0135-EIS, https://eplanning.blm.gov/eplanning-ui/project/66551/570 (last visited Oct. 28, 2022) (providing links to appendices A through I to the FEIS).

[8] Bureau of Land Mgmt., *Converse Cty. Oil & Gas Project, Record of Decision*, at 3 (Dec. 23, 2020), *available at* https://eplanning.blm.gov/eplanning-ui/project/66551/570.

On December 23, 2020, Secretary of the Interior, David L. Bernhardt, signed the record of decision and approved the Project.[9] The Project covers nearly 1.5 million acres in Converse County, Wyoming, the surface of which is 83% privately owned and BLM administers roughly 64% of the underlying mineral estate.[10] The Project contemplates the drilling of approximately 5,000 oil and gas wells over a 10-year period.[11] The wells are anticipated to have a productive life of approximately thirty years.[12] Most of the wells that require federal permits are anticipated to be drilled on private surface over private minerals, only impacting federal minerals through horizontal drilling.[13] BLM believes "[t]he project is expected to generate roughly 8,000 jobs and approximately $18 to $28 billion in federal revenues."[14]

## II.     THE ENERGY PRODUCERS' INTERESTS.

Devon is a leading independent oil and natural gas exploration and production company focused on onshore development in the United States. Devon is a results-oriented company that builds value for shareholders through its employees by creating a culture of health, safety, and environmental stewardship in an atmosphere of optimism, teamwork, creativity and resourcefulness, and by dealing with everyone in an open and ethical manner.[15] Relevant to this lawsuit, Devon owns and operates federal, state, and fee oil and gas leases, surface use agreements,

---

[9] Bureau of Land Mgmt., *Converse Cty. Oil & Gas Project, Record of Decision*, at 3 (Dec. 23, 2020). The record of decision and related NEPA documents will be contained in the federal defendants' administrative record. The Court may access the exhibits through the "BLM National NEPA Register": https://eplanning.blm.gov/eplanning-ui/project/66551/570.

[10] *Id.* at 4.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] Bureau of Land Mgmt., *BLM Wyoming Issues Decision for Converse County Oil & Gas Project* (Dec. 23, 2020), https://www.blm.gov/press-release/blm-wyoming-issues-decision-converse-county-oil-and-gas-project.

[15] Dec. of Rebecca A. Byram in Supp. of Mot. to Intervene, ¶ 3 (Oct. 31, 2022) (Byram Dec.).

permits, wells, and related infrastructure in the Powder River Basin of Wyoming, including in Converse County.[16]

Continental is a top ten independent oil producer in the United States and a leader in America's energy renaissance. Continental is among the most efficient and cost-effective producers of oil and natural gas due to its investments in the United States and premier portfolio of assets in unconventional resources plays in North Dakota, Montana, Oklahoma, Wyoming, and Texas.[17] Relevant to this lawsuit, Continental owns oil and gas leases, permits, wells, and related infrastructure in the Powder River Basin of Wyoming, including in Converse County.[18]

Devon and Continental's predecessor-in-interest[19]—among other companies, sometimes referred to as the Operator Group—proposed the Project to the Casper, Wyoming field office of BLM.[20] The Energy Producers' participation in the development of the proposed Project required significant involvement from employees and contractors—estimated to be hundreds of hours—and the payment of significant direct costs.[21]

The Energy Producers also participated (themselves or through their predecessors-in-interest) at every stage of the public participation process in developing the National Environmental Policy Act (NEPA) analysis for the Project, including commenting on the Draft

---

[16] *Id.* at ¶ 4.

[17] Dec. of Emily Cozyris in Supp. of Mot. to Intervene, ¶ 3 (Nov. 1, 2022) (Cozyris Dec.).

[18] *Id.* at ¶ 4.

[19] Continental acquired some of its mineral leasehold interests in Converse County in 2021 from several different predecessors, one of which was a member of the Operator Group. For simplicity, the Energy Producers will refer to Continental and Continental's predecessors-in-interest collectively as Continental. Cozyris Dec., ¶ 7.

