# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| POWDER RIVER BASIN RESOURCE COUNCIL et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR et al.,<br><br>    Defendants. | No. 1:22-cv-02696-TSC |

## ANSCHUTZ EXPLORATION CORPORATION'S MOTION TO INTERVENE

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

CONFERRAL WITH PARTIES...........................................................................3

ARGUMENT ...........................................................................................................4

1.    AEC has a right to intervene under Rule 24(a)...........................................4

    1.1    AEC has standing to intervene.........................................................4

    1.2    AEC meets all the requirements of Rule 24(a) ..............................6

        1.2.1 The first element is met because this motion is timely .........................................6

        1.2.2 The second element is met because AEC has a significantly protected interest in the permits at the heart of this lawsuit ................................................8

        1.2.3 The third element is met because disposition of this case may impair AEC's ability to protect its interests in its wells ................................................10

        1.2.4 The fourth element is met because the current parties do not adequately represent AEC's interests ...................................................................11

2.    In the alternative, the Court should permit AEC to intervene under Rule 24(b)(1)(B) ........15

CONCLUSION .....................................................................................................17

CERTIFICATE OF SERVICE ..........................................................................18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abrams v. Blackburne & Sons Realty Cap. Corp.*,
   No. 2:19-CV-06947-CAS (AS), 2020 WL 1445712 (C.D. Cal. Mar. 25, 2020)......................13

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
   584 F. Supp. 2d 1 (D.D.C. 2008) ........................................................................................5, 10

*Am. Horse Prot. Ass'n v. Veneman*,
   200 F.R.D. 153 (D.D.C. 2001).................................................................................................5

*Aristotle Int'l, Inc. v. NGP Software, Inc.*,
   714 F. Supp. 2d 1 (D.D.C. 2010) ..........................................................................................15

*Bldg. & Constr. Trades Dep't., AFL–CIO v. Reich*,
   40 F.3d 1275 (D.C. Cir. 1994)................................................................................................4

*Castro County v. Crespin*,
   101 F.3d 121 (D.C. Cir. 1996)............................................................................................4, 5

*City of Williams v. Dombeck*,
   No. 00-0066(CKK), 2000 WL 33675559 (D.D.C. Aug. 17, 2000) .........................................7

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
   788 F.3d 312 (D.C. Cir. 2015)......................................................................................4, 5, 14

*\*Ctr. for Biological Diversity v. U.S. Dep't of Interior*,
   No. 1:22-cv-01716-TSC (D.D.C. Nov. 9, 2022).....................................................5, 7, 9, 10, 12

*Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*,
   No. 10-0254-WS-C, 2010 WL 5139101 (S.D. Ala. Dec. 9, 2010) .........................................13

*Dimond v. District of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986)..............................................................................................11

*EEOC v. Nat'l Children's Ctr.*,
   146 F.3d 1042 (D.C. Cir. 1998).............................................................................................15

*Env't Def. v. Leavitt*,
    329 F. Supp. 2d 55 (D.D.C. 2004) ............................................................................8

*Env't Def. Ctr. v. Bureau of Safety and Env't Enf't*,
    No. CV 14-9281, 2015 WL 12734012 (C.D. Cal. Apr. 2, 2015) ............................13

*Foster v. Gueory*,
    655 F.2d 1319 (D.C. Cir. 1981).........................................................................9, 11

*Freedom from Religion Found., Inc v. Geithner*,
    644 F.3d 836 (9th Cir. 2011) ..............................................................................15

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003)...............................................4, 6, 8, 9, 10, 11, 12

*Hardin v. Jackson*,
    600 F. Supp. 2d 13 (D.D.C. 2009) ......................................................................12

*Hodgson v. United Mine Workers of Am.*,
    473 F.2d 118 (D.C. Cir. 1972)...............................................................................6

*In re Consol. Salmon Cases*,
    688 F. Supp. 2d 1001 (E.D. Cal. 2010) ...............................................................13

*Karsner v. Lothian*,
    532 F.3d 876 (D.C. Cir. 2008)...............................................................................6

*Levin v. Ruby Trading Corp.*,
    333 F.2d 592 (2d Cir. 1964) ...............................................................................10

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990).............................................................................................7

*MGM Glob. Resorts Dev., LLC v. U.S. Dep't of Interior*,
    No. 19-2377 (RC), 2020 U.S. Dist. LEXIS 169262 (D.D.C. Sept. 16, 2020) ......2, 3

