# Exhibit A

# Proposed Amended Answer

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **POWDER RIVER BASIN RESOURCE COUNCIL and WESTERN WATERSHEDS PROJECT**, | |
| Plaintiffs, | |
| v. | |
| **U.S. DEPARTMENT OF THE INTERIOR and U.S. BUREAU OF LAND MANAGEMENT**, | |
| Defendants, | |
| and | Case No. 1:22-cv-2696-TSC |
| **CONTINENTAL RESOURCES, INC.** 20 N. Broadway Oklahoma City, OK 73102 | |
| and | |
| **DEVON ENERGY PRODUCTION COMPANY, L.P.,** 333 West Sheridan Avenue Oklahoma City, OK 73102, | |
| Proposed Defendants-Intervenors | |

**FIRST AMENDED ANSWER OF PROPOSED DEFENDANTS-INTERVENORS CONTINENTAL RESOURCES, INC. AND DEVON ENERGY PRODUCTION COMPANY, L.P., TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM AND CROSSCLAIM**

Proposed Defendants-Intervenors Continental Resources, Inc. (Continental) and Devon Energy Production Company, L.P. (Devon) (collectively, the Energy Producers) amend their answer to the numbered paragraphs of the First Amended Complaint (ECF No. 44) of Powder

River Basin Resource Counsel and Western Watersheds Project (collectively, Plaintiffs), and answer as follows:

1.      This paragraph characterizes the Plaintiffs' case.  No response is required.

2.      This paragraph characterizes the Plaintiffs' case.  No response is required.

3.      The allegations of paragraph 3 are denied.  The Energy Producers affirmatively aver that responsible analysts, including the International Energy Agency, are not urging an immediate end to new fossil fuel investments.  They are instead advocating continued, but less carbon-intensive, development of oil and gas to provide, among other things, liquefied petroleum gas (a product of natural gas) to 2.6 billion poor around the planet who cook dinner each might on wood chips or dried dung.

4.      The allegations of paragraph 4 are denied.  The Energy Producers affirmatively aver the Final Environmental Impact Statement ("FEIS") stated "total cumulative concentrations were found to be below the levels of the NAAQS/WAAQS [the national and Wyoming air quality standards] for all pollutant and averaging times, except for annual PM10 during periods of active construction.  These sources are transient and temporary; therefore, impacts would be expected to be localized in the immediate vicinity of the construction activities."  FEIS at page ES-8.

5.      The allegations of the first sentence of paragraph 5 are denied.  The Energy Producers affirmatively aver that the Project Area was the area studied for environmental impacts, but not the area that will be developed. The Record of Decision, at page 4, indicates there are expected to be only 53,000 acres of new surface disturbance, which likely will be reduced to 21,000 acres after the required site reclamation is completed, predominantly on privately owned land.  The second and third sentences of paragraph 5 are denied.  The Energy Producers affirmatively aver the Secretary of the Interior allowed limited and closely regulated exceptions to

the seasonal timing limitations for drilling activities; and the Bureau of Land Management (BLM) did not otherwise ignore land use plan protections.

6.       The first sentence of paragraph 6 is admitted in part, in that many wells are expected to be drilled from non-federal surface and above non-federal minerals to access federal minerals. The remainder of paragraph 6 is denied.  The Energy Producers affirmatively aver that Converse County is receiving what Plaintiffs call "critical environmental protections" through a combination of federal, state, and local requirements, as well as mitigation measures to which the project applicants have committed.

7.       The allegations of paragraph 7 are denied.

8.       This paragraph characterizes Plaintiffs' claims for relief.  No response is required.

## JURISDICTION AND VENUE

9.       The allegations of paragraph 9 are admitted.

10.       The allegations of paragraph 10 are admitted in part, but most of the challenged agency actions are moot, or cannot be challenged because of Plaintiffs' delay in filing suit, or cannot be challenged because Plaintiffs lack statutory and constitutional standing.

11.       The allegations of paragraph 11 are denied. With respect to the Record of Decision, Plaintiffs failed fully to exhaust administrative remedies by not raising issues in their administrative protest which they seek to raise now.  With respect to the challenged APDs, Plaintiffs completely failed to exhaust administrative remedies.

12.       The Energy Producers admit that the District of Columbia is one of the permissible venues but affirmatively aver that this district is an inconvenient forum for a matter affecting a Project that relates solely to the State of Wyoming, for which the vast majority of federal decisions were made by individuals located in Wyoming, in which the property rights of the Energy Producers are challenged, in which the rights of fee owners not to be regulated by BLM are

3

challenged, and the governmental interests of the State of Wyoming, which was extensively involved in the review and approval of the Project, are placed at risk.

## PARTIES

13.     The Energy Producers lack sufficient information to admit or deny the allegations of paragraph 13, and therefore deny them.

14.     The Energy Producers lack sufficient information to admit or deny the allegations of paragraph 14, and therefore deny them.

