IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **POWDER RIVER BASIN RESOURCE COUNCIL and WESTERN WATERSHEDS PROJECT**, | |
| Plaintiffs, | |
| v. | |
| **U.S. DEPARTMENT OF THE INTERIOR and U.S. BUREAU OF LAND MANAGEMENT**, | Case No. 1:22-cv-2696 |
| Defendants, | |
| and | |
| **STATE OF WYOMING, *et al*.**, | |
| Intervenors-Defendants | |

## DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS CONTINENTAL AND DEVON'S COUNTERCLAIM AND CROSSCLAIM

Defendant-Intervenors Continental Resources, Inc. ("Continental") and Devon Energy Production Company, L.P. ("Devon") (collectively, the "Energy Producers") respectfully submit this Response to Plaintiffs Powder River Basin Resource Council and Western Watersheds Project's (collectively, "Plaintiffs") Motion to Dismiss Continental and Devon's Counterclaim and Crossclaim, ECF No. 65, (the "Plaintiffs' Motion"), which is accompanied by the following memorandum of law.

TABLE OF CONTENTS

I.      Introduction.................................................................................................................1

II.     Procedural Posture. ...................................................................................................2

III.    Plaintiffs Cannot Move to Dismiss a Claim Against Federal Defendants.........................4

IV.     The Threat of Injury to Energy Producers Caused by Plaintiffs' Lawsuit Establishes
        Article III Standing. ...................................................................................................5

V.      The Energy Producers' Counterclaim Alleges a Cause of Action for Which
        Declaratory Relief May be Sought. ...........................................................................8

VI.     The "Mirror Image" Rule Is Foreign to the D.C. Circuit and Inapplicable to This
        Case...............................................................................................................................10

VII.    Conclusion. ................................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011)........................................................ 9

*Am Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153 (D.D.C. 2001)................................. 8

*Biltmore Co. v. NU U, Inc.*, 1:15-cv-00288-MR,
2016 WL 7494474 (W.D.N.C. Dec. 30, 2016)................................................. 11

*C & E Servs., Inc. of Washington v. D.C. Water & Sewer Autho.*,
310 F.3d 197 (D.C. Cir. 2002)......................................................................... 9

*\*Comm. on Oversight and Gov't Reform v. Holder*, 979 F. Supp. 2d 1 (D.D.C. 2013)............. 8, 9

*\*Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 320 (D.C.
Cir. 2015) ....................................................................................................... 5, 7, 9

*Ctr. For Biological Div. v. U.S. Dep't of the Interior*, 22-cv-1716 (TSC),
2022 WL 16833967 (D.D.C. Nov. 9, 2022) .................................................... 4, 7

*E.E.O.C. v. Brooks Run Min. Co., LLC*, 2008 WL 2543545 (S.D. W. Va. June 23, 2008) .......... 4

*Elec. Priv. Info. Ctr. v. Drone Advisory Comm.*, 369 F. Supp. 3d 27 (D.D.C. 2019).................... 9

*Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289 (6th Cir. May 27, 1987) ............... 11

*Fund for Animals, Inc. v. Norton*, 332 F.3d 728 (D.C. Cir. 2003) ........................................ 5, 7, 8

*Marvel Worldwide, Inc. v. Kirby*, 756 F.Supp.2d 461 (S.D.N.Y. 2010) ...................................... 12

*Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998)................................................... 5

*Perez as next friend of F.V. v. Lake Cnty. Rowing Ass'n*, 2020 WL 6084082 (M.D. Fla. Sept. 25,
2020) .............................................................................................................. 5

*Perez v. Lake Cnty. Rowing Ass'n*, 2020 WL 6082827 (M.D. Fla. Oct. 15, 2020) ........................ 5

*Reyes-Gonzalez v. Firstbank Puerto Rico*, 2017 WL 1048064 (D.P.R. Mar. 17, 2017) ............... 4

*Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003)............................................. 5

*Schilling v. Rogers*, 363 U.S. 666 (1960) ................................................................................. 9

*Shell Gulf of Mexico v. Center for Biological Diversity, Inc.*, 771 F.3d 632 (9th Cir. 2014)......... 6

*Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002)..................................................... 8

*Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950) ...................................................... 9

*WildEarth Guardians v. Haaland*, No. 16-1724 (RC),
    2022 WL 1773474 (D.D.C. June 1, 2022) ........................................................................ 11

*Yellow Cab Co. v. City of Chicago*, 186 F.2d 946 (7th Cir. 1951) ................................................. 11

**Statutes**

28 U.S.C. § 2201(a) ................................................................................................................... 9

**Other Authorities**

Jannette L. Ferguson et al., *Sue and Settle: Citizen Suit Settlements and Environmental Law*, 30-
    SUM Nat. Res. & Env't 23, 23 (2015) ............................................................................ 10

**Rules**

Fed. R. Civ. P. 12(b) ................................................................................................................... 4

**MEMORANDUM OF LAW**

I.      **Introduction.**

The Energy Producers intervened in this lawsuit to protect their interests from significant injury in fact.  Plaintiffs challenge the Bureau of Land Management's ("BLM") approval of the Record of Decision and certain applications for permits to drill ("APDs") for the Conserve County Oil and Gas Project ("Project"), which allow Energy Producers to develop oil and gas in Converse County, Wyoming.  Energy Producers therefore have significant interests in this agency action, which Plaintiffs' suit threatens.  As such, the Energy Producers seek a declaration from the Court that would protect these interests.

Plaintiffs argue the Court should dismiss the Energy Producers' counterclaim and crossclaim because: (1) neither claim presents a "case or controversy" to establish Article III jurisdiction; (2) the Energy Producers do not provide an independent cause of action separate from their declaratory judgment claim; and (3) the Energy Producers bring "mirror image" claims that serve no useful purpose.  Each is unavailing.

First, the case law in the D.C. Circuit is clear: a party has Article III standing when it benefits from agency action, the action is challenged in court, and an unfavorable decision would remove the party's benefit.  Plaintiffs challenge the BLM's approval of the Project and related APDs, this approval benefits the Energy Producers by allowing them to develop oil and gas in Converse County, and an unfavorable decision would not only remove this benefit but cause significant injury.

Second, Plaintiffs' argument regarding an alleged lack of "independent cause of action" is simply a re-packaged and misunderstood challenge to subject matter jurisdiction.  The Energy Producers seek relief from a recognized injury in fact sufficient to establish federal jurisdiction via their counterclaim.

1

Third, the "mirror image" rule invoked by Plaintiffs is foreign to the D.C. Circuit. Even if it did apply, the "mirror image" rule is applied permissively, typically under far different circumstances than at issue here, and is generally ignored when claims are not "identical."

## II.    Procedural Posture.

Plaintiffs' Fifth Claim for Relief asserts the Federal Defendants violated the Mineral Leasing Act ("MLA"), the Federal Land Policy Management Act ("FLPMA"), and the Administrative Procedure Act for an alleged failure to regulate surface operations on Fee/Fee/Fed wells. 1st Am. Compl. ¶¶ 144-50, ECF No. 44. "Plaintiffs request that the Court set aside all Fee/Fee/Fed wells listed in Appendix A as arbitrary, capricious, and not in accordance with law . . . and declare that [the Department of the Interior] and BLM have legal authority under the MLA and FLPMA to regulate the surface operations associated with Fee/Fee/Fed wells, pursuant to the APA and Declaratory Judgement Act." *Id.* ¶ 150 (internal citations omitted). In other words, Plaintiffs challenge not only federal action but also the Energy Producers' existing rights in their lawfully issued APDs. Indeed, Plaintiffs have now specifically requested injunctive relief targeted directly at the Energy Producers' lawful actions under the APDs. [Proposed] Order Granting Pls.' Mot. for Prelim. Inj. ¶ 3 (Mar. 13, 2023), ECF No. 64-2.

