IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **POWDER RIVER BASIN RESOURCE COUNCIL** and **WESTERN WATERSHEDS PROJECT**,<br><br>    Plaintiffs,<br><br>v.<br><br>**U.S. DEPARTMENT OF THE INTERIOR** and **U.S. BUREAU OF LAND MANAGEMENT**,<br><br>    Defendants,<br><br>and<br><br>**STATE OF WYOMING, et al.,**<br><br>    Defendant-Intervenors. | Case No. 1:22-cv-2696-TSC |

### DECLARATION OF TIMOTHY M. SULSER

I, Timothy M. Sulser, state as follows:

1. I am Chief Executive Officer at 1876 Resources, LLC ("1876"). In this position, I direct overall development and operations in the Converse County project area for 1876.

2. 1876 is a member of the Petroleum Association of Wyoming.

3. The District Court's injunction in the September 13, 2024 order prohibiting the Bureau of Land Management (BLM) from approving applications for permits to drill (APDs) ("Injunction") adversely and materially impacted 1876.

    a. The Injunction caused 1876 not to submit eight APDs to BLM because 1876 recognized that BLM could not approve the APDs. 1876 was planning to drill these wells in 2025. Thus, the Injunction will result in approximately $329,690,000 in lost revenue to 1876 due to the delay in construction and

   development of these eight wells.  The Injunction will also delay the payment of approximately $30,266,000 in royalty to the United States.

  b. In September 2024, 1876 applied to BLM to modify one APD by changing an underground ("downhole") specification of one well.  Typically, BLM approves such a change to an APD by approving a sundry notice, Form 3160-5, rather than requiring the applicant to submit a new APD.  Before BLM approves such a sundry notice, BLM ensures that the action has been analyzed as required by the National Environmental Policy Act (NEPA).  BLM denied 1876's sundry notice because of the Injunction.  BLM's decision to deny the sundry notice caused 1876 to redesign the well and locate our bottom hole in a non-optimal location for well spacing.

4.  If BLM is unable to approve APDs during a remand period that lasts at least six months, 1876 will be harmed in multiple respects:

  a. BLM will not approve approximately 64 APDs on at least 9 new surface locations (i.e., well pads), which 1876 has not yet submitted.  1876 estimates that a delay in obtaining the APDs, and associated delays in construction of well pads, roads, and other infrastructure, will result in approximately $2,206,185,000 lost revenue to 1876.

  b. A majority of the acreage owned by 1876 involves federal minerals within the Converse County project area.  A prolonged period in which BLM is unable to approve APDs would cause 1876 to look at different acreage and development plans outside of the Converse County project area.  1876 may not develop at least

64 oil and gas wells, resulting in an estimated $2,206,185,000 loss in revenue to 1876 and an estimated $302,547,000.00 loss in federal royalty.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 8th day of November, 2024.

*[signature: Timothy M. Sulser]*

Timothy M. Sulser, CEO
1876 Resources, LLC
1290 N. Broadway, Suite 1650
Denver, CO 80203