IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **POWDER RIVER BASIN RESOURCE COUNCIL and WESTERN WATERSHEDS PROJECT**, <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. DEPARTMENT OF THE INTERIOR and U.S. BUREAU OF LAND MANAGEMENT**, <br><br> Defendants, <br><br> and <br><br> **STATE OF WYOMING,** *et al.*, <br><br> Intervenors-Defendants | Case No. 1:22-cv-2696 |

---

**DECLARATION OF RYAN BAKER**
**IN SUPPORT OF PRIVATE INTERVENOR-DEFENDANTS' REMEDY BRIEFING**

---

I, Ryan Baker, declare as follows:

1.      I am over eighteen years old, have personal knowledge of the matters set forth in this Declaration, and am competent to testify as to the matters set forth herein.

2.      I am currently employed as the Vice President, Powder River Basin with Continental Resources, Inc. ("Continental"). I have worked for Continental in various roles since 2013, and I have 22 years of experience in the oil and gas industry.

3.      Continental is a top 10 independent oil producer in the United States and a leader in America's energy renaissance. Continental is among the most efficient and cost-effective producers of oil and natural gas due to its investments in the United States and premier portfolio

of assets in unconventional resource plays in North Dakota, Montana, Oklahoma, Wyoming, and Texas.

4.      Relevant to this lawsuit, Continental owns oil and gas leases, permits, wells, and related infrastructure in the Powder River Basin of Wyoming, including in Converse County.

5.      I have been involved and currently am involved in managing Continental's interests related to the Converse County Oil and Gas Project ("Project").

6.      I understand that this lawsuit involves the Plaintiffs' challenge to the Project and Applications for Permit to Drill ("APDs") issued related to the Project. I have been advised and it is therefore my understanding that on September 13, 2024, the Court found the Project's Environmental Impact Statement ("EIS") deficient on one ground and ordered all parties to submit a supplemental brief on remedy (Document No. 131). Plaintiffs in the above-captioned case—Powder River Basin Resource Council and Western Watersheds Project—filed Plaintiffs' Remedy Brief (Document No. 135). Plaintiffs request vacatur of both the Project's Record of Decision ("ROD") and EIS while on remand.

7.      Plaintiffs' requested vacatur would harm Continental's property, economic, and regulatory interests in the Project and related permits. I will explain the specific harm in the following paragraphs.

8.      For purposes of these calculations, I have projected that vacatur of the ROD and EIS would result in BLM's inability to approve APDs during a remand period of at least a year. Therefore, the following calculations use October 31, 2025, as the earliest date BLM could issue new permits and assumes it would take two months to resume activities after permitting resumes—i.e., until January 1, 2026 (the "Timeframe"). I then applied the proposed vacatur's impacts to Continental's currently planned drilling schedule in the Project area over a 10-year

model (through December 2033) (the "Model"). These numbers are based on the planned drilling schedule as it existed for Continental at the time. Drilling schedules are subject to and do change for numerous reasons.

9.      The economic projections in the following paragraphs reflect only Continental's planned operations in the Project area and do not cover or include all of Continental's operations in the greater Powder River Basin or in the rest of the State of Wyoming.

10.     I projected the harm from Plaintiffs' requested vacatur to Continental, Continental's vendors, the State of Wyoming, and royalty owners caused by delay during the Time Frame as it impacts Continental's current expectations for calendar years 2025 and 2026 and for the entire life of the Model. I used industry-standard assumptions to perform these calculations just as Continental would ordinarily project the revenue, expenses, and other items for planned drilling. And I have rounded the numbers to the nearest million for ease of presentation. While obvious, it is worth noting, if Plaintiffs' requested vacatur is granted and remains in place longer than the Timeframe, the projected harm would continue to grow.

11.     To facilitate the development of its leases and related APDs within the Project area, Continental has executed contracts with third-party service companies and suppliers. The delay caused by vacatur would disrupt Continental's planning and execution and could result in additional costs and expenses owed to Continental's third-party service companies and providers. Sometimes these costs and expenses are incurred from money that is already contractually committed and owed. Other times the costs come from demobilizing and remobilizing various internal Continental employees, vendors, or service companies.

12.     As a result of a delay for the Timeframe:

a.  Continental would expect to decrease gross capital expenditures by $212,000,000 during 2025 and 2026 and lease operating expenses by $26,000,000 over the life of the Model. The harm from the decrease in these expenditures is two-fold. First, Continental's capital expenditures may not actually decrease by the full amount. Second, these categories of expenditures represent money that would be paid directly to vendors and third parties retained by Continental to assist in drilling and operating the planned wells. Many of these vendors and third parties are based in or have offices in Wyoming and employees who live and work there. This is money that would largely be taken from the local and State economies.

b.  Payment of $5,000,000 in ad valorem taxes and $6,000,000 in severance taxes to the State of Wyoming would be delayed over the life of the Model.

c.  Assuming a 20% royalty for every lease for purposes of this projection, royalty owners in Continental's wells would lose $17,000,000 in royalties on the oil and gas that would have been produced and sold during 2025 and 2026.

