**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| POWDER RIVER BASIN RESOURCE COUNCIL and WESTERN WATERSHEDS PROJECT, | Case No. 1:22-cv-2696-TSC |
| Plaintiffs, | |
| v. | |
| U.S. DEPARTMENT OF THE INTERIOR and U.S. BUREAU OF LAND MANAGEMENT, | |
| Defendants, | |
| and | |
| STATE OF WYOMING, et al., | |
| Defendant-Intervenors. | |

**PLAINTIFFS' OPPOSITION TO PRIVATE DEFENDANT-INTERVENORS' MOTION
TO DISSOLVE THE INTERIM INJUNCTION (ECF NO. 148)**

## INTRODUCTION

Private Intervenors' Motion to Dissolve the Interim Injunction (ECF No. 148) under Rule 54(b) largely mirrors Defendants' earlier motion (ECF No. 145) under Rule 60(b). Like Defendants, Intervenors ask that the Court "dissolve the Interim Injunction and close the case." Private Intervenors' Mot. to Dissolve at 12; *see also* Defs.' Mot to Dissolve at 7. As explained below—as well as in Plaintiffs' response in opposition to Defendants' motion, *see* ECF No. 149––this case is not yet resolved and the Court should deny Private Intervenors' Motion.

First, Plaintiffs have several additional pending claims that are ripe for the Court's review and provide Plaintiffs with the prospect for further relief against the Converse County Environmental Impact Statement ("EIS"), Record of Decision ("ROD"), and Resource Management Plan ("RMP") Amendment. In addition to further defects in BLM's groundwater analysis, these claims challenge BLM's refusal to consider reasonable Project alternatives, BLM's disclaimer of its authority to impose air quality mitigation, and BLM's elimination of seasonal raptor protections. These claims are not mooted by BLM's recent Supplemental Environmental Assessment ("EA"), Finding of No New Significant Impact ("FONNSI"), and Decision Record, which addressed only the single groundwater analysis error found by the Court in its partial summary judgment ruling and expressly reaffirmed the prior Project EIS and ROD.

Second, contrary to Private Intervenors' sweeping arguments, the Supreme Court's decision in *Seven County Infrastructure Coalition v. Eagle County, Colorado*, 145 S.Ct. 1497, 605 U.S. ___ (2025), does not alter BLM's legal violations in this case, including under the National Environmental Policy Act ("NEPA"). Plaintiffs' summary judgment briefings have demonstrated not only that BLM violated NEPA in fundamental respects that remain valid claims compelling vacatur of the EIS and ROD following *Seven County*, but that BLM also

violated other statutes, notably the Federal Land Policy and Management Act (FLPMA) and Administrative Procedure Act (APA), again warranting vacatur of the challenged decisions.

Plaintiffs accordingly request that the Court deny Private Intervenors' Motion to Dissolve the Interim Injunction and proceed to rule on Plaintiffs' remaining summary judgment claims.

## **BACKGROUND**

As explained in detail in Plaintiffs' opposition to Defendants' motion to dissolve, major claims in this case remain unadjudicated. *See* Pls.' Opp'n to Defs.' Mot. to Dissolve (ECF No. 149) at 3–7. On September 13, 2024, the Court granted partial summary judgment for Plaintiffs and denied Defendants' and Intervenors' cross motions for summary judgment. ECF Nos. 130, 131. The Court found that BLM's EIS and ROD for the Converse County Project violated NEPA by relying on an improper specific storage value in its Project groundwater model. ECF No. 130 at 15–16. The Court did not rule on Plaintiffs' other summary judgment claims. *Id.* Instead, it ordered additional briefing to address whether it "should vacate the Project approval pending remand" and enjoined "further APD approvals based on the deficient EIS . . . pending further order of the court." *Id.* at 16–17; ECF No. 131.

