IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **POWDER RIVER BASIN RESOURCE COUNCIL and WESTERN WATERSHEDS PROJECT**, <br><br> Plaintiffs, <br><br> v. <br><br> **U.S. DEPARTMENT OF THE INTERIOR and U.S. BUREAU OF LAND MANAGEMENT**, <br><br> Defendants, <br><br> and <br><br> **STATE OF WYOMING, et al.**, <br><br> Defendant-Intervenors. | Case No. 1:22-cv-2696-TSC |

**PRIVATE DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION TO DISSOLVE THE INTERIM INJUNCTION**

In their Opposition to the Private-Intervenors' Motion, Plaintiffs tellingly do not dispute that BLM remedied the single NEPA infraction on which the Court based the Interim Injunction.[1] Instead, Plaintiffs focus on how the Court has yet to rule on other claims in their Motion for Summary Judgment. *See* ECF No. 153 at 3–5. But Plaintiffs' other claims go only to whether the Court should close the case. They are irrelevant to whether the Court should dissolve the Interim Injunction. Because the Court did not rule on any of Plaintiffs' other arguments, they cannot support continuing the Interim Injunction. *See* ECF Nos. 130, 131.

---

[1] All capitalized terms herein refer to the defined terms in Private-Intervenors' Motion to Dissolve the Interim Injunction, ECF No. 148.

Moreover, by asserting the Court should enjoin BLM from approving actions under the Converse County ROD while the Court considers the remainder of Plaintiffs' claims, Plaintiffs essentially argue that the Court should transform the Interim Injunction into a preliminary injunction. But the Court has previously denied Plaintiffs' motion for preliminary injunction, *see* ECF No. 105, and Plaintiffs have not filed a second motion for preliminary injunction or otherwise established the requisite criteria. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). Indeed, Plaintiffs fail to show that they are now any more likely to succeed on the merits of their other arguments after the Court previously denied many of them. *See* ECF No. 105. In essence, Plaintiffs ask the Court to violate *Winter* by continuing the Interim Injunction, which boils down to the delay tactic vehemently criticized by *Seven County*. *See Seven Cnty. Infrastructure Coal. v. Eagle Cnty., Colo.*, 605 U.S. ---, 145 S. Ct. 1497, 1513–14, 221 L.Ed.2d 820, 838 (2025); *Winter*, 555 U.S. at 20.

Finally, while Plaintiffs show absolutely no harm to their members if the Interim Injunction were dissolved, they shrug at the Interim Injunction's deprivation of tens of millions of dollars to private royalty owners, businesses and employees in the community, the State of Wyoming, and Private-Intervenors. The dearth of harm to Plaintiffs compared to the sworn facts for the public and industry belies Plaintiffs' contention that continuing the Interim Injunction serves the public interest. *See Seven Cnty.*, 145 S. Ct. at 1514 ("And that also means fewer jobs, as new projects become difficult to finance and build in a timely fashion."). It shows that continuing the Interim Injunction will result in the type of "harm or injustice" a Rule 54(b) dissolution avoids.

2

The Supreme Court's *Seven County* case is an "intervening change in law" and the BLM's supplemental NEPA is "new evidence not previously available" that impact and cure the sole shortcoming underlying the Court's Interim Injunction. *See* Fed. R. Civ. P. 54(b); *Banks v. Booth*, 518 F. Supp. 3d 57, 62 (D.D.C. 2021). The Court should dissolve the Interim Injunction.

## ARGUMENT

**I.     Plaintiffs Do Not Dispute That the Specific-Storage Value Issue is Remedied and Provide No Other Basis for the Court to Continue the Interim Injunction.**

Plaintiffs never argue that BLM's supplemental NEPA analysis failed to remedy the one NEPA infraction on which this Court based its Interim Injunction.[2] Plaintiffs only argue that their *other* summary-judgment arguments should prevent the Court from dissolving the Interim Injunction. ECF No. 153 at 3–5. But the Court already has deferred ruling on Plaintiffs' other arguments and only found error with—and only based its Interim Injunction on—the "Specific-Storage Value" issue. *See* ECF No. 130 at 13–14. Continuing the Interim Injunction on grounds other than the remedied specific-storage-value issue would violate *Winter*. 555 U.S. at 20.

