**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

POWDER RIVER BASIN
RESOURCE COUNCIL, *et al.*,

        Plaintiffs,

        v.

U.S. DEPT OF INTERIOR, *et al.*,

        Defendants.

Case No. 22-cv-2696 (TSC)

**OPINION & ORDER**

On February 27, 2026, the court granted Plaintiffs Powder River Basin Resource Counsel and Western Watersheds Project's motion for summary judgment, vacating the Converse County Oil and Gas Project ("Project")'s 2020 Environmental Impact Statement ("EIS"), Record of Decision ("ROD"), and associated Casper Resource Management Plan Amendment, and remanding to the U.S. Department of the Interior and Bureau of Land Management ("BLM") for further consideration under the National Environmental Policy Act ("NEPA"). *See* ECF Nos. 116, 165, 166. Defendants and Intervenors—Wyoming, along with private energy companies Continental Resources, Inc., Devon Energy Production Company, L.P., and Petroleum Association of Wyoming ("Private Intervenors")—now seek a stay pending their appeal of that decision. *See* Wyo.'s Mot., ECF No. 168; Priv. Intervenors' Mot., ECF No. 170; ECF Nos. 167, 172, 180.

A stay pending appeal is an "extraordinary" remedy. *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n (CREW)*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam). The moving party bears the burden of showing (1) a "strong" likelihood of success on the merits, (2) irreparable injury absent a stay, (3) that a stay will not "substantially injure the other parties," and

(4) that the public interest supports a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  A stay pending appeal "is not a matter of right," but "an intrusion into the ordinary processes of administration and judicial review."  *Id.* at 427 (citations omitted).

The court begins with the "first and most important factor," *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014): whether Intervenors have established a "substantial" likelihood of success on appeal, *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).  Intervenors raise two principal arguments: (1) that the court's NEPA analysis failed to accord Defendants adequate deference under *Seven County Infrastructure Coal. v. Eagle County*, 605 U.S. 168 (2025); and (2) that the court incorrectly weighed the need for vacatur under *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993).  *See* Priv. Intervenors' Mot. at 6–8; Wyo.'s Mot. at 3–4, 7–9.

Contrary to Intervenors' representation, *Seven County* did not create new law mandating greater deference to agencies; it reiterated that the court defers only to "reasonable" and "reasonably explained" agency action.  *Seven Cnty.*, 605 U.S. at 180; *see id.* at 183 ("Courts should afford substantial deference . . . so long as they fall within a broad zone of reasonableness."); *id.* ("As the Court has emphasized on several occasions, and we doubly underscore again today, 'inherent in NEPA . . . is a "rule of reason"'" (quoting *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 767 (2004))).  The court's reasoning—that the agency's rationale for eliminating phased development and greenhouse gas mitigation alternatives failed "a deferential review for reasonableness"—is consistent with that standard.  *Powder River Basin Res. Council v. Dep't of the Interior*, No. 22-cv-2696, 2026 WL 555013, at *5 (D.D.C. Feb. 27, 2026).  While the agency need only "briefly discuss the reasons" for eliminating those alternatives, *Stand Up for California!*

*v. Dep't of the Interior*, 919 F. Supp. 2d 51, 77 (D.D.C. 2013) (citation omitted), its rationale is still governed by the "rule of reason," *Seven Cnty.*, 605 U.S. at 183.  In this case, the agency's reasoning was either contradicted by the EIS itself or unsupported by analysis in the administrative record.  *See Powder River*, 2026 WL 555013, at *4–7.  As further explained in the Memorandum Opinion, Intervenors are therefore unlikely to succeed in showing that the court was insufficiently deferential to BLM's analysis of alternatives under NEPA.