[20] Bureau of Land Mgmt., *Converse Cty. Oil & Gas Project, Record of Decision*, at 4 (Dec. 23, 2020); Byram Dec., ¶ 7; Cozyris Dec., ¶ 7.

[21] Byram Dec., ¶ 8; *see* Cozyris Dec., ¶ 7-8.

Environmental Impact Statement (DEIS),[22] the Supplemental Draft EIS (SDEIS),[23] and the FEIS and protesting the proposed resource management plan amendment.[24] The Energy Producers' participation in the development of the underlying NEPA documents required significant involvement from the Energy Producers' employees, contractors, and lawyers—estimated to be hundreds hours[25]—and direct expenses estimated at over $1,000,000.[26]

The Energy Producers are the lessees under oil and gas leases covering almost five-hundred-thousand acres of combined private, State of Wyoming, and federal minerals within the Project's boundaries.[27] The Energy Producers have invested hundreds of millions of dollars in securing these lease rights and related surface use agreements.[28]

The Energy Producers have applied for and BLM has approved nearly one hundred Applications for Permit to Drill (APDs) within the Project's geographic scope.[29] The Energy Producers have also submitted APDs that are pending approval by BLM within the Project's boundaries.[30] In the future, the Energy Producers intend to submit additional APDs for approval within the Project's boundaries.[31]

---

[22] Byram Dec., ¶ 9; *see* Ex. A to Byram Dec., ¶ 10, Letter from Kathleen Schroder to Mike Robinson (Mar. 12, 2018) (containing Operator Group's comments to draft EIS).
[23] *See* Ex. B to Byram Dec., ¶ 11, Letter from Kathleen Schroder to Mike Robinson (July 25, 2019) (containing Operator Group's comments to supplemental draft EIS).
[24] *See* Ex. C to Byram Dec., ¶ 12, Letter from Kathleen Schroder to BLM Director (Aug. 31, 2020) (containing Operator Group's comments to final EIS and proposed resource management plan amendments).
[25] Byram Dec., ¶ 13; *see* Cozyris Dec., ¶¶ 7-8.
[26] Byram Dec., ¶ 13; *see* Cozyris Dec., ¶¶ 7-8.
[27] Byram Dec., ¶ 14; *see* Cozyris Dec., ¶ 9.
[28] Byram Dec., ¶ 15; Cozyris Dec., ¶¶ 8-10.
[29] Byram Dec., ¶¶ 16-17 & Ex. D to Byram Dec.; Cozyris Dec., ¶¶ 11-12 & Ex. A to Cozyris Dec.
[30] Byram Dec., ¶ 19; Cozyris Dec., ¶ 14.
[31] Byram Dec., ¶ 20; Cozyris Dec., ¶ 15.

A majority of the Energy Producers' approved APDs and those pending approval and contemplated to be submitted for approval in the future are for wells located on non-federal surface and directly above non-federal minerals.[32] In those cases, federal minerals will only be accessed through horizontal drilling.[33] This scenario is often referred to as "fee-fee-fed."[34] The federal defendants have historically taken the position, and implemented an official policy, that they do not have the statutory authority to regulate surface operations for fee-fee-fed wells and related infrastructure.[35] The Energy Producers relied on the federal defendants' historical position and official policy in developing their current and future operations under the Project.[36]

The Energy Producers conduct their operations according to carefully planned schedules that are designed to efficiently develop their assets within the Project's boundaries.[37] In developing a drilling schedule, the Energy Producers must meticulously coordinate exploratory work, drilling, completions, and the building of infrastructure to facilitate the development.[38] The timing and success of the drilling schedule heavily depends on the permitting process, including BLM's issuance of APDs.[39]

To facilitate the development of its leases and related APDs within the Project's boundaries, the Energy Producers have executed contracts with third-party service companies and

---

[32] Byram Dec., ¶ 21; Cozyris Dec., ¶ 16.
[33] Byram Dec., ¶ 21; Cozyris Dec., ¶ 16.
[34] Byram Dec., ¶ 21; Cozyris Dec., ¶ 16.
[35] Byram Dec., ¶ 21; Cozyris Dec., ¶ 16; *see also* BLM, Permanent Instr. Mem. No. 2018-014 (June 12, 2018), *available at* https://www.blm.gov/policy/pim-2018-014 (outlining BLM's policy and lack of statutory authority to regulate surface operations on fee-fee-fed wells).
[36] Byram Dec., ¶ 21; Cozyris Dec., ¶ 16.
[37] Byram Dec., ¶ 23; Cozyris Dec., ¶ 18.
[38] Byram Dec., ¶ 23; Cozyris Dec., ¶ 18.
[39] Byram Dec., ¶ 23; Cozyris Dec., ¶ 18.

suppliers.[40] Some of these contracts require an upfront and non-refundable payment by the Energy Producers and many cannot readily be cancelled without financial payment.[41]

## III.   THE PLAINTIFFS' LAWSUIT IMPAIRS THE ENERGY PRODUCERS' INTERESTS.

The Plaintiffs' challenge to the Project and related APDs threatens to impair the Energy Producers' property, economic, and regulatory interests.[42] Plaintiffs request that the underlying agency actions be enjoined or vacated, which would impair the Energy Producers' rights by delaying or stopping the Energy Producers' ability to develop.[43] Among other things, this impairment will include: (1) loss of employee and contractor time and direct costs in developing and supporting the Project from proposal to approval; (2) loss of investment in leasing mineral acreage within the Project's boundaries, securing related surface use agreements, drilling existing wells pursuant to already issued APDs, and building related infrastructure to facilitate that production; (3) potential lost drilling locations and the inability to recover oil and gas reserves because federal minerals cannot be accessed; (4) interference with existing contractual relationships between the Energy Producers and their suppliers and service companies that were entered to facilitate development of the Project and APDs; and (5) an extension of federal regulation to an area where the federal defendants have no statutory authority and in which the agencies have a policy of not regulating. Furthermore, Plaintiffs' requested relief may enjoin or stop the Energy Producers' future plans for developing their assets within the Project boundaries.[44]

---

[40] Byram Dec., ¶ 22; Cozyris Dec., ¶ 17.
[41] Byram Dec., ¶ 22; Cozyris Dec., ¶ 17.
[42] Byram Dec., ¶ 6; Cozyris Dec., ¶ 6.
[43] Byram Dec., ¶ 6; Cozyris Dec., ¶ 6.
[44] Byram Dec., ¶ 6; Cozyris Dec., ¶ 6.

As some of the challenged APDs were issued as early as December 2020, the Energy Producers have already drilled and completed several wells pursuant to those APDs.[45] Those wells are producing oil and gas.[46] If Plaintiffs were successful in enjoining or vacating the Project and related APDs, the Energy Producers could be subject to further uncertainty for those producing wells as Plaintiffs will likely argue those wells lack valid BLM approval.[47] Plaintiffs could even argue the Energy Producers should be forced to shut-in those wells—shutting in wells is likely to have negative impacts on the ultimate recovery from the wells, the potential for damage to the wells and related infrastructure, and unnecessary excess surface disturbances that Plaintiffs claim they are attempting to prevent.[48]

Even temporary interruptions to the permitting process would disrupt the Energy Producers' carefully planned drilling schedule and could cause the Energy Producers to incur additional operational and third-party expenses.[49] Delays could also impair the Energy Producers' broader lease and property rights.[50] The Energy Producers' leases often have a limited period in which the lessee must initiate drilling.[51] Without timely drilling, leases can be subject to termination or automatically terminate.[52] The Energy Producers' inability to execute their drilling schedules because of Plaintiffs' lawsuit could subject the Energy Producers to termination of their property rights secured by the leases within the Project's boundaries.[53]

---

[45] Byram Dec., ¶ 18; Cozyris Dec., ¶ 13.
[46] Byram Dec., ¶ 18; Cozyris Dec., ¶ 13.
[47] Byram Dec., ¶ 18; Cozyris Dec., ¶ 13.
[48] *See* Byram Dec., ¶ 18.
[49] Byram Dec., ¶ 24; Cozyris Dec., ¶ 19.
[50] Byram Dec., ¶ 24; Cozyris Dec., ¶ 19.
[51] Byram Dec., ¶ 24; Cozyris Dec., ¶ 19.
[52] Byram Dec., ¶ 24; Cozyris Dec., ¶ 19.
[53] Byram Dec., ¶ 24; Cozyris Dec., ¶ 19.

The Energy Producers also own non-operated working interests within the Project's boundaries.[54] This means Devon or Continental is not the operator or applicant for the applicable APD, but the proposed well will produce from a spacing unit that contains minerals leased by either Devon or Continental.[55] In this scenario, the Energy Producers are responsible for paying their proportionate share of the costs to drill and produce such a well and will receive their proportionate share of the revenue generated. If Plaintiffs were to successfully enjoin or vacate the Project and related APDs, the Energy Producers' non-operated working interests and related investments and expected revenue would also be impaired.[56]

## ARGUMENT

## I.    THE ENERGY PRODUCERS ARE ENTITLED TO INTERVENE BY RIGHT.

Rule 24(a)(2) of the Federal Rules of Civil Procedure affords any party the right to intervene in an action if: (i) the motion to intervene is timely; (ii) the movant claims an interest relating to the property or transaction that is the subject of the action; (iii) the movant's interest may be impaired or impeded; and (iv) the existing parties do not adequately represent the movant's position. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). This Court and the United States Court of Appeals for the D.C. Circuit have "taken a liberal approach to intervention." *See, e.g.*, *The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 12, 18 (D.D.C. 2000) (citing *Nat'l Res. Def. Council v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977)). Because the Energy Producers' motion is timely and because the Energy Producers' interests in this lawsuit will be impaired by Plaintiffs' requested relief, the Energy Producers are entitled to intervene in this action.

---

[54] Byram Dec., ¶ 25; Cozyris Dec., ¶ 20.
[55] Byram Dec., ¶ 25; Cozyris Dec., ¶ 20.
[56] Byram Dec., ¶ 25; Cozyris Dec., ¶ 20.

In nearly identical circumstances, this Court and others have allowed the proponent of an oil and gas development project, who additionally holds permits for the development of that project, to intervene by right when BLM's approval of the project and permits is challenged. *Theodore Roosevelt Conservation P'ship v. Salazar*, 605 F. Supp. 2d 263, 269 (D.D.C. 2009) (recognizing that the proponents of an oil and gas development project who had received permits were allowed to intervene in two separate challenges to the project's approval); *see also Biodiversity Conservation All. v. Bureau of Land Mgmt.*, No. 09-CV-08-J, 2010 WL 3209444, at *14 (D. Wyo. June 10, 2010) (recognizing similar intervention of the project proponents during the administrative appeal and participation in subsequent litigation); Order Granting Mot. to Intervene, *Citizens for a Healthy Cmty. v. U.S. Dep't of the Interior*, No. 21-cv-01268-MSK (D. Colo. July 8, 2021), ECF No 9 (granting intervention to oil and gas project proponent when environmental groups challenged federal approval of the project). Furthermore, this Court and others routinely recognize the rights of a company to intervene when litigation challenges its leases, permits, projects, or other regulatory interests. *See, e.g.*, *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 14-15 (D.D.C. 2010) (granting intervention to company who proposed leasing of adjacent federal coal reserves in lawsuit challenging the federal decision to lease those parcels when the company would likely have been the successful bidder); *S. Utah Wilderness All. v. Norton*, No. Civ.A. 01-2518(CKK), 2002 WL 32617198, at *5 (D.D.C. June 28, 2002) (allowing company who held two federal oil and gas leases to intervene when the issuance of those leases was challenged); *Nat'l Parks Conservation Ass'n v. U.S. Env't Prot. Agency*, 759 F.3d 969, 975 (8th Cir. 2014) (allowing utility company to intervene where environmental groups sought to increase regulatory burdens on the company's power plant). The refusal to grant a federal oil and gas leaseholder intervention by right in a challenge to its leases—even after a trade association had

been granted intervention to advocate for the industry and the district court had ruled on summary judgment in the first stage of the case—has been reversed for abuse of discretion. *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835-42 (9th Cir. 2022).

**A.**     ***The Energy Producers' Motion is Timely.***

In the D.C. Circuit, "[t]imeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties to the case." *Amador Cnty., Cal. v. U.S. Dep't of the Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014) (internal quotation marks omitted). The Energy Producers' motion to intervene is timely.

Plaintiffs filed this lawsuit less than two months ago on September 7, 2022. *See* Compl. (Sept. 7, 2022), ECF No. 1. Federal defendants have filed no responsive motion or pleading, and their deadline to do so is not until November 18, 2022. *See* Fed. R. Civ. P. 12(a)(2); Return of Service/Affidavit (Sept. 26, 2022), ECF No. 12. Furthermore, this action has neither had any material developments, nor has the Court taken any non-ministerial actions. As will be explained below, the Energy Producers seek to intervene to protect their legal rights, which only intervention in this lawsuit will afford. Accordingly, the Energy Producers' intervention will not prejudice any party or delay the development of this lawsuit. Because the Energy Producers sought intervention early and their participation will neither delay nor prejudice these proceedings, the Energy Producers' motion is timely. *See Fund For Animals*, 322 F.3d at 735 ("First, the NRD's motion was timely. The NRD moved to intervene less than two months after the plaintiffs filed their complaint and before the defendants filed an answer."); *Virginia v. Ferriero*, 466 F. Supp. 3d 253, 256 (D.D.C. 2020) (finding motion to intervene timely when it was filed "prior to any meaningful developments in the case"); *Campaign Legal Ctr. v. Fed. Election Comm'n*, 334 F.R.D. 1, 6

(D.D.C. 2019) (finding motion to intervene that was filed less than two months after complaint and before the defendant answered timely).

  **B.**    ***The Energy Producers' Interests in This Suit Are Clear.***

  The D.C. Circuit's "'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). "An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit." *Id.* The Energy Producers have an obvious substantial and protectable interest in the outcome of this lawsuit. The Energy Producers are the proponents of the Project that Plaintiffs seek to invalidate and they hold APDs to drill wells within the Project. The Energy Producers have invested many hundreds of millions of dollars in the acquisition of oil and gas leaseholds within the Project area and the construction of infrastructure to support the development of those leaseholds. Furthermore, the Energy Producers have expended tremendous financial and human resources working with BLM and community stakeholders to prepare and complete the environmental review for the Project.

  Plaintiffs here seek to enjoin or completely set aside the Project and related APDs the Energy Producers have proposed and secured. Were Plaintiffs to prevail, their requested relief would have a significant and direct impact on the Energy Producers' property, economic, and regulatory interests. More specifically, it would deprive the Energy Producers of their ability to develop their oil and gas assets now and restrict the Energy Producers' ability to work with regulators and stakeholders to plan for the development of its assets in the future.

  For these reasons, the Energy Producers also have Article III standing. *Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 320 (D.C. Cir. 2015) ("[T]he standards for constitutional standing and the second factor of the test for intervention are the same."

(citing *Fund For Animals*, 332 F.3d at 735)). If the Plaintiffs obtain the remedy they seek, the Energy Producers will suffer an injury in fact in the form of loss or delayed development of the Project and use of their APDs and leases. The Energy Producers thus have standing because they are the direct beneficiaries of the federal defendants' actions creating economic rights in the APDs, property rights in the related leases, and regulatory rights in the underlying NEPA analysis. An unfavorable decision in this litigation would deprive the Energy Producers of these benefits. *See Crossroads*, 788 F.3d at 317 ("Our cases have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit.").

C. ***The Energy Producers' Interests Will be Impaired Without Intervention.***

The D.C. Circuit looks to "the practical consequences" of denying intervention to determine potential impairment to an applicant's interests. *Nat'l Res. Def. Council v. Castle*, 561 F.2d 904, 909-10 (D.C. Cir. 1977). As explained above, the Energy Producers' interests in the Project, underlying NEPA analysis, and related APDs would be impaired if the Energy Producers are not permitted to intervene in this litigation. The relief that Plaintiffs seek would prevent the Energy Producers from developing their oil and gas assets within the Project area and would severely restrict the Energy Producers' ability to plan further development within the region. At a minimum, any delay of operations will substantially compromise the Energy Producers' production activities. Oil and gas development requires coordination with a wide range of contractors and service providers on a schedule that commits money and resources often many months in advance of the date when operations are to commence. Once contractually committed, operators cannot simply choose not to conduct operations without incurring liability for material and services for which the operator has already contracted.

Furthermore, Plaintiffs seek a declaration from this Court to extend the federal defendants' regulatory reach to areas in which the federal defendants have no statutory authority and have implemented a policy disavowing any such authority. If Plaintiffs were to be successful, the Energy Producers would be subject to another layer of regulatory jurisdiction, and its attendant costs, in addition to the state and local regulations and private agreements with which the Energy Producers comply. *See Nat'l Parks Conservation Ass'n*, 759 F.3d at 976 (recognizing that an intervenor company had a sufficient interest and impairment when environmental group sought to compel agency regulation of the company's operations).

The relief Plaintiffs seek would result in increased costs in exploring for and producing oil and natural gas, impeding the Energy Producers' development of the Project, undermining the Energy Producers' leasehold interests, and potentially stranding millions of dollars of investments already made. *See, e.g.*, *Wildearth Guardians*, 272 F.R.D. at 14-15 (finding impairment of interest of intervenor company when the BLM decision was favorable to the company, "the present action is a direct attack on that decision," and an adverse decision from the court would prevent the company from developing the leaseholds "in the foreseeable future"); *S. Utah Wilderness All.*, 2002 WL 32617198, at *5 (finding impairment of interest of intervenor company when plaintiff requested rescission of BLM oil and gas leases for additional NEPA compliance).

### D.  *Existing Parties Will Not Adequately Represent The Energy Producers.*

The burden to demonstrate inadequate representation "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Fund For Animals*, 322 F.3d 728, 735 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). The D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Id.* at 736 & n.9 (collecting cases holding the government does not adequately represent the proposed

intervenor). That is because a government entity is "charged by law with representing the public interests of its citizens," whereas, proposed intervenor Energy Producers "seek[] to protect a more narrow and 'parochial' financial interest not shared by the citizens." *Id.* at 737 (citing *Dimond v. Dist. of Columbia*, 792 F.2d 179, 191-92 (D.C. Cir. 1983)). The government "would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest." *Id.* (citing *Dimond*, 792 F.2d at 191-92).

The interests of the Energy Producers as non-federal entities with a direct economic, property, and regulatory stake in the controversy are very different from the interests of the federal defendants.[57] Although the Energy Producers and the federal defendants may share certain common goals, such partial overlap of interests does not guarantee that the federal defendants will adequately represent the Energy Producers' interests. And, even if the Energy Producers' and the federal defendants' interests overlap at the outset, that is no guarantee that the federal defendants "position will remain static or unaffected by unanticipated policy shifts." *Nat'l Parks Conservation Ass'n*, 759 F.3d at 977 (concluding the federal agency could not adequately represent the private company's more narrow financial interests not shared by the public). Given federal defendants' multiple use role in balancing environmental protection and oil and gas development, the Energy Producers cannot rely on the federal defendants to represent the Energy Producers' interests any more than Plaintiffs could. Because the federal defendants have no obligation to protect the Energy Producers' economic, property, and regulatory interests in the Project, the federal defendants cannot adequately represent the Energy Producers in this lawsuit.

---

[57] *See* Byram Dec., ¶ 26.

## II.   THE ENERGY PRODUCERS ARE ALSO ENTITLED TO PERMISSIVE INTERVENTION.

In addition to qualifying for intervention as of right, the Energy Producers satisfy the prerequisites for permissive intervention. Under Rule 24(b)(1)(B), the Court may grant permissive intervention when a movant demonstrates "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998) (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)); *see also* Fed. R. Civ. P. 24(b)(1)(B). Whether to grant permissive intervention lies within this Court's discretion. *See Nat'l Children's Ctr.*, 146 F.3d at 1042. "[I]n exercising its discretion, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Energy Producers satisfy these standards. First, the Court has subject matter jurisdiction over the Energy Producers' affirmative claims and defenses because all issues in this lawsuit arise out of the laws of the United States—primarily, NEPA, the Federal Land Policy Management Act, the Mineral Leasing Act, and the Administrative Procedure Act. *See* 28 U.S.C. § 1331. Second, as discussed above, this motion is timely as the Energy Producers moved to intervene less than two months after Plaintiffs filed their Complaint and before the federal defendants answered. Third, the Energy Producers' claims and defenses share common questions of law and fact with the allegations and claims in Plaintiffs' Complaint and federal defendants' anticipated answer. The questions of law derive from the statutory and regulatory obligations imposed by the relevant federal statues listed above. The questions of fact all stem from federal defendants' actions in conducting the related environmental review and approving the Project. Furthermore, not only will the Energy Producers' participation not prejudice the adjudication of

Plaintiffs' challenges, their participation is necessary to ensure that the Court's review is complete and thorough. None of the existing parties will be able to provide the detailed understanding of the Energy Producers' anticipated operations under the challenged Project that the Energy Producers themselves can. That understanding will facilitate the Court's ability to evaluate whether the environmental review the federal defendants prepared is commensurate to the operations that the Energy Producers have proposed. Because the Energy Producers' unique knowledge of their own proposals will assist the Court to resolve this case, the Energy Producers are entitled to permissive intervention.

### **CONCLUSION**

Plaintiffs' lawsuit threatens to compromise the Energy Producers' ability to protect their investment in the Project and undermine the Energy Producers' efforts to ensure that the environmental review conducted for the Project was thorough, responsible, and legally adequate. Because the Energy Producers are legally entitled to participate in this case and because the Energy Producers' participation will facilitate the Court's ability to resolve Plaintiffs' challenges, the Court should grant the Energy Producers' intervention by right or, alternatively, permissive intervention.

Respectfully submitted this 1st day of November, 2022.

*/s/ L. Poe Leggette*
L. Poe Leggette (D.C. Bar No. 430136)
Elizabeth A. Pursley (*Application Submitted to D.D.C. Bar Pending December Admission Date*)
Bailey A. Bridges (*Application Submitted to D.D.C. Bar Pending December Admission Date*)
Baker & Hostetler LLP
811 Main St., Suite 1100
Houston, Texas 77002
Telephone: 713.751.1600 / Fax: 713.751.1717
pleggette@bakerlaw.com
epursley@bakerlaw.com
bbridges@bakerlaw.com

Alexander K. Obrecht (CO. Bar No. 46937)
Baker & Hostetler LLP
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
Telephone: 303.861.0600 / Fax: 303.861.7805
aobrecht@bakerlaw.com

*Attorneys for Defendants-Intervenors*
*Continental Resources, Inc. and*
*Devon Energy Production Company, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of November, 2022, I served a true and correct copy of the foregoing **STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS** via the Court's electronic case filing system which will cause the foregoing to be served upon all counsel of record.

Attorneys for Plaintiffs

Todd C. Tucci
Sarah Stellberg
Hanna A. Goldblatt
ADVOCATES FOR THE WEST
P. O. Box 1612
Boise, Idaho 83702
208.342.7024
ttucci@advocateswest.org
sstellberg@advocateswest.org
hclements@advocateswest.org

Attorneys for Federal Defendants

Todd S. Kim
Michael K. Robertson
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
202-305-9606
michael.robertson@usdoj.gov

_/s/ L. Poe Leggette_
L. Poe Leggette