*Mova Pharm. Corp. v. Shalala*,
    140 F.3d 1060 (D.C. Cir. 1998).............................................................................8

*Nat'l Wildlife Fed'n v. Burford*,
    878 F.2d 422 (D.C. Cir. 1989)...............................................................................7

*Natural Res. Def. Council v. Costle*,
　　561 F.2d 904 (D.C. Cir. 1977)................................................................12

*Roane v. Gonzales*,
　　269 F.R.D. 1 (D.D.C. 2010)....................................................................16

*Roane v. Leonhart*,
　　741 F.3d 147 (D.C. Cir. 2014)...............................................................16

*Roane v. Tandy*,
　　No. 12-5020, 2012 WL 3068444 (D.C. Cir. July 6, 2012)....................16

*S. Utah Wilderness v. Norton*,
　　No. CIV.A. 01-2518 (CKK), 2002 WL 32617198 (D.D.C. June 28, 2002) ...........................6

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*,
　　331 F.R.D. 5 (D.D.C. 2019) .................................................................4, 7

*SEC v. Prudential Sec. Inc.*,
　　136 F.3d 153 (D.C. Cir. 1998)................................................................9

*SEC v. Ross*,
　　504 F.3d 1130 (9th Cir. 2007) ...............................................................2

*Theodore Roosevelt Conserv. P'ship v. Salazar*,
　　605 F. Supp. 2d 263 (D.D.C. 2009) .....................................................10

*Trbovich v. United Mine Workers*,
　　404 U.S. 528 (1972)..............................................................................11

*United States v. AT&T*,
　　642 F.2d 1285 (D.C. Cir. 1980)........................................................6, 11

*United States v. Colo. Organic Chem. Co.*,
　　No. 98-CV-1600-WYD, 2015 WL 6590783 (D. Colo. Oct. 30, 2015)...................................14

*W. Watersheds Project v. Haaland*,
　　No. 20-35693 (9th Cir. Jan. 5, 2022) .................................................9, 13

*WildEarth Guardians v. Haaland*,
　　No. 1:21-cv-00175-RC (D.D.C. July 14, 2021)...................................7, 11, 12, 14

*_WildEarth Guardians v. Salazar_,
    272 F.R.D. 4 (D.D.C. 2010) ...........................................................................6, 9, 10, 11

**Statutes, Regulations, and Rules**

Fed. R. Civ. P. 24 ............................................................................................................17

Fed. R. Civ. P. 24(a) ....................................................................................3, 4, 5, 6, 8, 9, 16

Fed. R. Civ. P. 24(a)(2) ......................................................2, 3, 4, 6, 8, 9, 10, 11, 14

Fed. R. Civ. P. 24(b) ........................................................................................3, 14, 15, 16

Fed. R. Civ. P. 24(b)(1) ......................................................................................................3

Fed. R. Civ. P. 24(b)(1)(B) ....................................................................................4, 14, 16

Fed. R. Civ. P. 24(b)(3) ..............................................................................................14, 15

Local Civil Rule 7(m) .........................................................................................................3

**Other Authorities**

7C Charles Alan Wright et al., _Federal Practice and Procedure_ § 1917 (3d ed. 2007) ...............15

**INTRODUCTION**

Anschutz Exploration Corporation ("AEC") is an independent oil-and-gas exploration and development company that operates in Colorado, Utah, and Wyoming. DeDominic Decl. ¶ 2 (Ex. 1). Since its founding, AEC has focused on responsible development of oil-and-gas resources in the Rocky Mountains, and its drilling-and-development program includes federal leases in the Powder River Basin of Wyoming. *Id.* ¶ 4.

Plaintiffs Powder River Basin Resource Council and Western Watersheds Project challenge the Converse County Oil and Gas Project located in Wyoming and applications for permits to drill ("APDs") that were approved within the project area by the U.S. Department of Interior and the Bureau of Land Management. Am. Compl. ¶ 1, ECF No. 44. They contend that, in approving the project and these APDs, Defendants violated the National Environmental Policy Act ("NEPA"), the Federal Land Policy and Management Act ("FLPMA"), and the Administrative Procedure Act ("APA"). *Id.* ¶ 7.

AEC holds 80 of the challenged permits. DeDominic Decl. ¶ 6. Of those 80 permits, AEC has not yet drilled wells for 26 of them. *Id.* ¶ 7. For 18 of them, AEC has drilled or is drilling wells. *Id.* ¶ 8. And for 36 of them, AEC has already drilled and those wells are connected to gathering systems and currently producing oil and gas. *Id.* ¶ 9. AEC also has at least 5 applications for permits to drill within the Converse County project area pending BLM review and approval, and AEC intends to continue submitting new applications to BLM regularly, including at least 35 APDs within the project area in 2023. *Id.* ¶¶ 10–11.

Plaintiffs want the Court to vacate the project and challenged APD approvals. Am. Compl. ¶ 8. Among other things, they ask the Court to declare that the project and approved APDs are unlawful, and to "[r]everse and set aside" the project and the approved APDs. *Id.* at 36.

In seeking to vacate AEC's permits, Plaintiffs are asking the Court to destroy AEC's property and contractual rights to explore and develop federal oil-and-gas wells for which AEC paid millions of dollars, and in which AEC has invested millions more. But like other plaintiffs who have tried the same tactic in recent cases,[1] Plaintiffs did not name AEC as a defendant. Nor did they name any of the other leaseholders whose permits are at risk. This is not a trivial matter. It's a matter of constitutional due process. AEC now seeks to intervene to defend its permits, including by moving to dismiss Plaintiffs' challenges to AEC's permits or to sever the portion of the case challenging AEC's permits and transfer venue over that portion to the District of Wyoming. As explained in the motion to dismiss filed concurrently, AEC is a required party under Rule 19, but joinder is not feasible because the Court lacks personal jurisdiction over AEC, so this case as it applies to AEC should be dismissed. But even if AEC were subject to personal jurisdiction here, the Court should still sever Plaintiffs' challenges to AEC's permits and transfer them to a more appropriate venue: the District of Wyoming.

The Court should allow AEC to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2).[2] AEC's motion is timely. It comes before Defendants have answered the

---

[1] *See, e.g., Ctr. for Biological Diversity v. U.S. Dep't of Interior*, No. 1:22-cv-01716 (D.D.C. filed June 15, 2022); *WildEarth Guardians v. Bernhardt*, No. 1:21-cv-00175-RC (D.D.C. filed Jan. 19, 2021); *W. Watersheds Project v. Zinke*, No. 01:18-cv-187, ECF No. 165 (D. Idaho 2018) (Second Amended Complaint, which does not name AEC as a defendant); *Mont. Wildlife Fed'n v. Bernhardt*, No. 4:18-cv-69 (D. Mont. June 28, 2018), ECF No. 19 (Amended Complaint, which does not name AEC as a defendant).

[2] By moving to intervene, AEC does not consent to the Court exercising personal jurisdiction over it. To the contrary, as reflected in AEC's proposed response to the complaint under Rule 24(c) attached as Exhibit 2 to this motion, AEC intends to argue that the Court should dismiss Plaintiffs' challenges to AEC's permits under Rule 12(b)(7), because AEC is a required party under Rule 19, but cannot be joined for lack of personal jurisdiction. *See SEC v. Ross*, 504 F.3d 1130, 1150 (9th Cir. 2007) (holding that a party may intervene by right under Rule 24(a)(2) and then assert a personal-jurisdiction defense at the appropriate time); *cf. MGM Glob. Resorts Dev., LLC v. U.S. Dep't*

amended complaint and before the Court has entered a scheduling order. AEC "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). There is no question that AEC validly secured its permits through established BLM protocols. Plaintiffs do not argue to the contrary. And Plaintiffs' action threatens to impair AEC's unique interests. AEC's permits are affected by (a) Defendants' actions related to the oil-and-gas leasing and development at issue in this lawsuit, (b) Plaintiffs' claims that Defendants violated the law, and (c) the Court's adjudication of this case. AEC moves to intervene as the only party that can adequately protect its interests.

Alternatively, the Court should grant AEC permissive intervention under Rule 24(b)(1) because AEC's defenses of its permits share common questions of law and fact with the positions and arguments of other parties to the lawsuit.

Whether under Rule 24(a) or 24(b), the Court should recognize that AEC—as the holder of permitted APDs that Plaintiffs hope to obliterate—should be a party to this case. The Court should grant this motion.

## CONFERRAL WITH PARTIES

Under Local Civil Rule 7(m), AEC conferred with counsel for the parties about this motion. Plaintiffs intend to respond to the motion. Defendants take no position on the motion. Proposed Intervenors Continental Resources, Inc; Devon Energy Production Company, L.P.; and Petroleum

---

*of Interior*, No. 19-2377 (RC), 2020 U.S. Dist. LEXIS 169262, at *14–20 (D.D.C. Sept. 16, 2020) (holding that a party may intervene by right specifically to contest the court's jurisdiction to hear the case).

Association of Wyoming do not oppose the motion. Proposed Intervenor State of Wyoming also does not oppose this motion.

## ARGUMENT

The Court should allow AEC to intervene for two reasons. First, AEC has standing to participate as a defendant and has a right to intervene under Rule 24(a)(2). Second, at a minimum, AEC should be permitted to intervene under Rule 24(b)(1)(B).

**1.    AEC has a right to intervene under Rule 24(a).**

**1.1    AEC has standing to intervene.**

In the D.C. Circuit, a party seeking to intervene must establish the same constitutional standing that it would have to establish had it commenced the lawsuit. *Bldg. & Constr. Trades Dep't., AFL–CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994). A potential intervenor's Article III standing "presents a question going to this [C]ourt's jurisdiction" and is thus addressed first. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003); *Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 9 (D.D.C. 2019). A defendant–intervenor is no different from a plaintiff–intervenor: it also must demonstrate standing. *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 318 (D.C. Cir. 2015). But a defendant–intervenor's burden to show standing is not heavy: "[f]or standing purposes, it is enough that a plaintiff seeks relief, which, if granted, would injure the prospective intervenor." *Id.*

An entity seeking to intervene as a party in a case challenging agency action must establish injury in fact from the agency's action, that the injury was caused by the agency's action, and that the injury will be redressed by the court setting aside the agency's action. *Castro County v. Crespin*, 101 F.3d 121, 126 (D.C. Cir. 1996). "It would follow that, when a party seeks to intervene as a

defendant to uphold what the government has done, it would have to establish that it will be injured in fact by the setting aside of the government's action it seeks to defend, that this injury will have been caused by that invalidation, and the injury would be prevented if the government action is upheld." *Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001) (citing *Crespin*, 101 F.3d at 126).

Applying these principles here yields an easy answer: AEC has standing. The injury AEC would suffer if Plaintiffs were to prevail and the Court were to order BLM to cancel AEC's permits would be the loss of AEC's property interests and financial investments in the permitted wells. This is thus a classic case in which Plaintiffs seek relief, which, if granted, will injure AEC. That is enough to establish AEC's standing. *See Crossroads*, 788 F.3d at 318.

Indeed, this Court has concluded in another case in which the plaintiffs challenged AEC's permits that AEC satisfied the standing requirement. *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, No. 1:22-cv-01716-TSC, slip op. at 5–6 (D.D.C. Nov. 9, 2022), ECF No. 75. There, the Court explained that AEC satisfied the injury-in-fact element because AEC benefits "from the approval of the APDs and would lose that benefit in the event of an unfavorable decision." *Id.* at 5. And AEC satisfied the causation and redressability elements because a "favorable decision from this [C]ourt would preserve that benefit." *Id.* at 6. That reasoning applies with equal force here.

Finally, as this Court has recognized, a putative intervenor who satisfies Rule 24(a) will also have Article III standing. *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 7 (D.D.C. 2008). Because AEC satisfies Rule 24(a), as shown below, AEC meets this Court's Article III standing requirement.

**1.2    AEC meets all the requirements of Rule 24(a).**

"The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). Under Rule 24(a), the movant must satisfy four elements: (1) the motion to intervene is timely; (2) the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by existing parties. *Fund for Animals*, 322 F.3d at 731; *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008); Fed. R. Civ. P. 24(a)(2). Courts construe Rule 24(a) liberally in favor of intervention. *See, e.g.*, *S. Utah Wilderness v. Norton*, No. CIV.A. 01-2518 (CKK), 2002 WL 32617198, at *5 (D.D.C. June 28, 2002) (describing the D.C. Circuit's position on Rule 24(a)(2) as a "liberal approach").

**1.2.1 The first element is met because this motion is timely.**

A district court has discretion when considering the timeliness element. *See Fund for Animals*, 322 F.3d at 732. Courts evaluate timeliness based on (a) the time elapsed since the action began, (b) the probability of prejudice to those already party to the proceedings, (c) the purpose for which intervention is sought, and (d) the need for intervention as a means for preserving the putative intervenor's rights. *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 12 (D.D.C. 2010); *see also United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). Timeliness is "judged in consideration of all the circumstances," including "the need for intervention as a means of preserving the applicant's rights." *AT&T*, 642 F.2d at 1295. In particular, the Court should look to the date that the party seeking to intervene "knew or should have known that any of [his] rights would be

directly affected" by the litigation. *Nat'l Wildlife Fed'n v. Burford*, 878 F.2d 422, 434 (D.C. Cir. 1989), *rev'd on other grounds sub nom. Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990).

All these timeliness factors favor AEC.

First, no significant time has elapsed between when Plaintiffs filed this lawsuit and when AEC filed this motion. Plaintiffs filed the lawsuit on September 7, 2022, and amended on December 14, 2022. AEC seeks to intervene only a few months after Plaintiffs started this action, about two weeks after Plaintiffs amended, before Defendants have answered the amended complaint, before the Court has ruled on other pending motions to intervene, and after carefully analyzing Plaintiffs' allegations and concluding that this case may affect AEC's unique property and contractual rights, and investments in its wells—and possibly eviscerate them. *Cf. Sault Ste. Marie Tribe*, 331 F.R.D. at 12 (motion to intervene timely when tribe filed intervention motion 16 days after government filed answer); *City of Williams v. Dombeck*, No. 00-0066(CKK), 2000 WL 33675559, at *2 (D.D.C. Aug. 17, 2000) (intervenor filed motion three months after Plaintiffs initiated case, and before defendants filed answer; because intervention would occur "at the earliest stage of the litigation, it meets the timeliness requirement"). AEC has filed this motion before Defendants have answered the amended complaint, and the Court has not yet entered a scheduling order. *Cf. WildEarth Guardians v. Haaland*, No. 1:21-cv-00175-RC, slip op. at 3 (D.D.C. July 14, 2021), ECF No. 37 (finding that AEC's motion to intervene in a similar case was timely because "AEC moved to intervene less than three months after the initial complaint was amended," the court had not entered a scheduling order, and the Federal Defendants had not yet responded to the amended complaint). Similar facts led this Court to conclude that AEC's motion to intervene was timely in the *Center for Biological Diversity* case. *Ctr. for Biological Diversity*, slip op. at 8 (concluding that AEC's motion was timely because, as here, it was filed "a few months" after the original complaint

was filed, before Defendants had answered the amended complaint, and before briefing had begun in earnest).

Second, as to the prejudice factor, AEC's intervention would not cause prejudice to any party or proposed defendant–intervenor. Each party will have the full opportunity to make its arguments moving forward and to protect its own interests. Because AEC's intervention will occur before Defendants have responded to the amended complaint, before any scheduling order has been entered, and before any substantive activity has occurred, no party will have to relitigate issues or duplicate its efforts, and no party will suffer any other prejudice.

Third, as to the final two timeliness factors, AEC's purpose in intervening cannot be overstated: it is to protect its permits and wells from destruction. AEC is the only entity that can do so because it is intimately familiar with its own property, its own investments, and its own operations.

For these reasons, AEC's motion is timely.

### 1.2.2  The second element is met because AEC has a significantly protected interest in the permits at the heart of this lawsuit.

The D.C. Circuit has held that constitutional standing alone is sufficient to establish that a proposed intervenor has "an interest relating to the property or transaction which is the subject of the action." *Fund for Animals*, 322 F.3d at 735 (citing Fed. R. Civ. P. 24(a)(2)); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) ("[A proposed intervenor] need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a)."); *Env't Def. v. Leavitt*, 329 F. Supp. 2d 55, 66 n.7 (D.D.C. 2004) (noting that "a person who satisfies constitutional standing requirements fulfills [] the second of the four Rule 24(a) requirements"). AEC has standing to participate, so it satisfies

the second Rule 24(a) element. *See supra* pp. 4–5; *cf. Ctr. for Biological Diversity*, slip op. at 8 (concluding that AEC satisfied the second intervention element because AEC had standing).

AEC satisfies the Rule 24(a) test in its own right too. Rule 24(a) requires that a prospective intervenor "demonstrate a legally protected interest in the action." *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998). This "test operates in large part as a practical guide, with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *WildEarth Guardians v. Salazar*, 272 F.R.D. at 12–13.

AEC's permits—and the property and contractual rights they embody—are at the center of this lawsuit and subject to cancellation if Plaintiffs succeed. AEC's permits are not merely "relat[ed] to … the property or transaction that is the subject of the action"—*they are the property at issue,* and they allow AEC to put to beneficial use the leases it owns. Fed. R. Civ. P. 24(a)(2); *Fund for Animals*, 322 F.3d at 735 (citing *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit.…")). Federal oil-and-gas permits constitute binding, enforceable, contractual arrange-ments that govern the rights and obligations of BLM and permittees like AEC. *Cf. W. Watersheds Project v. Haaland*, No. 20-35693, slip op. at 5 (9th Cir. Jan. 5, 2022), ECF No. 50-1, (per curiam) ("AEC has invested tens of millions of dollars acquiring and developing the leasehold interests imperiled by this litigation, and therefore has a substantial due process interest in the outcome of this litigation by virtue of its contract with the federal government."). This contractual arrangement creates a significant, legally protectable property interest in the permits.

The mere threat of economic injury—like the impending economic injury that would flow from an order directing BLM to cancel AEC's permits, forcing AEC to stop its drilling and pro-duction—is a legally protected interest that warrants intervention as a matter of right. *See Fund for*

*Animals*, 322 F.3d at 733 (D.C. Cir. 2003) (threatened loss of revenue sufficient interest to support intervention); *Akiachak Native Cmty.*, 584 F. Supp. 2d at 6 (potential loss of right to tax constitutes sufficient interest).

Plaintiffs want the Court to tell BLM to erase AEC's permits. That request poses a direct and substantial threat to AEC's legally protectable interests in defending its property rights and avoiding economic injury. *See Theodore Roosevelt Conserv. P'ship v. Salazar*, 605 F. Supp. 2d 263, 269 (D.D.C. 2009) (allowing oil-and-gas operators with federal drilling permits to intervene in suit challenging BLM's NEPA compliance after issuing those permits).

At bottom, the Court has been asked to wipe out AEC's multimillion-dollar real-property interests in its oil-and-gas permits in Wyoming. AEC should be allowed to defend itself and its property and contractual rights. *See Levin v. Ruby Trading Corp.*, 333 F.2d 592, 595–96 (2d Cir. 1964) (lessee who asserted invalidity of lease cancellation by receiver entitled to intervene as of right). AEC has a vital, significantly protectable interest in the permits at the center of this dispute. That satisfies the second element of the test.

### 1.2.3 The third element is met because disposition of this case may impair AEC's ability to protect its interests in its wells.

AEC is "so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interest." Fed. R. Civ. P. 24(a)(2); *cf. Ctr. for Biological Diversity*, slip op. at 9 (concluding that AEC satisfied the third intervention element because a disposition vacating AEC's permits would prevent AEC from "seeing a return on investments" AEC has made in infrastructure, equipment, and personnel). This Court has recognized that when an agency's decision favored the proposed intervenor, and the action attacks that decision, the action threatens to impair the proposed intervenor's protected interests. *WildEarth Guardians v. Salazar*,

272 F.R.D. at 12. BLM's decision to grant AEC's APDs favored AEC: BLM approved 80 of AEC's APDs that Plaintiffs now seek to cancel. DeDominic Decl. ¶ 6. Of those 80 permits, AEC has not yet drilled wells for 26 of them. *Id.* ¶ 7. For 18 of them, AEC has drilled or is drilling wells. *Id.* ¶ 8. And for 36 of them, AEC has already drilled and those wells are connected to gathering systems and producing oil and gas, such that the leases associated with those wells are held by production. *Id.* ¶ 9. If Plaintiffs manage to vacate these permits, AEC's interests in developing and producing from these wells would be impaired—so much so that operating wells would be forced to shut down. *Cf. WildEarth Guardians*, slip op. at 3–4 (concluding that AEC satisfied elements two and three because AEC held 51 of the oil-and-gas leases the plaintiffs sought to vacate, and a ruling for the plaintiffs would impair AEC's interests in developing those leases).

### 1.2.4 The fourth factor is met because the current parties do not adequately represent AEC's interests.

The final factor is whether AEC's interests are "adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). They are not. The Supreme Court has held that this "requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The D.C. Circuit has described this requirement as "not onerous." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *see also Foster*, 655 F.2d at 1325; *AT&T Co.*, 642 F.2d at 1293 (stating that a petitioner "ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee").

No party or proposed intervenor adequately represents AEC's interests.

As the D.C. Circuit held in *Fund for Animals*, AEC's interests "plainly are not adequately represented by the federal defendants." 322 F.3d at 735–37. "It is well-established that

governmental entities generally cannot represent the 'more narrow and parochial financial interest' of a private party." *Id.* at 737. The D.C. Circuit has consistently taken this position. *See, e.g.*, *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) ("The [D.C.] Circuit has repeatedly held that private companies can intervene on the side of the government, even if some of their interests converge."); *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912–13 (D.C. Cir. 1977). Defendants are federal agencies charged with representing the interests of the American people; and Proposed Intervenor Wyoming seeks to participate to protect its sovereign property, regulatory, and economic interests, *see* Wyoming Mem. in Support of Mot. to Intervene at 1–6, 9–11, ECF No. 23-1. AEC's interests are narrower because they are tied to its particular permits. *Cf. Ctr. for Biological Diversity*, slip op. at 10 (concluding that AEC satisfied the fourth intervention element because AEC's financial interest in its permits are narrower than the government's interest in protecting the public); *WildEarth Guardians*, slip op. at 4 (concluding that "the Federal Defendants do not adequately represent AEC because AEC represents its private interest in its lease rights whereas the Federal Defendants must consider the interests of all the American people").

Proposed Intervenors' interests, although similar to AEC's, depart from AEC's where Plaintiffs specifically target AEC's permits. The Proposed Intervenors operating oil-and-gas interests—Continental and Devon—seek to participate to represent their specific interests in their own approved APDs and operations. Mot. at 2, ECF No. 20. To be sure, many operators are likely to be aligned to some degree. But other companies do not know about AEC's business plans for its operations, its project development, or its economic and contractual interests and obligations. They cannot defend the facts found in the administrative record that are specific to AEC's permits, nor can they attest to the status of AEC's planning and operations for the permits and permitted wells,

the costs AEC has incurred thus far, and the potential economic and other harms that will befall AEC if Plaintiffs manage to vacate AEC's permits.

As for the organizational Proposed Intervenor, Petroleum Association of Wyoming, although AEC is a member of PAW, trade associations represent the collective interests of their members only on a broad, aggregated scale. *See W. Watersheds Project*, slip op. at 4–5 (reversing order denying AEC's motion to intervene, and concluding that trade association Western Energy Alliance did not adequately represent AEC's interests, even though AEC is a member of the Alliance); *Env't Def. Ctr. v. Bureau of Safety and Env't Enf't*, No. CV 14-9281, 2015 WL 12734012, at *4 (C.D. Cal. Apr. 2, 2015) ("Whereas Exxon seeks to protect its financial investment, [the oil-and-gas trade association] API seeks to address 'industry-wide concerns and to protect the collective interests of its 600-plus members.'"). PAW seeks to intervene, at least in part, to defend "its core purpose," which is to "support and advance the oil and gas industry in Wyoming." PAW Mot. to Intervene at 16, ECF No. 31. But AEC alone has specific knowledge regarding the permitted activities at issue, and has "much more narrowly focused, direct and specific … financial interests" than PAW's more general, membership-wide interests. *Defenders of Wildlife v. Bureau of Ocean Energy Mgmt.*, No. 10-0254-WS-C, 2010 WL 5139101, at *3 (S.D. Ala. Dec. 9, 2010); *see In re Consol. Salmon Cases*, 688 F. Supp. 2d 1001, 1010 (E.D. Cal. 2010) (members' unique interests not adequately represented by trade organization representing "only the common interests of its diverse membership").[3] And AEC seeks to protect its individual property interests. PAW has no property at issue,

---

[3] Similarly, if AEC's permits are cancelled, then BLM would refund AEC for its losses, not PAW. As a result, PAW cannot represent AEC's interests, because "[a] proposed intervenor's interest is not represented … if the intervenor is entitled to damages that the existing parties cannot recover." *Abrams v. Blackburne & Sons Realty Cap. Corp.*, No. 2:19-CV-06947-CAS (AS), 2020 WL 1445712, at *5 (C.D. Cal. Mar. 25, 2020).

so it cannot adequately represent property owners like AEC. *See WildEarth Guardians*, slip op. at 4–5 (finding "compelling AEC's argument that API cannot adequately represent the unique interests of leaseholders like AEC because it has no property at issue"); *United States v. Colo. Organic Chem. Co.*, No. 98-CV-1600-WYD, 2015 WL 6590783, at *2 (D. Colo. Oct. 30, 2015). Even if PAW's and AEC's interests may "coincide," AEC cannot be required to "rely on a doubtful friend to represent its interests, when it can represent itself." *Crossroads*, 788 F.3d at 321.

In sum, neither Defendants nor Proposed Intervenors can adequately protect AEC's constitutionally protected property interests or its contractual interests in its permits. Nor would Defendants or Proposed Intervenors be certain to do so even if they could, especially with the same level of urgency and priority that AEC now possesses. AEC, for example, is in a unique position to argue that the Court lacks the power to adjudicate Plaintiffs' challenges to AEC's permits because the Court lacks personal jurisdiction over AEC. AEC would also be best able to explain how it will be injured, the disruptions to its business, and its economic harm. AEC has a narrow yet tremendously significant interest that is distinct from Defendants' and Proposed Intervenors' interests. As a result, AEC has met the requisite "minimal" showing under the adequate-representation factor.

*    *    *

Because AEC meets the rule's four requirements, the Court should allow it to intervene by right under Rule 24(a)(2).

## 2.    In the alternative, the Court should permit AEC to intervene under Rule 24(b)(1)(B).

Under Rule 24(b), "the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Rule also requires courts to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

- 14 -

Permissive intervention "is an inherently discretionary enterprise" that affords the Court "wide latitude." *EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). Rule 24(b) provides that "'the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact.'" *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010). "In order to litigate a claim on the merits" under Rule 24(b), "the putative intervenor must ordinarily present: (1) an independent ground for subject[-]matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC*, 146 F.3d at 1046. "In exercising its discretion" to decide whether permissive intervention is warranted, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

On the jurisdictional question, the requirement of an independent basis of jurisdiction arises almost exclusively in diversity cases, not federal-question cases. Thus, it is blackletter law that "[i]n federal-question cases there should be no problem of jurisdiction with regard to an intervening defendant." 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1917, at 601 (3d ed. 2007). The independent-grounds-for-jurisdiction factor concerns a movant who seeks to inappropriately expand the court's jurisdiction, and thus it "does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims"—which is the case here. *Freedom from Religion Found., Inc v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011); *see also* Am. Compl. ¶ 9 (alleging that the Court's subject-matter jurisdiction rests on federal-question jurisdiction). For this reason, the Court need not consider independent grounds for its jurisdiction over AEC.

As to the second inquiry, "Rule 24(b)'s timeliness analysis largely mirrors that of Rule 24(a)." *Roane v. Gonzales*, 269 F.R.D. 1, 5 (D.D.C. 2010), *vacated in part sub nom. Roane v. Tandy*, No. 12-5020, 2012 WL 3068444 (D.C. Cir. July 6, 2012), and *rev'd and remanded sub nom. Roane v. Leonhart*, 741 F.3d 147 (D.C. Cir. 2014). And even though "many courts analyze the timeliness factor under Rule 24(b) more strictly than they analyze timeliness under Rule 24(a)," *id.*, AEC's motion is timely for the reasons detailed above, *supra* pp. 6–8.

AEC satisfies the third factor: its defenses share common questions of law and fact with those raised in this case because it is a permittee whose property rights this Court has been asked to vacate, and it seeks to intervene to defend those property rights. To be sure, many of AEC's defenses will likely align to some degree with Defendants' and Proposed Intervenors' defenses, presuming Defendants and Proposed Intervenors intend to defend the permit approvals that Plaintiffs challenge. But AEC's defenses go further because it is AEC that may be affected, as a permit holder, by the claims here. AEC's existing interests in its wells reflect AEC's investment of millions of dollars. Should Plaintiffs' action prove successful, AEC would suffer economic injury and harm.

Finally, AEC's intervention will not unduly delay or prejudice the adjudication of any of the rights of the parties to the lawsuit. AEC's entry comes in the earliest stage in the case. Defendants have not yet responded to the amended complaint, and the Court has not yet issued a scheduling order. Because AEC's defenses are aligned with the central issues in the case and its presence will not delay or otherwise alter the course of the proceedings to any party's prejudice, it should be permitted to intervene under Rule 24(b)(1)(B).

## CONCLUSION

Granting AEC's motion to intervene would accord with both the liberal approach to intervention and the purpose behind Rule 24. The Court should therefore grant this motion and allow AEC to intervene under Rule 24.

Respectfully submitted,

/s/ Mark D. Gibson
Andrew C. Lillie
Mark D. Gibson
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8121
Email:  aclillie@hollandhart.com
            mdgibson@hollandhart.com


/s/ Jessica Black Livingston
Jessica Black Livingston
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, CO 80202
Phone: (303) 454-2433
Email: jessica.livingston@hoganlovells.com

## CERTIFICATE OF SERVICE

I certify that on December 28, 2022, I filed this document with the Clerk of Court for the United States District Court for the District of Columbia using the CM/ECF system, which will serve this document on all counsel of record.

/s/ Mark D. Gibson
Mark D. Gibson