15.     The Energy Producers lack sufficient information to admit or deny the allegations of paragraph 15, and therefore deny them.  The Energy Producers specifically deny that Plaintiffs exhausted all administrative remedies before bringing this action and incorporate their response to paragraph 11.

16.     The Energy Producers lack sufficient information to admit or deny the allegations of paragraph 16, and therefore deny them.

17.     The Energy Producers lack sufficient information to admit or deny the allegations of paragraph 17, and therefore deny them.

18.     The allegations of paragraph 18 are denied.

19.     The allegations of paragraph 19 are denied.

20.     The allegations of paragraph 20 are admitted.

21.     The allegations of paragraph 21 are admitted.

## LEGAL FRAMEWORK

**A.     National Environmental Policy Act (NEPA)**

22.     This paragraph is a statement of law to which no response is required.

23.     This paragraph is a statement of law to which no response is required.

24.     This paragraph is a statement of law to which no response is required.

4

25.     This paragraph is a statement of law to which no response is required.

26.     This paragraph is a statement of law to which no response is required.

27.     This paragraph is a statement of law to which no response is required.

28.     This paragraph is a statement of law to which no response is required.

**B.      Federal Land Policy and Management Act (FLPMA)**

29.     This paragraph is a statement of law to which no response is required.

30.     This paragraph is a statement of law to which no response is required.

31.     This paragraph is a statement of law to which no response is required.

32.     This paragraph is a statement of law to which no response is required.

33.     This paragraph is a statement of law to which no response is required.

**C.      Mineral Leasing Act (MLA)**

34.     This paragraph is a statement of law to which no response is required.

35.     This paragraph is a statement of law to which no response is required.

36.     This paragraph is a statement of law to which no response is required.

37.     This paragraph is a statement of law to which no response is required.

38.     This paragraph is a statement of law to which no response is required.

39.     This paragraph is a statement of law to which no response is required.

**D.      DOI and BLM Authority and Duties as to Air Resources**

40.     This paragraph is a statement of law to which no response is required.

41.     This paragraph is a statement of law to which no response is required.

42.     This paragraph is a statement of law to which no response is required.

43.     This paragraph is a statement of law to which no response is required.

44.     This paragraph is a statement of law to which no response is required.

45.     This paragraph is a statement of law to which no response is required.

46.     This paragraph is a statement of law to which no response is required.

47.     This paragraph is a statement of law to which no response is required.

48.     This paragraph is denied.

49.     The allegations of paragraph 49 are denied.  The Energy Producers affirmatively aver Plaintiffs did not raise this issue or this information in their protests.

50.     The allegations of paragraph 50 are denied.  The Energy Producers affirmatively aver Plaintiffs did not raise this issue or this information in their protests.

51.     The allegations of paragraph 51 are denied.  The Energy Producers affirmatively aver Plaintiffs did not raise this issue or this information in their protests.

52.     The allegations of paragraph 52 are denied.  The Energy Producers affirmatively aver Plaintiffs did not raise this issue or this information in their protests.

53.     The Energy Producers lack sufficient information to admit or deny the allegations of paragraph 53, and it is therefore denied.

**E.     Administrative Procedure Act (APA)**

54.     This paragraph is a statement of law to which no response is required.

55.     This paragraph is a statement of law to which no response is required.

## FACTUAL BACKGROUND

**A.     Overview of the Converse County Project**

56.     The allegations of paragraph 56 are denied.  The Energy Producers affirmatively aver the Project area of 1.5 million acres is the area studied for environmental impacts, not the area expected to be developed.  As averred above, only 21,000 acres are likely to be disturbed in the long term, largely on private land.  That disturbance is less than half the size of Washington, DC, spread out over an area larger than the State of Delaware,

57.     The allegations of paragraph 57 are admitted.

58.     The first sentence of paragraph 58 is admitted.  The second sentence is denied.  The Energy Producers affirmatively aver that fifty-four percent of the land in the Project area is comprised of split-estate land, but that many wells will likely be fee-fee-fed wells.

59.     This first, second, and fourth sentences of paragraph 59 are admitted.  The third sentence of this paragraph is denied.

60.     The allegations of paragraph 60 are denied.  The Energy Producers affirmatively aver the Record of Decision, pages 29-31, describes extensive consultation with sixteen tribes and the processes for their continued consultation.  Neither Plaintiffs nor the Energy Producers have knowledge of the tribes' particular concerns because, as the Record of Decision makes clear at page 30, "all specific information provided by tribal members concerning resources of Native American concern in the CCPA or the large analysis area will remain confidential."

**B.     Converse County ROD and FEIS**

61.     The allegations of paragraph 61 are admitted.

62.     The allegations of paragraph 62 are admitted.

63.     The allegations of paragraph 63 are admitted.

64.     The allegations of paragraph 64 are admitted in part, but denied in part because Alternative B, the preferred alternative, considered six options.

65.     The allegations of paragraph 65 are admitted.

66.     The Energy Producers lack sufficient information to admit or deny the allegations of paragraph 66, and therefore deny them.

**C.     The Raptor Timing Stipulation Exemption and Casper RMP Amendment**

67.     The allegations of paragraph 67 are admitted.

68.     The allegations of paragraph 68 are admitted.

69.     The allegations of paragraph 69 are denied.

70.     The allegations of paragraph 70 are denied.

**D.     Fee/Fee/Fed Wells**

71.     The allegations of paragraph 71 are admitted in part, in that many wells are expected to be fee-fee-fed wells.  The rest of the allegations are denied.

72.     The allegations of paragraph 72 are denied.

73.     The allegations of paragraph 73 are admitted in part, in that BLM correctly claims it lacks the authority to manage activities occurring on private surface, even if a well is drilled from that surface into adjacent federal minerals.  The second sentence of the paragraph is denied. The Energy Producers affirmatively aver that the fee-fee-fed wells already approved in the Project area have been approved with restrictions on surface use operations under state and local law.

74.     This paragraph is a conclusion of law to which no response is required.  The Energy Producers affirmatively aver Plaintiffs' conclusion of law is in error, and that BLM lacks the authority Plaintiffs claim here.  *See Utah Native Plant Society v. U.S. Forest Service*, 923 F.3d 860 (10th Cir. 2019).

75.     This paragraph is a conclusion of law to which no response is required.  The Energy Producers affirmatively aver Plaintiffs misconstrue the holding of *Light v. United States*, 220 U.S. 523 (1911), which held that the Congress could, through legislation, prevent a rancher from grazing cattle in a federal forest reserve without a federal permit.

76.     The allegations of paragraph 76 are denied.

### E.     BLM's Consideration of Air Quality Concerns and Mitigation

77.     The allegations of paragraph 77 are denied.  The Energy Producers affirmatively aver the Final Environmental Impact Statement, at page ES-8, states "Maximum air quality impacts resulting from Alternative B drilling and production activities within the CCPA were added to representative background concentrations.  The resulting total cumulative concentrations were found to be below the levels of the NAAWS/WAAQS for all pollutant and averaging times, except for annual $PM_{10}$ during periods of active construction.  These sources are transient and temporary; therefore, impacts would be expected to be localized[.]"  The Energy Producers further aver that the second sentence of paragraph 77 mischaracterizes the EPA's comment letters.

78.     The allegations of paragraph 78 are admitted.  The Energy Producers affirmatively aver that the FEIS also analyzed emissions reductions from equipment and practices the Operating Group committed to adopt to further reduce impacts from those modeled.

79.     The allegations of paragraph 79 are admitted.  The Energy Producers affirmatively aver that the FEIS, at pages 4.1-28 through 4.1-37, carefully analyzed and responded to each mitigation measure proposed.

80.     The allegations of paragraph 80 are denied.  The Energy Producers affirmatively aver that, while the Secretary correctly recognized that "BLM may rely on the State of Wyoming, which is subject to oversight by the EPA, to ensure permitted activities do not exceed or violate any State or Federal air quality standard under the Clean Air Act[,]" Record of Decision, at page 20, he also adopted several BLM Conditions of Approval respecting the reduction of emissions of air pollutants.  *Id.* at page 8.

### F.     Sage-Grouse Conservation Measures from the Casper RMP

81.     The allegations of paragraph 81 are admitted.

82.     The allegations of paragraph 82 are admitted.

83.     The allegations of paragraph 83 are admitted.

84.     The allegations of paragraph 84 are admitted.

85.     The allegations of paragraph 85 are denied.  The Energy Producers affirmatively aver the FEIS, at page 4.18-2, found that sage grouse management is governed by several federal and state requirements: "Wildlife resources are managed according to the management goals and objectives contained in the BLM ROD and Approved Caper RMP (BLM 2007b), the USFS TBNG (USFS 2001), BLM Manual 6840 for Special Status Species Management, Record of Decision, and the Approved Resource Management Plan Amendment for the Wyoming Greater Sage-grouse (Attachment 4 to BLM 2015b), the Land Management Plan Amendment for TBNG (Attachment B to USFS 2015b), the State of Wyoming EO 2019-3 (Greater Sage grouse Core Area Protection) that replaced EO 2011-5, and Wyoming Statutes 23-1-101, 23-1-103, 23-1-302, 23-3-108, 23-3-102, and 23-3-103."

**G.      Deficiencies in BLM's NEPA Compliance**

86.     The allegations of paragraph 86 are denied.

*Failure to Account for Fee/Fee/Fed Wells*

87.     The allegations of paragraph 87 are denied.

88.     The allegations of paragraph 88 are denied.  The Energy Producers affirmatively aver the FEIS examines the effects of the federal action, but includes in its cumulative analysis impacts from activities on private lands.

89.     The allegations of paragraph 89 are denied.  The Energy Producers affirmatively aver operations on private land are subject to state regulations.  The FEIS, at page 4.18-50, states: "Any new surface disturbance on PHMAs [Priority Habitat Management Areas] and Core Areas

within the CCPA would be subject to current WGFD [Wyoming Game and Fish Department], BLM, and USFS management regulations that would restrict surface disturbance and disruption in important sage-grouse habitats[.]"

*Faulty Analysis of Air Quality Products*

90.     The allegations of paragraph 90 are denied.  The Energy Producers affirmatively aver that the allegations of this paragraph are based entirely on air quality and methodology information BLM disclosed in the FEIS, satisfying BLM's obligations under NEPA.

91.     The allegations of paragraph 91 are denied.

92.     The allegations of paragraph 92 are denied.

93.     The allegations of paragraph 93 are denied.

94.     The allegations of paragraph 94 are denied.

95.     The allegations of paragraph 95 are denied.  The Energy Producers affirmatively aver BLM responded to Ms. Williams' comments.  FEIS Appendix H at pages H-103 through H-105.  Plaintiffs did not raise Ms. Williams' concerns in their protests.

*Faulty Analysis of Groundwater Drawdowns*

96.     The allegations of paragraph 96 are admitted to the extent that the Project is expected to need 108 million barrels of water per year for drilling operations, a figure reported in the FEIS at page 4.16-14.  The rest of this paragraph is denied.

97.     The allegations in the first sentence of paragraph 97 are admitted.  The remaining sentences are denied.  The Energy Producers affirmatively aver that the Groundwater Model was included in Appendix E of the FEIS, meaning that both pumping scenarios, dispersed and concentrated, were discussed in the FEIS.  Moreover, there is no material difference in expected

11

results between the two scenarios.  *Compare* Appendix E page E-55 (concentrated), *with* page E-71 (dispersed).

98.     The allegations of paragraph 98 are denied.  The Energy Producers affirmatively aver that the public comments on the EIS, *see* FEIS Appendices H and I, do not mention incorrect inputs for the Groundwater Model as a concern.

99.     The allegations of paragraph 99 are denied.  The Energy Producers affirmatively aver BLM explained that even with a doubling of expected water usage, the volume was still significantly below the volume available for withdrawal by the Operating Group.  FEIS Appendix H at page H-2.  BLM also explained that the doubling of expected water use "would not increase the use of groundwater as the additional water would be expected to come from water recycling and leasing of existing surface water uses."  *Id.* at page H-47.  The FEIS nevertheless recommended a setback of 2,000 for new wells from existing water wells, but recognized only the Wyoming State Engineer's Office had the authority to implement the setback.  *Id.* at page H-3.

100.     The allegations of paragraph 100 are denied.  The Energy Producers affirmatively aver that Plaintiffs' comments on the Draft EIS and their protest letters on the FEIS did not raise this concern.

101.     The allegations in the third sentence of paragraph 101 are admitted.  The remaining allegations are denied.  The Energy Producers affirmatively aver that EPA's August 31, 2020, letter (after the FEIS was released) to the BLM did not object to BLM's explanation of the calculation of specific storage in the Groundwater Model.  Nor did the Plaintiffs' protest letters raise the concern.

102.     The allegations of paragraph 102 are denied.  The Energy Producers affirmatively aver the Plaintiffs' protest letters did not raise a concern about the Groundwater Model erroneously

assuming the aquifers were unconfined instead of confined.  The concern was raised only by the Wyoming State Engineer's Office, and only with respect to the Wasatch/Tongue River Aquifer. FEIS Appendix H at page H-176.  BLM responded to the comment.  "Unconfined or confined conditions can result in different responses of the aquifer when withdrawals occur.  This Wasatch-Tongue River unit was assumed to be unconfined because it more closely approximates the actual conditions even it might underestimate drawdown."  *Id.* The State Engineer's Office did not subsequently question BLM's response.

103.    The allegations of paragraph 103 are denied.

*Insufficient Cumulative Impacts Analysis*

104.    The allegations of paragraph 104 are denied.

105.    The allegations of paragraph 105 are denied.  The Energy Producers affirmatively aver that when one of the Plaintiffs raised this concern in comments on the Draft EIS, BLM responded fully.  FEIS Appendix H at page H-117.

106.    The allegations of paragraph 106 are denied.  The Energy Producers incorporate their affirmative averments from paragraph 105.

107.    The allegations of paragraph 107 are denied.  The Energy Producers affirmatively aver the record contains no comments on the Draft EIS objecting that BLM failed to quantify the greenhouse gas emissions from other reasonably foreseeable actions.  BLM did respond to comments on the quantification it did perform.  FEIS Appendix H at pages H-96 & H-97.  The Plaintiffs' protest letters did not take issue with BLM's responses.

*Failure to Consider Reasonable Alternatives*

108.    The allegations of paragraph 108 are denied.

109.    The allegations of paragraph 109 are denied.  The Energy Producers incorporate their affirmative averment from paragraph 80.

110.    The allegations of paragraph 110 are denied.  The Energy Producers affirmatively aver the Secretary did consider and reject two alternatives to eliminate flaring of methane and rejected them "because it is not technically feasible, and it is inconsistent with the basic policy objectives for management of the area including the State of Wyoming's rules for flaring and safety." ROD at page 26.  EPA and Wyoming already enforce New Source Performance Standards for the limitation of methane emissions and are in the middle of rulemaking to impose more stringent standards for new and for existing sources.  The state and EPA also regulate other air pollutants.  American demand for oil and gas, including demand by Plaintiffs' members, is projected to increase, meaning if the oil and gas is not produced here, it will be imported from countries that produce it with substantially less stringent emissions requirements, increasing GHG emissions.  The alternative Plaintiffs propose would be counter-productive to their stated goal.

111.    The allegations of paragraph 111 are denied.  The Energy Producers affirmatively aver the Secretary explained that Plaintiffs' request for an alternative "that is more protective for sage-grouse and other wildlife" was rejected because "it would be substantially similar to an alternative that was analyzed (Alternative C)" and thus did not warrant analysis in the EIS as a separate alternative.  FEIS at page 2-52.

**H.    Approval of Applications for Permit to Drill (APDs)**

112.    The allegations of paragraph 112 are admitted. The Energy Producers affirmatively aver the Plaintiffs lack standing to pursue APDs issued after the date of the initial Complaint.

14

113.    The allegations of paragraph 113 are denied.  The Energy Producers affirmatively aver BLM lacks authority to regulate private land adjacent to a federal mineral lease, and federalism is not an unlawful policy.

114.    The high level of generality in the allegations of this paragraph deprives the Energy Producers of information needed to affirm or deny them.  The allegations of paragraph 114 are therefore denied.

115.    The allegations of paragraph 115 are denied.

116.    This paragraph is a statement of law to which no response is required.

117.    The allegations of paragraph 117 are denied.

118.    This paragraph is a statement of law to which no response is required.

119.    The allegations of paragraph 119 are denied.

120.    The allegations in the first sentence of paragraph 120 are denied.  The second sentence is a purported reservation of a right to relief to which no response is required.  The Energy Producers affirmatively aver the Plaintiffs lack standing to pursue APDs issued after the date of the Complaint.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violations of NEPA—Failure to Take a Hard Look at Project Impacts and Alternatives
### (FEIS, ROD, and RMP Amendment)

121.    The Energy Producers incorporate by reference all preceding paragraphs.

122.    This paragraph is a statement of law to which no response is required.

123.    This paragraph is a statement of law to which no response is required.

124.    This paragraph is a statement of law to which no response is required.

125.    The allegations of paragraph 125 are denied.

126.    The allegations of paragraph 126 are denied.

**SECOND CLAIM FOR RELIEF**
**Violations of NEPA—Improper Use of Categorical Exclusions**
**and Determinations of NEPA Adequacy**
**(APDs)**

127.    The Energy Producers incorporate by reference all preceding paragraphs.

128.    This paragraph is a statement of law to which no response is required.

129.    The allegations of paragraph 129 are denied.

130.    The allegations of paragraph 130 are denied.

131.    The allegation in the first sentence of paragraph 131 are denied.   The second sentence of this paragraph is a statement of law to which no response is required.

132.    The allegations of paragraph 132 are denied.

**THIRD CLAIM FOR RELIEF**
**Violations of FLPMA—Noncompliance with RMP Requirements**
**for the Protection of Greater Sage-Grouse**
**(ROD and APDs)**

133.    The Energy Produers incorporate by reference all preceding paragraphs.

134.    This paragraph is a statement of Plaintiffs' claim to which no response is required. To the extent a response is required, the allegations of paragraph 126 are denied.

135.    This paragraph is a statement of law to which no response is required.

136.    The allegations of paragraph 136 are denied.

137.    The allegations of paragraph 137 are denied.

**FOURTH CLAIM FOR RELIEF**
**Violations of FLPMA—Failure to Prevent Unnecessary or**
**Undue Degradation to Raptors and their Habitat**
**(RMP Amendment, ROD, APDs)**

138.    The Energy Producers incorporate by reference all preceding paragraphs.

139.    This paragraph is a statement of Plaintiffs' claim to which no response is required. To the extent a response is required, the allegations of paragraph 139 are denied.

16

140.    This paragraph is a statement of law to which no response is required.

141.    This paragraph is a statement of law to which no response is required.

142.    The allegations of paragraph 142 are denied.

143.    The allegations of paragraph 143 are denied.

**FIFTH CLAIM FOR RELIEF**
**Violations of the MLA, FLPMA, APA, and Implementing Regulations—**
**Failure to Regulate Surface Operations on Fee/Fee/Fed Wells**
**(APDs)**

144.    The Energy Producers incorporate by reference all preceding paragraphs.

145.    This paragraph is a statement of law to which no response is required.

146.    The allegations of paragraph 146 are denied.

147.    The allegations of paragraph 147 are denied.

148.    The allegations of paragraph 148 are denied.  The Energy Producers affirmatively aver BLM has no legal authority to enforce restrictions on drilling on private lands, even if the well is used to produce minerals from federal oil and gas leases.

149.    The allegations of paragraph 149 are denied.

150.    This paragraph characterizes Plaintiffs' request for relief to which no response is required.  To the extent a response is required, the allegations of paragraph 150 are denied.

**SIXTH CLAIM FOR RELIEF**
**Violations of the MLA, FLPMA, APA, and Implementing Regulations—**
**Failure to Mitigate Project Air Emissions**
**(ROD and APDs)**

151.    The Energy Producers incorporate by reference all preceding paragraphs.

152.    This paragraph characterizes Plaintiffs' request for relief to which no response is required.  To the extent a response is required, the allegations of paragraph 152 are denied.

153.    The allegations of paragraph 153 are denied.  The Energy Producers incorporate their affirmative averment from paragraph 80.

17

154.    The allegations of paragraph 154 are denied.

155.    The allegations of paragraph 155 are denied.  The Energy Companies affirmatively aver Defendants' Interior Board of Land Appeals has held "[r]egulation of air quality is governed by the CAA [Clean Air Act] … and its implementing regulations, and their State counterparts. … In Wyoming, ensuring compliance with Federal and State air quality standards fall under the administrative jurisdiction of WDEQ [Wyoming Department of Environmental Quality][.]" *Wyoming Outdoor Council*, 176 IBLA 15, 26 (2008) (citations omitted).

156.    The allegations of paragraph 156 are denied.

157.    The allegations of paragraph 157 are denied.

158.    This paragraph characterizes Plaintiffs' request for relief to which no response is required.  To the extent a response is required, the allegations of paragraph 158 are denied.

## GENERAL DENIAL

The Energy Producers deny each allegation of the Complaint not expressly admitted above.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relieve can be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because this Court lacks subject matter jurisdiction to hear them.

## THIRD AFFIRMATIVE DEFENSE

The Complaint should be dismissed because Plaintiffs lack standing to pursue their claims.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because they are not ripe for review.

18

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred under the doctrines of laches, claim preclusion and/or collateral estoppel.

## SIXTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed because Plaintiffs' claims are moot.

## SEVENTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed because Plaintiffs' claims are not made in good faith.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred for failure to exhaust administrative remedies and waiver.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are time barred for failure to file within the applicable statute of limitations.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' Fifth Claim for Relief fails because BLM lacks statutory and constitutional authority under the MLA, FLPMA, and APA to regulate surface operations on private, non-federally owned lands that overlay private, non-federally owned minerals.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' Fifth Claim for Relief fails because the surface use restrictions they claim BLM was required to impose would have exceeded the boundaries of the Property Clause in Article IV, Section 3 of the United States Constitution and violated the Tenth Amendment.

## TWELTH AFFIRMATIVE DEFENSE

Plaintiffs' Sixth Claim for Relief fails because BLM lacks statutory and constitutional authority under the MLA, FLPMA, and APA to impose air emissions controls on surface

operations occurring solely on private, non-federally owned lands that overlay private, non-federally owned minerals.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' Sixth Claim for Relief fails because the air emissions controls they claim BLM was required to mandate under the MLA, FLPMA, and APA would have exceeded the boundaries of the Property Clause in Article IV, Section 3 of the United States Constitution.

## FOURTEENTH AFFIRMATIVE DEFENSE

This Court is an inconvenient forum under applicable forum non conveniens principles.

The Energy Producers reserve the right to supplement these Affirmative Defenses as additional information is revealed through discovery or developed during litigation.

## RELIEF REQUESTED

WHEREFORE, the Energy Producers respectfully request that Plaintiffs' claims be dismissed with prejudice, that judgment be entered on behalf of the Defendants and the Energy Producers, and against Plaintiffs on those claims, that the Energy Companies be awarded such attorney fees and costs as may be allowed under applicable law, and such further relief as this Court deems just and proper.

## COUNTERCLAIM

1.    Counterclaim Plaintiffs (defined below) incorporate by reference the facts and allegations set forth in its preceding First Amended Answer.

2.    Plaintiffs seek to invalidate APDs BLM has issued to the Energy Producers on the ground that BLM unlawfully failed to regulate surface impacts from drilling operations on private land.  The Energy Producers counterclaim against Plaintiffs for declaratory judgments against each

that the Energy Producers' APDs were lawfully issued without BLM imposing additional surface use requirements on private, non-federally owned lands.

3.     Plaintiffs (hereafter Counterclaim Defendants) are as set forth in paragraphs 13 and 14 of the Complaint, ECF 1.

4.     Counterclaim Plaintiff Continental Resources, Inc. (Continental) is a top 10 independent oil producer in the United States and a leader in America's energy renaissance. Continental is among the most efficient and cost-effective producers of oil and natural gas due to its investments in the United States and premier portfolio of assets in unconventional resources plays in North Dakota, Montana, Oklahoma, Wyoming, and Texas. Relevant to this lawsuit, Continental owns oil and gas leases, permits, wells, and related infrastructure in the Powder River Basin of Wyoming, including in Converse County. Continental is an Oklahoma Corporation with its principal place of business in Oklahoma City, Oklahoma.

5.     Counterclaim Plaintiff Devon Energy Production Company, L.P. (Devon) is a leading independent oil and natural gas exploration and production company focused on onshore development in the United States. Devon is a results-oriented company that builds value for shareholders through its employees by creating a culture of health, safety, and environmental stewardship in an atmosphere of optimism, teamwork, creativity and resourcefulness and by dealing with everyone in an open and ethical manner. Relevant to this lawsuit, Devon owns and operates federal, state, and private/ fee oil and gas leases, surface use agreements, permits, wells, and related infrastructure in the Powder River Basin of Wyoming, including in Converse County. Devon is an Oklahoma limited partnership with its principal place of business in Oklahoma City, Oklahoma.

21

6.      In their Complaint, Counterclaim Defendants have repeatedly alleged APDs issued to the Energy Producers are unlawful and must be vacated because BLM failed to impose, on adjacent privately-owned land, air pollution emissions mitigation and other restrictions on surface operations.  Complaint ¶¶ 7, 8, 76, 113, 117, 130, 131.

7.      Continental has already received 60 APDs from BLM that are specifically identified and being challenged by Counterclaim Defendants most of which are for operations on private lands.  Some of the wells have already been drilled.  Some wells are already producing oil and gas. Some wells will be drilled during the pendency of this case.  Continental regularly is in the process of applying for APDs including APDs from BLM in Converse County, Wyoming. Continental also owns interests in leases and wells operated by others including some of the APDs that are specifically identified and being challenged by Counterclaim Defendants.

8.      Devon has already received 29 APDs from BLM that are specifically identified and being challenged by Counterclaim Defendants most of which are for operations on private lands. Some of the wells have already been drilled.  Some wells are already producing oil and gas. Some wells will be drilled during the pendency of this case. Devon regularly is in the process of applying for APDs including APDs from BLM in Converse County, Wyoming.  Devon also owns interests in leases and wells operated by others including some of the APDs that are specifically identified and being challenged by Counterclaim Defendants.

9.      Of the approved APDs held by Counterclaim Plaintiffs, a significant number are for wells with surface hole locations on private, non-federally owned surface, overlaying private, non-federally owned minerals, but which will penetrate adjacent federally owned minerals (hereinafter "Fee/Fee/Fed Wells").

10.    The actions of the Counterclaim Defendants create an immediate controversy and have placed great uncertainty on the investments of both Counterclaim Plaintiffs.  Declaratory judgments in favor of the Counterclaim Plaintiffs would resolve the actual controversy between the opposing parties of the legal status of the APDs for the Fee/Fee/Fed Wells.

11.    This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201-2202 (declaratory judgment), and 28 U.S.C. § 1367 (supplemental jurisdiction).

12.    By filing their Complaint here, Counterclaim Defendants have consented to personal jurisdiction in this Court.

13.    Counterclaim Defendants contend in paragraph 12 of their Complaint that venue is proper in this Court.  Counterclaim Plaintiffs admit that the District of Columbia is one of the permissible venues but affirmatively aver that this district is an inconvenient forum.

14.    WHEREFORE, the Counterclaim Plaintiffs pray the Court declare their APDs for their Fee/Fee/Fed Wells were lawfully issued without BLM imposing additional surface use requirements on operations to be conducted solely on private, non-federally owned lands, because BLM lacks statutory and/or constitutional authority to do so and that the Energy Companies be awarded such attorney fees and costs as may be allowed under applicable law.

## CROSSCLAIM

1.    Crossclaim-Plaintiffs (defined below) incorporate by reference the facts and allegations set forth in its preceding First Amended Answer and Counterclaim.

2.    Plaintiffs seek to invalidate APDs BLM has issued to the Energy Producers on the ground that BLM unlawfully failed to regulate surface impacts from drilling operations on private land.  The Energy Producers assert the foregoing crossclaims under FED. R. CIV. P. 13(g) against Defendants U.S. Department of the Interior (DOI) and Bureau of Land Management (BLM, together, the Department or Crossclaim-Defendants) for declaratory judgments against each that

the Department lawfully issued Defendant-Intervenors' APDs without BLM imposing additional surface use requirements on operations to be conducted solely on private, non-federally owned lands, because BLM lacks statutory and/or constitutional authority to do so.

3.      Crossclaim-Defendants are as set forth in paragraphs 20 and 21 of the Complaint, ECF 1.

4.      Crossclaim-Plaintiff Continental Resources, Inc. is as set forth in paragraph 4 of the preceding Counterclaim.

5.      Crossclaim-Plaintiff, Devon Energy Production Company, L.P. (Devon)  is as set forth in paragraph 5 of the preceding Counterclaim.

6.      In their Complaint, Plaintiffs repeatedly alleged APDs issued to the Energy Producers are unlawful and must be vacated because BLM failed to impose, on adjacent privately-owned land, air pollution emissions mitigation and other restrictions on surface operations. Complaint ¶¶ 7, 8, 76, 113, 117, 130, 131.

7.      This crossclaim for declaratory judgment arises out of the same transaction or occurrence that is the subject matter of Plaintiffs' Complaint.

8.      BLM has already approved 60 APDs for Continental that are specifically identified and being challenged by Counterclaim Defendants most of which are for operations on private lands.  Some of the wells have already been drilled.  Some wells are already producing oil and gas. Some wells will be drilled during the pendency of this case.  Continental regularly is in the process of applying for APDs including APDs from BLM in Converse County, Wyoming.  Continental also owns interests in leases and wells operated by others including some of the APDs that are specifically identified and being challenged by Counterclaim Defendants.

9.      BLM has already approved 29 APDs for Devon Energy that are specifically identified and being challenged by Counter Defendants including some for operations on private lands.  Some of the wells have already been drilled.  Some wells are already producing oil and gas. Some wells will be drilled during the pendency of this case.  Devon regularly is in the process of applying for APDs including APDs from BLM in Converse County, Wyoming.  Devon also own interests in leases and wells operated by others including some of the APDs that are specifically identified and being challenged by Counter Defendants.

10.     Of the approved APDs held by Crossclaim-Plaintiffs, a significant number are for wells with surface hole locations on private, non-federally owned surface, overlaying private, non-federally owned minerals, but which will penetrate adjacent federally owned minerals (hereinafter "Fee/Fee/Fed Wells").

11.     Plaintiffs' allegations in their Complaint create an immediate controversy and have placed great uncertainty on the investments of both Crossclaim-Plaintiffs.  Declaratory judgments in favor of the Crossclaim-Plaintiffs would resolve the actual controversy between the opposing parties of the legal status of the APDs for the Fee/Fee/Fed Wells.

12.     This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. §§ 2201, 2202 (declaratory judgment), and through 28 U.S.C. § 1367 (supplemental jurisdiction).

13.     Crossclaim-Defendants waive any assertion of immunity under the APA. 5 U.S.C. § 702.

14.     Crossclaim-Plaintiffs admit that the District of Columbia is one of the permissible venues but affirmatively aver that this district is an inconvenient forum.

15.     This Court has personal jurisdiction over Crossclaim-Defendants under general jurisdiction. Crossclaim-Defendants also waive any objection to personal jurisdiction by appearing in the case.

16.     WHEREFORE, the Crossclaim-Plaintiffs pray the Court declare their APDs for their Fee/Fee/Fed Wells were lawfully issued without BLM imposing additional surface use requirements on operations to be conducted solely on private, non-federally owned lands, because BLM lacks statutory and/or constitutional authority to do so and that the Energy Companies be awarded such attorney fees and costs as may be allowed under applicable law.

Respectfully submitted this 28th day of December, 2022.

/s/ L. Poe Leggette
L. Poe Leggette (D.C. Bar No. 430136)
Elizabeth A. Pursley (*Application Submitted to D.D.C. Bar Pending December Admission Date*)
Bailey A. Bridges (*Application Submitted to D.D.C. Bar Pending December Admission Date*)
Baker & Hostetler LLP
811 Main St., Suite 1100
Houston, Texas 77002
Telephone: 303.861.0600
Facsimile: 303.861.7805
pleggette@bakerlaw.com
epursley@bakerlaw.com
bbridges@bakerlaw.com

Alexander K. Obrecht (CO. Bar No. 46937)
Baker & Hostetler LLP
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
Telephone: 303.861.0600
Facsimile: 303.861.7805
aobrecht@bakerlaw.com

*Attorneys for Defendants-Intervenors
Continental Resources, Inc. and
Devon Energy Production Company, L.P.*

26

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 28th day of December, 2022, I served a true and correct copy of the foregoing **FIRST AMENDED ANSWER OF PROPOSED DEFENDANT-INTERVENORS CONTINENTAL RESOURCES, INC. AND DEVON ENERGY PRODUCTION COMPANY, L.P. TO PLAINTIFFS' FIRST AMENDED COMPLAINT AND COUNTERCLAIM AND CROSSCLAIM** via the Court's electronic case filing system which will cause the foregoing to be served upon all counsel of record.

<u>Attorneys for Plaintiffs</u>

Todd C. Tucci
Sarah Stellberg
Hanna A. Goldblatt
ADVOCATES FOR THE WEST
P. O. Box 1612
Boise, Idaho 83702
208.342.7024
ttucci@advocateswest.org
sstellberg@advocateswest.org
hclements@advocateswest.org

<u>Attorneys for Federal Defendants</u>

Todd S. Kim
Michael K. Robertson
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
202-305-9606
michael.robertson@usdoj.gov

*/s/ L. Poe Leggette*
L. Poe Leggette