The Energy Producers moved to intervene "to protect their property, economic, and regulatory rights and investment" in the Project and related APDs. Mot. to Intervene as Defs. 2 (Nov. 1, 2022), ECF No. 20. Specifically, the Energy Producers demonstrated that Plaintiffs' lawsuit and requested relief impaired the Energy Producers' interests, including:

> (1) loss of employee and contractor time and direct costs in developing and supporting the Project from proposal to approval; (2) loss of investment in leasing mineral acreage within the Project's boundaries, securing related surface use agreements, drilling existing wells pursuant to already issued APDs, and building related infrastructure to facilitate that production; (3) potential lost drilling locations and the inability to recover oil and gas reserves because federal minerals cannot be accessed; (4) interference with existing contractual relationships between

the Energy Producers and their suppliers and service companies that were entered to facilitate development of the Project and APDs; and (5) an extension of federal regulation to an area where the federal defendants have no statutory authority and in which the agencies have a policy of not regulating.

Statement of Points and Authorities in Supp. of Mot. to Intervene as Defs. 9 (Mar. 13, 2023), ECF No. 20-1; *see also id.* 9-10, 14-16. In the Energy Producers' intervention papers, they satisfied the requirements for Article III standing. *Id.* at 14-15. Neither Plaintiffs nor the Federal Defendants objected to the substance of the Energy Producers' intervention. Mot. to Intervene as Defs. 3 (Nov. 1, 2022), ECF No. 20.[1] On December 30, 2022, the Court granted the Energy Producers' Motion to Intervene. Minute Order (Dec. 30, 2022).

The Energy Producers answered Plaintiffs' operative complaint and filed a counterclaim against Plaintiffs to protect the Energy Producers' property and regulatory rights in the Fee/Fee/Fed APDs. *See generally* 1st Am. Answer of Proposed Defs.-Intervenors Cont'l Res., Inc. and Devon Energy Production Co., L.P. to Pls.' 1st Am. Compl. and Counterclaim and Crossclaim (Dec. 28, 2022), ECF No. 50-1. Specifically, the Energy Producers counterclaimed for a declaratory judgment that "their APDs for their Fee/Fee/Fed Wells were lawfully issued without BLM imposing additional surface use requirements on operations to be conducted solely on private, non-federally owned lands, because BLM lacks statutory and/or constitutional authority to do so." *Id.* at 23, ¶ 14.

What Plaintiffs hope to contort is an unconstitutional application of the Property Clause, untethered from any authority given by Congress to the Department of the Interior and its

---

[1] Plaintiffs responded to the Energy Producers' intervention papers only to request briefing limitations. Resp. to Mots. to Intervene by Cont'l Res., Inc., Devon Energy Prod. Co., L.P., and State of Wyo. 1-2 (Nov. 15, 2022), ECF No. 28 ("Plaintiffs do not oppose the intervention motions filed by Devon Energy Production Company, L.P., Continental Resources, Inc., and the State of Wyoming.").

subordinate department, the BLM. *See* Def.-Intervenors, Cont'l Res., Inc. and Devon Energy Prod.

Co., LP's Mem. in Supp. of Their Mot. for Partial J. on the Pleadings 10-21 (Mar. 13, 2023), ECF

No. 69-1. Plaintiffs wish to extend this unsupported authority to directly challenge the property

and regulatory rights held by the Energy Producers under the APDs. *See Ctr. For Biological Div.*

*v. U.S. Dep't of the Interior*, 22-cv-1716 (TSC), 2022 WL 16833967, at *4 (D.D.C. Nov. 9, 2022)

(recognizing in the context of APDs that plaintiffs' requested relief would cause intervenors to

"lose *property interests* and financial investments *in their permits*" (emphasis added)).

**III.      Plaintiffs Cannot Move to Dismiss a Claim Against Federal Defendants.**

As an initial matter, Plaintiffs cannot move to dismiss a claim brought against the Federal

Defendants but not the Plaintiffs.  Plaintiffs move under Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6) to dismiss the Energy Producers' crossclaim *against Federal Defendants*. *See* Pls.'

Mot. 5-9. Rule 12(b) provides that "a party may assert the following *defenses* by motion . . . (1)

lack of subject-matter jurisdiction . . . (6) failure to state a claim upon which relief can be granted."

Fed. R. Civ. P. 12(b) (emphasis added).  There is no defense for Plaintiffs to make with respect to

the crossclaim because it is not brought against them.  The language of Rule 12(b) does not

contemplate moving to dismiss a claim against a different party, and Plaintiffs cite no authority to

suggest otherwise. Accordingly, the Court should disregard portions of Plaintiffs' Motion to

Dismiss pertaining to the Energy Producers' crossclaim against the Federal Defendants. *See, e.g.*,

*E.E.O.C. v. Brooks Run Min. Co., LLC*, 2008 WL 2543545 (S.D. W. Va. June 23, 2008) (plaintiff

"clearly lacks 'standing' to move to dismiss" cross-claim against co-defendant); *Reyes-Gonzalez*

*v. Firstbank Puerto Rico*, 2017 WL 1048064, at *7 (D.P.R. Mar. 17, 2017), vacated, 2017 WL

10592215 (D.P.R. Dec. 7, 2017) (noting, "we doubt that [defendant] may move to dismiss

plaintiff's claims against another party."); *Perez as next friend of F.V. v. Lake Cnty. Rowing Ass'n*,

2020 WL 6084082, at *2 (M.D. Fla. Sept. 25, 2020), report and recommendation adopted sub nom.

*Perez v. Lake Cnty. Rowing Ass'n*, 2020 WL 6082827 (M.D. Fla. Oct. 15, 2020) ("Although not raised by the parties, the Court questions whether Plaintiff has standing to move to dismiss the cross-claim between the two Defendants.").

**IV.      The Threat of Injury to Energy Producers Caused by Plaintiffs' Lawsuit Establishes Article III Standing.**

Plaintiffs argue that the Energy Producers have no Article III standing to support jurisdiction over their counterclaim. But Plaintiffs have missed the boat. In the D.C. Circuit, "any person who satisfied Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *see also Crossroads Grassroots Policy Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 320 (D.C. Cir. 2015) ("[T]he standards for constitutional standing and the second factor of the test for intervention are the same." (citing *Fund for Animals, Inc. v. Norton*, 332 F.3d 728, 735 (D.C. Cir. 2003)). This Court granted the Energy Producers' Motion to Intervene, thereby holding that the Energy Producers have requisite Article III standing to bring claims pursuant to that intervention.

The Energy Producers intervened in this lawsuit to defend against a threatened injury directly traceable to the relief Plaintiffs seek in this case. This is sufficient to establish a concrete and imminent injury sufficient to establish Article III standing. *See, e.g., Fund for Animals*, 322 F.3d at 732-34 (defendant-intervenor established Article III standing where environmental group challenged the Department of the Interior's categorization of endangered species, thereby threatening defendant-intervenor with loss of tourist dollars and reduction in conservation funding); *Military Toxics Project v. EPA*, 146 F.3d 948, 953 (D.C. Cir. 1998) (defendant-intervenor established Article III standing in lawsuit brought by citizens' groups against the EPA because defendant-intervenor "benefit[ed] from the EPA's [] interpretation" and "would suffer concrete injury if the court grant[ed] the relief the petitioners [sought]").

Plaintiffs rely on *Shell Gulf of Mexico v. Center for Biological Diversity, Inc.*, 771 F.3d 632 (9th Cir. 2014), which they describe as a "remarkably similar case," to argue that the Energy Producers do not present an Article III case or controversy.  *See* Pls.' Mot. 6-8.  But this case does not consider the standing of an intervening defendant.  Nor does the case include a federal agency as a party. And most importantly, it relates to a pre-emptive declaration regarding agency action—not a concrete, threatened injury from a plaintiff—like Plaintiffs here—challenging the agency action.

In *Shell Gulf of Mexico*, petroleum companies brought action against environmental organizations seeking a declaratory judgment that agency approval of required oil spill response plans did not violate the APA.  *Shell Gulf of Mexico*, 771 F.3d at 634.  Plaintiffs filed what they described as a "preemptive lawsuit" against environmental organizations—not the relevant agencies—to ward off *potential* litigation from the environmental organizations relating to the agency approval.  *Id*. at 635.  Under these circumstances, the court held that "it would be odd to conclude that a case or controversy exists merely because Shell seeks to know who would prevail *if* the environmental groups asserted an APA claim against the Bureau." *Id*. at 637 (emphasis added).  Moreover, the Court found dispositive the fact that the agency was not included in plaintiff's suit: "Put simply, the Bureau lies at the center of the underlying controversy and is the locus of the adverse legal interests created by the APA.  Without its participation, no case or controversy can exist."  *Id*. at 636.  Here, in contrast, the Energy Producers do not seek a pre-emptive or advisory determination regarding agency action not yet challenged.  Plaintiffs assert APA claims against the BLM that threaten to cause the Energy Producers significant injury in fact, and the Energy Producers seek to defend themselves against this threat.

Cases in the D.C. Circuit "have generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads*, 788 F.3d at 317.  The Energy Producers currently enjoy a benefit from the BLM's approval of the Project and related APDs.  Were Plaintiffs to prevail in their lawsuit, the Energy Producers would face significant exposure to enforcement proceedings and civil liability via private lawsuits for actions taken pursuant to the BLM's approval.  The Energy Producers therefore have "a significant and direct interest in the favorable action shielding [them] from further litigation and liability; and the 'threatened loss' of that favorable action constitutes a 'concrete and imminent injury'" sufficient to establish Article III standing.  *Crossroads*, 788 F.3d at 318; *see also Fund for Animals*, 322 F.3d at 733.

That the Energy Producers are not themselves the object of the challenged agency action is immaterial because the BLM's approval of the Project and related APDs directly regulates the disposition of the Energy Producers' property in Converse County and the APDs confer a property interest to the Energy Producers. *See Ctr. For Biological Div.*, 2022 WL 16833967, at *4 (recognizing in the context of APDs that plaintiffs' requested relief would cause intervenors to "lose *property interests* and financial investments *in their permits*" (emphasis added)) "[F]or the purpose of determining whether standing is self-evident, we see no meaningful distinction between a regulation that directly regulates a party and one that directly regulates the disposition of a party's property." *Fund for Animals*, 322 F.3d at 734.  Indeed, this Court has found that "the participation of the persons most directly affected by the [challenged agency action] is utterly consistent with the notice and opportunity to be heard concerns that lie at the heart of the due process clause." *Am Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 156 (D.D.C. 2001).  Because the disposition of the Energy Producers' property in Converse County is directly tied to the BLM's approval of the

Project and related APDs, which is presently challenged by Plaintiffs' suit, the Energy Producers' "standing is self-evident." *See Fund for Animals*, 322 F.3d at 734-35; *see also Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002) ("In many if not most cases the petitioner's standing to seek review of administrative action is self-evident.").

V.     **The Energy Producers' Counterclaim Alleges a Cause of Action for Which Declaratory Relief May be Sought.**

Plaintiffs argue that the Energy Producers "have no basis upon which to seek declaratory relief" and move to dismiss under Rule 12(b)(6) for failure to state a claim.  Pls.' Mot. at 5. Specifically, Plaintiffs claim that "a party cannot seek relief under the [Declaratory Judgment Act] without asserting some independent cause of action that could otherwise have been brought between the parties in federal court."  *Id*.  But a cause of action under the Declaratory Judgment Act exists where there is "an actual, ripe controversy over which [the Court] can exercise subject matter jurisdiction[.]"  *Comm. on Oversight and Gov't Reform v. Holder*, 979 F. Supp. 2d 1, 22 (D.D.C. 2013).

In fact, Plaintiffs misconceive their 12(b)(6) argument.  In *Holder*, this Court directly addresses the misconception that the Declaratory Judgment Act not creating a "cause of action" is reason to dismiss what is otherwise a valid case or controversy: "It is true that there is case law that has muddied the waters, in which courts have observed that the Act does not create a 'cause of action' . . . [b]ut those cases can be read as simply reiterating the well-established principle that the Act does not create substantive rights that would not exist otherwise, and that it does not confer federal jurisdiction by itself." *Holder*, 979 F. Supp. 2d at 23-24.  The Act is but the mechanism through which the Energy Producers seek to vindicate their judicially remediable right.

Indeed, this argument effectively re-packages Plaintiffs' standing argument—that is, a lack of "cause of action" in this context renders a claim devoid of federal jurisdiction.  *See e.g., Ali v.*

*Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ("It is a 'well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction.  Rather, the availability of [declaratory] relief presupposes the existence of a judicially remediable right.'"); *Elec. Priv. Info. Ctr. v. Drone Advisory Comm.*, 369 F. Supp. 3d 27, 38 (D.D.C. 2019)  (no private cause of action resulting in dismissal for lack of subject matter jurisdiction); *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("[T]he Declaratory Judgment Act is not an independent source of federal jurisdiction."); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) (noting that the Act did not impliedly repeal or modify the requirements for subject matter jurisdiction in federal court); *C & E Servs., Inc. of Washington v. D.C. Water & Sewer Autho.*, 310 F.3d 197, 201 (D.C. Cir. 2002) ("[T]he Declaratory Judgment Act 'is not an independent source of federal jurisdiction.'").

Moreover, declaratory relief is warranted here under the plain text of the statute: "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]"  28 U.S.C. § 2201(a).  As discussed above, the Energy Producers "present[] an actual, ripe controversy over which [the Court] can exercise subject matter jurisdiction."  *Holder*, 979 F.Supp.2d at 22.  The threat to agency action conferring a benefit upon the Energy Producers constitutes injury in fact sufficient to establish federal jurisdiction under Article III.  *See Crossroads*, 788 F.3d at 320.  This is sufficient for purposes of Article III standing, as well as for purposes of obtaining declaratory relief in this case.  In other words, this Court has jurisdiction over the Energy Producers' counterclaim regardless of how Plaintiffs color their standing argument.

**VI.     The "Mirror Image" Rule Is Foreign to the D.C. Circuit and Inapplicable to This Case.**

Plaintiffs cite to a smattering of federal cases—none of which are in the D.C. Circuit—to support the proposition that the Energy Producers' counterclaim is precluded by the "mirror image" rule. *See* Pls.' Mot. at 8-9. Specifically, Plaintiffs claim that the Energy Producers' counterclaim "do[es] not serve a useful purpose" because it presents an issue "already subsumed by Plaintiffs' Fifth Claim for Relief." *Id.* at 9. But the Energy Producers and Plaintiffs seek different relief for different purposes. The Energy Producers seek a declaration that the "APDs were lawfully issued without BLM imposing additional surface use requirements on private, non-federally owned lands." 1st Am. Answer of Proposed Defs.-Intervenors Cont'l Res., Inc. and Devon Energy Production Co., L.P. to Pls.' 1st Am. Compl. and Counterclaim and Crossclaim, 23, ¶ 14 (Dec. 28, 2022), ECF No. 50-1. Plaintiffs seek a declaration "that DOI and BLM have legal authority under the MLA and FLPMA to regulate the surface operations associated with Fee/Fee/Fed wells[.]" 1st Am. Compl. 34, ECF No. 44.

Further, Plaintiffs' mirror-image argument overlooks another differing purpose behind the counterclaim: the risk of sue-and-settle tactics. *See* Jannette L. Ferguson et al., *Sue and Settle: Citizen Suit Settlements and Environmental Law*, 30-SUM Nat. Res. & Env't 23, 23 (2015) ("An emerging debate exists as to whether sue and settle lawsuits serve as a legitimate means to ensure compliance with federal environmental statutes and regulations or as an abusive tactic to circumvent or shortcut rulemaking processes, limit state and industry participation, and dictate policy."). Without independent claims of their own, sue-and-settle tactics often leave intervenor-defendants with little to no say in the settlement between the plaintiff and the government. *See, e.g.*, *WildEarth Guardians v. Haaland*, No. 16-1724 (RC), 2022 WL 1773474, at *3 (D.D.C. June 1, 2022) ("[T]he Federal Defendants argue that because they and the Plaintiffs have reached a

voluntary settlement *and the Intervenors present no claims of their own*, there is no longer a live dispute and the Court should dismiss for lack of subject matter jurisdiction."). And intervenor-defendants often have just as little ability to successfully object to voluntary dismissal after the settlement, leaving their substantive arguments undecided by the Court. *Id.* at \*4-\*9 (granting voluntary dismissal because of settlement agreement between plaintiffs and federal defendants over defendant-intervenors' objection). While a motivation for Plaintiffs may be to reach a settlement with the Federal Defendants, the Energy Producers' counterclaim ensures that Plaintiffs' challenges to the Energy Producers' property rights in their Fee/Fee/Fed APDs will be heard by this Court.

Even the cases cited by Plaintiffs acknowledge that courts may, and do, decline to apply the "mirror image" rule where claims "do not precisely overlap." *See, e.g., Biltmore Co. v. NU U, Inc.*, 1:15-cv-00288-MR, 2016 WL 7494474, at \*3 (W.D.N.C. Dec. 30, 2016) (declining to dismiss counterclaim for declaratory judgment of non-infringement which plaintiffs claimed was duplicative of infringement claim). The cases cited by Plaintiffs also acknowledge that the "mirror image" rule is permissive—that is, the district court "may" dismiss a redundant counterclaim, albeit typically under procedural circumstances not applicable to the instant case. *See, e.g., Yellow Cab Co. v. City of Chicago*, 186 F.2d 946, 950 (7th Cir. 1951) (noting that a declaratory judgment "may" be refused where there are parallel declaratory claims regarding the validity of the same ordinance in state and federal court); *Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, 819 F.2d 289, at \*3 (6th Cir. May 27, 1987) (unpublished table decision) (district court within its discretion to deny leave to amend counterclaim that "stated issues identical to the issues raised in the complaint" and "the complaint was [already] properly dismissed for lack of actual controversy."). Finally, "a counterclaim is not duplicative or redundant if it asserts an independent case or controversy that

survives dismissal of the plaintiff's claim." *Marvel Worldwide, Inc. v. Kirby*, 756 F.Supp.2d 461, 467 (S.D.N.Y. 2010). As discussed at length above, the Energy Producers assert an independent case or controversy.

The undersigned could not identify a single instance of the term "mirror image rule," or its application in principle, in any case in the D.C. Circuit. Nor could Plaintiffs, apparently. This is no basis to dismiss the Energy Producers' counterclaim.

**VII.      Conclusion.**

For the foregoing reasons, this Court should deny Plaintiffs' Motion to Dismiss Continental and Devon's Crossclaim and Counterclaim and allow the Energy Producers' claims to proceed.

Respectfully submitted this 24th day of April, 2023.

/s/ L. Poe Leggette
L. Poe Leggette (D.C. Bar No. 430136)
Elizabeth A. Pursley (*Application Submitted to D.D.C. Bar Pending December Admission Date*)
Bailey A. Bridges (D.C. Bar No. TX0059)
Aidan K. Slavin (D.C. Bar No. TX0061)
Baker & Hostetler LLP
811 Main St., Suite 1100
Houston, Texas 77002
Telephone: 303.861.0600
Facsimile: 303.861.7805
pleggette@bakerlaw.com
epursley@bakerlaw.com
bbridges@bakerlaw.com
aslavin@bakerlaw.com

Alexander K. Obrecht (CO. Bar No. 46937)
Baker & Hostetler LLP
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
Telephone: 303.861.0600
Facsimile: 303.861.7805
aobrecht@bakerlaw.com

*Attorneys for Defendant-Intervenors*
*Continental Resources, Inc. and*
*Devon Energy Production Company, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of April, 2023, I served a true and correct copy of the foregoing **DEFENDANT-INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS CONTINENTAL AND DEVON'S COUNTERCLAIM AND CROSSCLAIM** via the Court's electronic case filing system which will cause the foregoing to be served upon all counsel of record.

<i>/s/ L. Poe Leggette</i><br>L. Poe Leggette

14