13.    The permitting delay during the Timeframe does not only amount to lost revenue and harm to Continental, Continental's vendors, the State of Wyoming, and royalty owners. The delay will also cause Continental irreparable harm by impacting the time-value of money on its investments. That is, after discounting the future revenue streams to their present value at a 10-percent (PV10) discount rate, Continental will lose $73,000,000 (PV10) over the life of the

Model just from the delay during the Timeframe. Continental cannot recoup or be compensated by the Plaintiffs or the Government for the vacatur's impact to the affected wells' value.

14.     In the Project area and the greater Powder River Basin, it is already a challenge to retain available vendors and suppliers. Further development delays in the Project area may cause the number of available vendors and suppliers to decrease, or, in some cases, be eliminated. Similarly, the costs of materials and services will likely increase due to inflation. These changes would exacerbate the projected harm to Continental, its vendors, the State of Wyoming, and other stakeholders.

15.     Continental is the lessee under oil and gas leases of approximately 324,323 net acres of combined private, State of Wyoming, and federal minerals within the Project area.

16.     Continental conducts its operations according to a carefully planned schedule that is designed to efficiently develop its assets within the Project area. In developing a drilling schedule, Continental must meticulously coordinate exploratory work, drilling, completions, and the building of infrastructure to facilitate the development. The timing and success of the drilling schedule heavily depends on the permitting process, including BLM's issuance of APDs.

17.     Even temporary interruptions to the permitting process would disrupt Continental's carefully planned drilling schedule and could cause Continental to incur additional operational and third-party expenses. But any delays could also impair Continental's broader lease and property rights. Continental's leases often have a limited period in which the lessee must initiate drilling. Without timely drilling, leases can be subject to termination or automatically terminate. Continental's inability to execute its drilling schedule because of Plaintiffs' requested vacatur and larger lawsuit could subject Continental to termination of its property rights secured by the leases within the Project area.

4861-8863-6660.5

18.     Many of these acres are committed to federal units. An oil and gas unit refers to a large geographic area that may consist of federal, State of Wyoming, and fee minerals and associated leaseholds that are combined—i.e., "unitized"—for the purposes of more efficiently developing and producing an oil and gas pool, field, or like area. Each federal unit is governed by a unit agreement.

19.     Unit agreements contain provisions for automatic contraction of the geographic reach of the unit without continuous drilling operations on leasehold not already within a participating area in the unit. In other words, without the ability to continuously conduct drilling operations, the unit is subject to contraction, which places the contracted leasehold at risk of termination due to the expiration of its primary term or due to lack of production.

20.     As relevant to potential unit contraction, Continental is the lessee under oil and gas leases of approximately 37,472 net acres of private, State of Wyoming, and federal minerals committed to four separate federal units. Each of these four units is governed by a unit agreement with an active continuous drilling operations provision. If current permits remain and there is a delay in approvals during the Timeframe, Continental will not meet its continuous-drilling commitments for the Barton Unit. Therefore, 1,305 net acres are at risk of expiring or terminating.

21.     BLM's last lease sale in the same area as the Barton Unit was in June 2023 for $3,300/acre. When I apply an average per-acre price of $3,300 across the 1,305 net acres at risk for expiration under the Barton federal unit, Plaintiffs' requested vacatur places $4,306,500 at risk of expiring or terminating due to unit contraction. There is no guarantee Continental would be able to again lease these minerals, and, even if Continental could, leasing the minerals again would require additional expenditures. Furthermore, there is no guarantee Continental could

4861-8863-6660.5

obtain a suspension of the continuous drilling operations provisions or otherwise save the leasehold from contraction and expiration or termination.

22.     Continental also owns non-operated working interests within the Project's boundaries. This means Continental is not the operator or applicant for the applicable APD, but the proposed well will produce from a spacing unit that contains minerals leased by Continental. In this scenario, Continental is responsible for paying its proportionate share of the costs to drill and produce such a well. If Plaintiffs were to successfully vacate and stall upcoming APDs, Continental's non-operated working interests and related investments and expected revenue would also be subjected to the same types of harm discussed in Paragraphs 11-13.

23.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

/s/ Ryan Baker

Ryan Baker