While remedy briefing was pending before the Court, BLM unilaterally proceeded to correct the specific storage value error identified by the Court by issuing a Converse County Oil and Gas Project Final EIS Groundwater Drawdown Model Simulations Technical White Paper ("Groundwater White Paper."). *See* BLM National NEPA Register, Draft Remedial Groundwater Drawdown Modeling Analysis, available at https://eplanning.blm.gov/eplanning-ui/project/2038866/570 (last visited July 16, 2025). Using the analysis in the Groundwater White Paper, BLM then issued a Final Supplemental EA, FONNSI, and Decision Record affirming the prior Converse County ROD and EIS. *See* BLM National NEPA Register, Final Supplemental

EA, FONNSI, and Decision Record, available at https://eplanning.blm.gov/eplanning-ui/project/2038866/570 (last visited July 16, 2025). Following a similar motion brought by Defendants under Rule 60(b), Private Intervenors now move to Dissolve the Interim Injunction under Rule 54(b). ECF Nos. 145, 148.

## ARGUMENT

### I.     PLAINTIFFS HAVE SEVERAL PENDING CLAIMS AGAINST THE PROJECT EIS, ROD, AND RMP AMENDMENT THAT ARE RIPE FOR REVIEW.

Private Intervenors argue that BLM's Supplemental EA constitutes a change in factual circumstances that warrants relief from the interim injunction and closing of the case. Private Intvs.' Mot. to Dissolve at 3–5. However, Private Intervenors ignore Plaintiffs' several remaining claims challenging the lawfulness of the Converse County Project EIS, ROD, and RMP Amendment. These claims are not resolved by BLM's Supplemental NEPA analysis and further action from the Court is necessary before this case can be closed.

As explained in Plaintiffs' opposition to Defendants' motion to dissolve, Plaintiffs have several remaining claims that are ripe for this Court's review. *See* Pls.' Opp'n to Defs.' Mot. to Dissolve at 3–7. One of Plaintiffs' remaining claims alleges BLM's Project decisions violated NEPA in additional ways, including other serious flaws with the Project's groundwater analysis, improper consideration of cumulative greenhouse gas emissions, and failure to consider reasonable Project alternatives that would have reduced Project impacts on the environment. *See* Pls.' Summ. J. Op. Br. (ECF No. 116-1) at 14–32; First Am. Compl. (ECF No. 44) ¶¶ 122–26. Plaintiffs' other two claims allege the Project decisions violated additional laws, including FLPMA and the APA, by improperly disclaiming authority to require air quality mitigation measures and by removing seasonal raptor protections without consideration of BLM's substantive mandate to avoid unnecessary and undue degradation. Pls.' Summ. J. Op. Br. at 32–

52; First. Am. Compl. ¶¶ 138–58. Any one of these significant legal violations would render unlawful the Converse County ROD and thus provide Plaintiffs with further prospect of relief. *See WorldCom, Inc. v. F.C.C.*, 246 F.3d 690, 695 (D.C. Cir. 2001); *Ctr. for Biological Diversity v. Regan*, 729 F. Supp. 3d 37, 52, 55 (D.D.C. 2024).

Critically, BLM's Supplemental EA and FONNSI addresses only the single NEPA violation identified in the Court's partial summary judgment ruling regarding BLM's use of an improper specific storage value in its groundwater model. *See* BLM National NEPA Register, Final Supplemental EA and Signed FONNSI, available at https://eplanning.blm.gov/eplanning-ui/project/2038866/570 (last visited July 15, 2025); *see also* Pls.' Opp'n to Defs.' Mot. to Dissolve at 6–7. The corresponding Decision Record in no way invalidates or supersedes the defective portions of the EIS, ROD, and RMP Amendment on which Plaintiffs' remaining claims are based, and thus does not somehow render those remaining claims moot. *Compare 350 Montana v. Haaland*, 50 F.4th 1254, 1264 (9th Cir. 2022) (plaintiffs' challenge to 2018 EA were not moot by issuance of 2020 EA that "expressly incorporated" the "relevant portions" of the 2018 EA), *with Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011) (finding claims moot when 2008 ROD superseded 2000 ROD "in its entirety" and thus it was impossible to grant prospective relief for failure to enforce the ROD), *and Anderson v. U.S. Dep't of Hous. and Urb. Dev.*, 731 F. Supp. 3d 19, 31 (D.D.C. 2024) (challenges to agency action generally become moot only when a new agency action supersedes the former and thus "vacating the old agency action will not deliver the plaintiff any relief"). Indeed, the Decision Record expressly "*affirm*[*s*] the previous decision in the Record of Decision for the Converse County Oil and Gas Project" and "*incorporates by reference* the Final [EIS] for the Converse County Oil and Gas Project and the supplemental EA." *See* BLM National NEPA Register,

Decision Record, available at https://eplanning.blm.gov/eplanning-ui/project/2038866/570 (last visited July 15, 2025). (emphasis added). Invalidation of the 2020 ROD, EIS, and RMP Amendment based on Plaintiffs' remaining claims would still provide Plaintiffs with relief. Thus, Plaintiffs' claims are still live and ripe; they are not rendered moot by BLM's supplemental Decision Record.

## II.    *SEVEN COUNTY* DOES NOT SUPPORT PRIVATE INTERVENORS' MOTION.

Contrary to Private Intervenors' assertions, the Supreme Court's recent *Seven County* decision does not support their position. Private Intvs.' Mot. to Dissolve at 5–8. This case involves issues that are distinct from those in *Seven County*, including claims arising under entirely different laws. Additionally, Private Intervenors' arguments against vacatur are irrelevant to whether the Court should maintain the interim injunction and proceed to rule on Plaintiffs' remaining claims.

First, *Seven County* has little bearing on the merits issues in this case. The decision does not break new ground; rather, it "reiterate[s] and clarif[ies]" that "the central principle of judicial review in NEPA cases is deference." *Seven County*, 145 S.Ct. at 1511. *Seven County* does state that "[s]ome courts have strayed and not applied NEPA with the level of deference demanded by the statutory text and [past Supreme Court] cases." *Id.* at 1513. But this Court was properly deferential to BLM in its partial ruling on Plaintiffs' motion for summary judgment. *See* ECF No. 130 at 4, 11–13 (laying out the "highly deferential" standard of review for Plaintiffs' claims under NEPA and the APA). The NEPA error found with BLM's groundwater model was based on the utter lack of support for BLM's choice of specific storage value in its groundwater model. *See id.* at 14 (finding BLM's specific storage value "plainly was not" supported by the cited report). Though *Seven County* reaffirms the importance of deference in NEPA cases, courts

"cannot defer to a void." *ONDA v. BLM*, 625 F.3d 1092, 1121 (9th Cir. 2010); *see also Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 494 F.3d 188, 205 (D.C. Cir. 2007) ("we cannot uphold a rule based on such a model when an important aspect of its methodology was wholly unexplained").

 Private Intervenors also assert that "*Seven County* . . . confirms that, because BLM has no regulatory authority over [groundwater], it was not obligated to analyze it." Private Intvs.' Mot. to Dissolve at 7. This again misreads the case. *Seven County* addressed whether an agency is required to analyze *indirect* impacts from *projects* that are outside its authority. 145 S.Ct. at 1516–17. The question there was whether the agency was required to analyze the environmental effects of oil drilling and refining projects that were outside the agency's regulatory jurisdiction and "separate in time or place" from the 88-mile railroad project at issue. *Id.* The issue here is entirely distinct. The groundwater impacts in this case flow *directly* from BLM's authorization of *the Converse County Project itself*. Indeed, the Supreme Court expressly acknowledged that those are exactly the types of impacts an agency must consider under NEPA. *See id.* at 1517 ("NEPA calls for the agency to focus on the environmental effects of the project itself"). While the Wyoming State Engineer's Office's regulatory authority over groundwater may implicate the dynamics of some groundwater mitigation, it does not negate BLM's duty to analyze the Project's impacts to that resource. Moreover, there are mitigation measures that BLM certainly could impose that would reduce Project impacts to groundwater, such as monitoring and reporting requirements.

 Plaintiffs' other NEPA arguments are likewise distinct from the issue in *Seven County*. Private Intvs.' Mot. to Dissolve at 8 n.4. Plaintiffs' cumulative impacts argument is premised on BLM's failure to quantify greenhouse gas emissions from other projects that BLM identified as

reasonably foreseeable in the EIS. *See* Pls.' Summ. J. Op. Br at 24–27. Their reasonable alternatives argument concerns BLM's elimination of Project alternatives without adequately explaining why those alternatives were not reasonable. *Id.* at 27–32. As with the groundwater issues, resolution of these claims does not rely on what level of deference to afford to BLM's analysis because they are premised on the *lack of* analysis and reasoned explanation. Plaintiffs' other claims against the Project EIS, ROD, and RMP Amendment do not arise under NEPA at all. *See supra* p. 3; Pls.' Summ. J. Op. Br. at 32–52.

Second, Private Intervenors' arguments against vacatur of the Project are unrelated to its Motion to Dissolve the Interim Injunction. Private Intvs.' Mot. to Dissolve at 6–8.[1] Once the Court resolves Plaintiffs' remaining claims, it will have to decide whether vacatur is warranted based on the seriousness of those errors and the disruptive consequences of vacatur. *See Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). It is premature to argue the applicability of vacatur to those yet-undecided claims.

### III.    MAINTAINING THE INTERIM RELIEF IS IN THE PUBLIC INTEREST.

Given the seriousness of the errors raised by Plaintiffs' remaining claims—including additional significant issues with BLM's groundwater analysis, which already prompted the Court to suspend further APD approvals—maintaining the interim relief pending the Court's full adjudication of Plaintiffs' summary judgment claims and determination of remedies is in the public interest. Again, Plaintiffs' remaining claims are fully briefed and the Court may promptly resolve them. While the Private Intervenors complain they face economic costs from interruption

---

[1] Private Intervenors' argument also misleadingly relies on dictum in *Seven County*. Contrary to their characterization, the Supreme Court did not *hold* that vacatur is improper "absent reason to believe that the agency might disapprove the project if it had added more to the EIS." Private Intvs.' Mot. to Dissolve at 6 (quoting *Seven County*, 145 S.Ct. at 1514). It had no opportunity to so as it did not find the project at issue unlawful under NEPA.

of their planned drilling operations, Private Intvs.' Mot. to Dissolve at 8–12, they have been on notice since 2022 that Plaintiffs are challenging the Converse County EIS and ROD in this action, and are fully informed about the scope of those challenges from the parties' summary judgment briefings. *See, e.g.*, *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F. Supp. 3d 91, 104 (D.D.C. 2017) (potential lost profits or inconvenience are "the nature of doing business, especially in an area fraught with bureaucracy and litigation. Dakota Access began pumping oil into the pipeline with full knowledge that Plaintiffs were contesting the easement allowing them to do so. By nonetheless proceeding with its venture, the company assumed some risk of economic disruption."); *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 997 (8th Cir. 2011) (when parties "jump the gun or anticipate a pro forma result . . .  they become largely responsible for their own harm") (cleaned up).

## <u>CONCLUSION</u>

For these reasons, Plaintiffs respectfully request that the Court deny Private Intervenors' Motion to Dissolve the Interim Injunction; proceed to rule expeditiously on Plaintiffs' remaining summary judgment claims; and keep the interim relief in place until it issues a final summary judgment and remedy order.


Respectfully submitted this 18th day of July 2025.


/s/ *Hannah Goldblatt*
Hannah A. Goldblatt (OR Bar # 205324)*
Sarah Stellberg (ID Bar # 10538)*
Todd C. Tucci (D.C. Bar # ID0001)
*admitted pro hac vice*
ADVOCATES FOR THE WEST
P.O. Box 1612
Boise, ID 83702

(208) 342-7024
hgoldblatt@advocateswest.org
sstellberg@advocateswest.org
ttucci@advocateswest.org

Attorneys for Plaintiffs