Further, Plaintiffs argue their remaining claims would still "provide Plaintiffs with the *prospect* for further relief." ECF No. 153 at 1 (emphasis added); *see id.* at 4 (remaining claims "provide Plaintiffs with *further prospect* of relief" (emphasis added)). But Plaintiffs cite no case where a court maintained an injunction based on *pending* claims without any determination of their merits. And Plaintiffs have not shown that they now are any more likely to succeed on the merits of their FLPMA, MLA, APA, or other NEPA arguments than when the Court previously denied them at the preliminary-injunction stage. *See* ECF No. 105 at 28 ("Plaintiffs have not demonstrated

---

[2] Plaintiffs instead focus on whether this case should be closed. *See* ECF No. 153 at 3–5. However, Federal Defendants have already addressed that argument, and Private-Intervenors incorporate by reference those portions of the Federal Defendants' reply brief. *See* ECF No. 152 at 4–5.

a likelihood of success on the merits *on any of their claims*." (emphasis added)). In fact, Plaintiffs' claims are less likely to succeed after *Seven County*.

For example, Plaintiffs asserted in their Motion for Summary Judgment that BLM failed to "adequately analyze the cumulative greenhouse gas emissions of this Project" because it did not "quantify the greenhouse gas emissions from *other reasonably foreseeable future projects*, including the future oil and gas projects identified in Table 5.2-1." ECF No. 116-1 at 24–25 (emphasis added). *Seven County* squarely rejected this argument: "the fact that *other projects might foreseeably be built* or expanded in the wake of the current project does not, by itself, make the agency responsible for addressing the environmental effects of those other projects." 145 S. Ct. at 1517 (emphasis added). Thus, BLM did not have to "quantify greenhouse gas emissions from other projects" even if those projects were "foreseeable." ECF No. 153 at 6–7.

Moreover, Plaintiffs argued in their Motion for Summary Judgment that BLM "violated NEPA by declining to consider two proposed alternatives without establishing that those alternatives were not 'reasonable.'" ECF No. 116-1 at 28. BLM declined to consider the first alternative—the "reduced rate of development alternative"—because, among other reasons, "a slower rate of development would be inconsistent with the purpose and need for the" Project. *Id.* at 30. Plaintiffs disagree and claim that "[i]mposing a slower rate of development would meet" the purpose and need of the Project "by allowing operators to develop their leases—just more slowly—while avoiding environmental impacts." *Id.* (internal quotation marks omitted). Similarly, BLM declined to consider the second alternative—the "greenhouse gas reduction alternative"— because it is "not technically feasible to conduct full carbon-neutral processes." *Id.* at 32. Plaintiffs again disagree, contending that "even if BLM cannot eliminate all flaring and venting emissions,

4

4912-5164-6037.6

it can feasibly reduce them, such as by limiting to emergency or unavoidable situations." *Id.* (emphasis omitted).

But *Seven County* clarifies that Plaintiffs' disagreements with the agency's conclusions do not support a NEPA claim. "An agency exercises substantial discretion" when it "identif[ies] significant environmental impacts *and feasible alternatives*." *Seven Cty.*, 145 S. Ct. at 1512 (emphasis added). So, when an "agency must make predictive and scientific judgments in assessing the relevant impacts (what are the likely impacts; do they rise to the level of 'significant'?) and alternatives (what are the potential alternatives; are they really 'feasible'?)," the "reviewing court *must be* at its 'most deferential.'" *Id.* (emphasis added) (quoting *Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983)). Here, BLM analyzed the two alternatives and declined to analyze them further based on "a series of fact-dependent, context-specific, and policy-laden choices," and its determinations "should not be excessively second-guessed." *Id.* at 1512–13. BLM analyzed the relevant impacts and feasible alternatives extensively in its 1108-page EIS. Therefore, Plaintiffs cannot "enlist" this Court "under the guise of judicial review" to "delay or block" the Project, simply because they wish BLM had considered their preferred alternatives. *Id.* at 1518.

Furthermore, Plaintiffs insinuate that their non-NEPA claims escape *Seven County*. But Plaintiffs base those APA, FLPMA, and MLA claims *on the Project EIS*: "Plaintiffs also briefed their arguments that . . . *the Project EIS* and ROD violated the APA, FLPMA, and the Mineral Leasing Act by improperly disclaiming authority to require air quality mitigation measures."[3] ECF

---

[3] Even if Plaintiffs could escape *Seven County*, the Court has already rejected the argument that Federal Defendants' governing statutes require them to mitigate air-quality impacts on non-federal land. ECF No. 105 at 20 ("Although MLA and FLPMA grant Defendants broad authority, they do not appear to mandate these regulations on non-federal lands. Plaintiffs have cited no legal authority supporting that contention . . . .").

5

No. 149 at 4 (emphasis added); *see also* ECF No. 116-1 at 5–6 (Plaintiffs' explaining how the raptor timing stipulation exemptions, which Plaintiffs claim violate FLPMA, were considered as Alternative B in the Draft EIS and approved in the ROD). At its heart, Plaintiffs' entire case flows from the Project EIS, and they cannot avoid the application of *Seven County*.

Finally, Plaintiffs did not request an injunction on any other claim in their Remedy Brief and the Court cannot continue the Interim Injunction—which rests solely on the specific-storage-value claim—on other grounds without first considering the *Winter* factors for each. *See* ECF No. 138 at 24 (pointing out Plaintiffs requested no injunction on other claims in remedy briefing); ECF No. 130 (ruling on specific-storage-value NEPA issue and issuing Interim Injunction); *Winter*, 555 U.S. at 20. Accordingly, the Court should dissolve the Interim Injunction.

## II.   *Seven County* Compels Dissolution of the Interim Injunction and Prohibits Plaintiffs' Delay Tactics.

Plaintiffs' attempt to improperly extend the Interim Injunction also violates the principles of *Seven County*. Plaintiffs claim that "[*Seven County*] does not break new ground." ECF No. 153 at 5. Of course, that assertion contradicts what the Supreme Court ruled about the import of the decision: "A course correction of sorts is appropriate to bring judicial review under NEPA back in line with statutory text and common sense. Congress did not design NEPA for *judges* to hamstring new infrastructure and construction projects." *Seven Cnty.*, 145 S. Ct. at 1514. *Seven County* undoubtedly changed the law for how agencies conduct substantive NEPA analysis and how courts review NEPA challenges.[4] Ignoring that, from their false proposition, Plaintiffs incredibly

---

[4] Indeed, in the wake of *Seven County*, some plaintiffs have dropped certain NEPA claims in challenges to oil and gas project approvals. *See CBD v. BLM*, No. 23-3624, ECF 160.1 at 1 (9th Cir. June 4, 2025) ("[Appellants] agree that [*Seven County*] undermines their argument that Appellees violated [NEPA] by failing to assess impacts from future oil development project caused by Willow and Appellants respectfully withdraw their appeal of this issue." (internal citations omitted)).

maintain that "*Seven County* has little bearing on the merits issues in this case" despite *Seven County* centering on a NEPA challenge to an EIS, like here. ECF No. 153 at 5. But *Seven County* applies in *at least* four ways.

First, by arguing that the BLM should have addressed other groundwater complaints that the Court did not reach, Plaintiffs ignore the Supreme Court's clear determination that "under NEPA, an agency's only obligation is to prepare an adequate report" and "[c]ourts . . . should not micromanage those agency choices so long as they fall within a broad zone of reasonableness." *Seven Cnty.*, 145 S. Ct. at 1513. The Supreme Court's pronouncement confirms Private-Intervenors' arguments that BLM's supplemental NEPA fully remedied the sole infraction underlying the Interim Injunction. *See* ECF No. 148 at 7; ECF No. 152 at 3 (citing *All. for the Wild Rockies v. Savage*, 354 F. Supp. 3d 1185, 1192 (D. Mont. 2018) (finding supplemental analysis brought the project into compliance with various environmental statutes, "it is inequitable for the injunction to remain in place")); *Sierra Club v. Mason*, 365 F. Supp. 47, 49 (D. Conn. 1973) (dissolving injunction where condition precedent to injunction—drafting a NEPA-compliant environmental impact statement—had been satisfied)). "[T]he weight of authority confirms that, once the legal basis for an injunction has been removed. . . it is an abuse of discretion to not modify the injunction." *California by & through Becerra v. U.S. Env't Prot. Agency*, 978 F.3d 708, 717 (9th Cir. 2020).

Second, Plaintiffs' attempt to use NEPA to nitpick the EIS and delay the Project directly contradicts one of *Seven County*'s main tenets—to prevent "unjustified obstructionism" and avoid the use of "NEPA [as] a blunt and haphazard tool employed by project opponents (who may not always be entirely motivated by concern for the environment) to try to stop or at least slow down new . . . projects." *Seven Cnty.*, 145 S. Ct. at 1513, 1517. The Supreme Court instructed that courts

shall no longer allow project opponents to "enlist the courts in blocking or delaying . . . projects that otherwise comply with all relevant substantive environmental laws." *Id.* at 1513.

Third, Plaintiffs argue Private-Intervenors misread *Seven County* because the case only "addressed whether an agency is required to analyze *indirect* impacts from *projects* that are outside its authority." ECF No. 153 at 6. In other words, Plaintiffs claim agencies must analyze environmental issues over which they have no regulatory authority. But Plaintiffs' take on *Seven County* contradicts the decision's actual language: "agencies are not required to analyze the effects of projects over which they do not exercise regulatory authority." *Seven Cnty.*, 145 S. Ct. at 1516. BLM approves oil and gas operations on federal minerals. BLM does not approve use of groundwater—only the State of Wyoming does. *See* ECF No. 120 at 10–12. If BLM approves an oil and gas project, the State of Wyoming may need to separately approve the use of groundwater. But that groundwater approval is a *separate* project over which BLM exercises no regulatory control. This scenario is on all fours with *Seven County* where potential future oil and gas or refining projects may be approved to use the additional rail capacity—but the Surface Transportation Board had no obligation under NEPA to study those approvals because it has no authority over them. Furthermore, BLM did analyze groundwater impacts here and, even where BLM chose to analyze an impact that was not required under NEPA, "it should definitely not receive a failing grade just because its . . . EIS was less thorough in analyzing" that impact. *Seven Cty.*, 145 S. Ct. at 1515 n.5.

Fourth, even if the Court were inclined to continue the Interim Injunction based on one of Plaintiffs' other NEPA arguments, *Seven County* prohibits such a narrow ruling. The Supreme Court instructs that "[t]he ultimate question [under NEPA] is *not whether an EIS in and of itself is inadequate*, but whether the agency's final decision was reasonable and reasonably explained."

*Seven Cnty.*, 145 S. Ct. at 1514 (emphasis added). Therefore, the question becomes not, for example, whether the EIS's groundwater or cumulative-impact analysis was inadequate, but whether BLM adequately explained its final decision to approve the Project across the entire 1108-page final EIS. *See id.* Therefore, because the Court's analysis underpinning the Interim Injunction did not take this holistic approach, the Interim Injunction cannot continue on its slim deficiency grounds.

"[A] shift in the legal landscape that removes the basis for an order warrants modification of an injunction." *Becerra*, 978 F.3d at 715. Accordingly, the Court should conclude that the Supreme Court's decision in *Seven County* "fundamentally changed the law upon which the [C]ourt relied" and dissolve the Interim Injunction. *Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, No. 05-CV-2337, 2020 WL 6799129, at *4 (D.D.C. Nov. 19, 2020) (Chutkan, J.).

### III.   Plaintiffs Failed to Refute that Private-Intervenors Will Face Continued Harm or Injustice if the Interim Injunction is Not Dissolved.

Plaintiffs fail to show how continuing the Interim Injunction is warranted despite the significant harm the State of Wyoming, Converse County, local citizens, local businesses, and the Private-Intervenors are incurring. ECF Nos. 138 at 31–32, 148 at 8–12. The Court should grant Rule 54(b) relief if refusing the reconsideration of the Interim Injunction would result in "harm or injustice." *Doe 1 v. George Washington Univ.*, 573 F. Supp. 3d 88, 95 (D.D.C. 2021). Plaintiffs submit no facts about how continuing the Interim Injunction *supports* the public interest. Plaintiffs instead argue the Interim Injunction should remain because Private-Intervenors were on notice since 2022 that Plaintiffs had challenged the EIS and ROD. ECF No. 153 at 7–8. But even putting aside the fact that by 2022 BLM and Private-Intervenors had made significant investments in the Project, *see, e.g.*, WY_012362 (showing Final EIS was approved in 2020 and "Total Costs Associated with Developing and Producing th[e] Final EIS [were] $4,000,000"), Private-

9

Intervenors' significant lost profits are not the only type of harm flowing from the continuation of the Interim Injunction. As explained in the Remedy Briefing and the Motion, continuing the Interim Injunction will result in layoffs of individuals whose livelihoods depend on the Project, loss of revenue to the State of Wyoming, local business, and the private mineral and landowners in Converse County. *See, e.g.*, ECF No. 148 at 2–3; ECF No. 138-5 ¶¶ 50–51, 53 –57; ECF No. 138-7 ¶ 12; ECF No. 138-8 ¶¶ 13(f)–(g). Harm and injustice will continue to afflict Wyoming, Converse County, and its citizens and businesses should the Interim Injunction remain in place.

## CONCLUSION

For these reasons, the Court should dissolve the Interim Injunction.

Respectfully submitted this 25th day of July, 2025.

*/s/ L. Poe Leggette*
L. Poe Leggette (D.C. Bar No. 430136)
Bailey A. Bridges (D.C. Bar No. TX0059)
Baker & Hostetler LLP
811 Main St., Suite 1100
Houston, Texas 77002
Telephone: 303.861.0600
Facsimile: 303.861.7805
pleggette@bakerlaw.com
bbridges@bakerlaw.com

Alexander K. Obrecht (CO. Bar No. 46937)
Baker & Hostetler LLP
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
Telephone: 303.861.0600
Facsimile: 303.861.7805
aobrecht@bakerlaw.com

*Attorneys for Defendant-Intervenors*
*Continental Resources, Inc. and*
*Devon Energy Production Company, L.P.*

4912-5164-6037.6

/s/ *Andrew C. Lillie*
Andrew C. Lillie
Mark D. Gibson
Kristina (Tina) R. Van Bockern
HOLLAND & HART LLP
1800 Broadway, Suite 300
Boulder, CO 80302
aclillie@hollandhart.com
mdgibson@hollandhart.com
trvanbockern@hollandhart.com
Phone: (303) 447-7199
Facsimile: (303) 295-5111

*Attorneys for Intervenor-Defendant Anschutz Exploration Corporation*

/s/ *Kathleen C. Schroder*
Mark Champoux, Bar No. CO00114
Kathleen C. Schroder (admitted pro hac vice)
DAVIS GRAHAM & STUBBS LLP
3400 Walnut Street, Suite 700
Denver, Colorado 80205
Telephone: 303-892-9400
mark.champoux@davisgraham.com
katie.schroder@davisgraham.com

*Attorneys for Petroleum Association of Wyoming*

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of July, 2025, I served a true and correct copy of the foregoing **PRIVATE DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION TO DISSOLVE THE INTERIM INJUNCTION** via the Court's electronic case filing system which will cause the foregoing to be served upon all counsel of record.

/s/ *L. Poe Leggette*
L. Poe Leggette

4912-5164-6037.6