Nor can Intervenors establish a likelihood of success based on the court's remedial analysis.  Vacatur of unlawful agency action is the rule, not the exception.  *See Sierra Club v. Dep't of Transp.*, 125 F.4th 1170, 1186 (D.C. Cir. 2025) ("Remand with vacatur is the ordinary remedy for unlawful agency action.").  The court considered "the 'seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change,'" and determined that "[b]oth factors militate in favor of vacating the Project approval." *Powder River*, 2026 WL 555013, at *8 (quoting *Allied-Signal*, 988 F.2d at 150–51).  Intervenors argue that in observing that BLM "could reasonably change course" on remand, the court inverted the governing *Allied-Signal* standard.  *Id.*; *see* Wyo.'s Mot. at 7; Priv. Intervenors' Mot. at 9.  But *Allied-Signal* expressly requires evaluating "the extent of doubt whether the agency chose correctly." *Allied-Signal*, 988 F.2d at 150.  Under that standard, vacatur is warranted when the EIS's deficiencies provide "reason to believe that the agency might disapprove the project if it added more to the EIS." *Seven Cnty.*, 605 U.S. at 185.  In this case, if BLM could reasonably disapprove the Project on remand after conducting a proper NEPA analysis, it is sufficiently doubtful that BLM correctly approved it without one.  Put another way, it is "sufficiently likely" that the "deficiencies" the court identified "go to the core of" the agency's decision. *New Jersey Conservation Found. v. FERC*, 111 F.4th 42, 64 (D.C. Cir. 2024).  While

Intervenors also recycle arguments from their briefing to critique the court's application of the *Allied-Signal* factors, the court finds these arguments unpersuasive for the reasons stated in its Memorandum Opinion.

Although a movant's failure to demonstrate a likelihood of success on the merits is "an arguably fatal flaw for a stay application," *CREW*, 904 F.3d at 1019, the court analyzes the remaining factors and concludes that none support granting a stay. Intervenors face an uphill battle: they must demonstrate "certain" and "actual" irreparable injury, *CREW*, 904 F.3d at 1019, that is "proportionally greater," given their "low likelihood of success on merits," *M.M.V. v. Barr*, 459 F. Supp. 3d 1, 4 (D.D.C. 2020). Private Intervenors contend that they have already invested significantly in the EIS process and that vacatur would delay their ability to obtain new permits. *See* Priv. Intervenors' Mot. at 15–18. Wyoming asserts harms to its tax base, royalty revenues, and ability to fund public services. *See* Wyo.'s Mot. at 10–14. But as the court has already explained, these are ordinary consequences of NEPA compliance, and "economic loss does not, in and of itself, constitute irreparable harm." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Nor have Intervenors demonstrated that the Plaintiffs' and the public's interest weighs in favor of a stay. *See Nken*, 556 U.S. at 435 (explaining that "the harm to the opposing party and weighing the public interest . . . merge when the Government is the opposing party"). As the court observed, the Project "is already emitting and will continue to emit significant levels of greenhouse gases that will contribute to climate change" and will "impart other significant environmental harm, impacting human health, sensitive natural resources, landscapes, and wildlife." *Powder River*, 2026 WL 555013, at *8. Vacatur ensures that BLM cannot approve further permits based on the deficient EIS and ROD.

Intervenors argue that because state and federal regulations already require many of the measures BLM failed to consider, additional analysis offers little public benefit. *See* Priv. Intervenors' Mot. at 18–19; Wyo.'s Mot. at 15. Tellingly, BLM rejected the greenhouse gas-reduction alternatives commenters proposed as *infeasible*, not as duplicative of existing regulation. *See* AR 12375, 12491–92, 4183. And even accounting for existing regulations, BLM predicted exceedances of EPA's human-health-based National Ambient Air Quality Standards for multiple criteria pollutants. *See* AR 12937–38; *see also* AR 16206–09. In other words, Intervenors fail to offer sufficient basis to conclude that the status quo will adequately protect Plaintiffs' and the public's interest in greenhouse gas mitigation and air quality.

Intervenors also point to "the monetary and employment benefits from the Project to the State of Wyoming and its communities." Priv. Intervenors' Mot. at 19. But again, economic consequences from the delay in issuing new permits "are ordinary consequences of NEPA compliance, and not ones that establish sufficient prejudice to merit withholding vacatur." *Powder River*, 2026 WL 555013, at *8. And the vacatur here is relatively modest: it does not "enjoin development of existing drilling permits," "require BLM to unwind completed wells or infrastructure," or "prevent BLM from approving new APDs . . . that are independent of the deficient EIS." *Id.* (cleaned up). In any case, "[t]he question for granting a stay is not whether the underlying project is . . . in the public interest," but "whether a stay pending appeal" and "irreversible project construction now, while critical NEPA analysis remains incomplete" is in the public interest. *Friends of Cap. Crescent Trail v. Fed. Transit Admin.*, 263 F. Supp. 3d 144, 151 (D.D.C. 2017). Intervenors have not made that showing.

For the foregoing reasons, Intervenors' motions to stay the court's order pending appeal are DENIED. ECF Nos. 168, 170.

Date: May 29, 2026

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge